Alan W. Kornberg
Jeffrey D. Saferstein
Philip Weintraub
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Proposed Counsel to the Debtors
and the Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOUGHTON MIFFLIN | : Case No. 12-____ (___) |
| HARCOURT PUBLISHING COMPANY, *et al.*,[1] | : |
| | : Joint Administration Pending |
| Debtors. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE PAYMENT
OF CERTAIN PREPETITION SALES, USE, FRANCHISE AND
PROPERTY TAXES, LICENSING FEES, AND SIMILAR OBLIGATIONS**

Houghton Mifflin Harcourt Publishing Company and its affiliated debtors and debtors-in-possession (each, a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>"), by and through their undersigned counsel, hereby move this Court for entry of an order

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Houghton Mifflin Harcourt Publishing Company (6030), Houghton Mifflin Harcourt Publishers Inc. (7305), HMH Publishers, LLC (7173), Houghton Mifflin Holding Company, Inc. (2898), Houghton Mifflin, LLC (2961), Houghton Mifflin Finance, Inc. (2812), Houghton Mifflin Holdings, Inc. (0674), HM Publishing Corp. (5843), Riverdeep Inc., a Limited Liability Company (9612), Broderbund LLC (6113), RVDP, Inc. (2557), HRW Distributors, Inc. (4902), Greenwood Publishing Group, Inc. (4537), Classroom Connect, Inc. (3282), ACHIEVE! Data Solutions, LLC (7499), Steck-Vaughn Publishing LLC (6929), HMH Supplemental Publishers Inc. (7571), HMH Holdings (Delaware), Inc. (6372), Sentry Realty Corporation (6742), Houghton Mifflin Company International, Inc. (9100), The Riverside Publishing Company (0173), Classwell Learning Group Inc. (9252), Cognitive Concepts, Inc. (5986), Edusoft (9992), and Advanced Learning Centers, Inc. (2861).

substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Order</u>") pursuant to sections 105(a), 363(b) and 507(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"): (A) authorizing the Debtors to pay certain accrued and outstanding prepetition sales, use, franchise and real and personal property taxes, and such other similar taxes as the Debtors deem necessary, as well as fees for licenses, and other similar charges and assessments; and (B) authorizing banks and other financial institutions to honor and process all checks and wire transfers related thereto; and granting them such other and further relief as the Court deems just and proper.  In support of this motion (the "<u>Motion</u>"), the Debtors rely upon the Affidavit of William F. Bayers, general counsel to the Debtors, pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Bayers Affidavit</u>") filed contemporaneously herewith and incorporated herein by reference, and respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction to hear this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Sections 105(a), 363(b) and 507(a)(8) of the Bankruptcy Code provide the statutory predicates for the requested relief.

## BACKGROUND

2. On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2

3. As described more fully below, contemporaneously with the filing of their petitions, the Debtors also filed their Prepackaged Joint Plan of Reorganization (the "Prepackaged Plan") to implement a restructuring of certain of the Debtors' outstanding indebtedness and existing equity interests. Although the solicitation period remains open, as of the Petition Date, 90.3% of the total amount of creditors entitled to vote on the Prepackaged Plan voted in favor of the Prepackaged Plan and 76% in amount of equity holders entitled to vote on the Prepackaged Plan voted in favor of the Prepackaged Plan. The Debtors did not receive any ballots rejecting the Prepackaged Plan. As a result of the overwhelming support for the Prepackaged Plan, the Debtors intend to move forward with confirmation of the Prepackaged Plan at the Court's earliest available date.

4. As of the date hereof, no creditors' committee, trustee or examiner has been appointed in these cases.

5. The Debtors comprise one of the leading educational publishers in the U.S. public school market (known as kindergarten to grade 12 or "K-12"). The Debtors offer a diverse portfolio of products and services, including textbooks, workbooks, supplemental materials, technology-based products, teaching guides, various types of standardized and customized tests, professional assessment products, and a wide range of trade and reference titles. The Debtors are organized into the following two divisions: education and trade and reference. The education division is the largest division and represents approximately 90% of the Debtors' total revenue. The Debtors' revenue and EBITDA for the year ended December 31, 2011 were approximately $1.295 billion and $238 million, respectively.

3

6.  The global financial crisis over the past several years has negatively affected the Debtors' recent financial performance.  The Debtors' business depends largely on state and local funding and the recession-driven decreases in state spending as well as significant purchase deferrals in key states and territories resulted in material reductions in the overall size of the Debtors' key K-12 market.  Lack of anticipated federal stimulus support also contributed to the Debtors' substantial revenue decline.  As a result of the deteriorating macroeconomic conditions, the Debtors, along with certain of their non-debtor affiliates, implemented a consensual out-of-court restructuring in March, 2010.  Despite the out-of-court restructuring, due to the continuing contraction of funds for state education spending and higher deferrals of awarded business than expected, the Debtors have continued to experience financial difficulties.  On or about December 22, 2011 and December 29, 2011, the Debtors entered into amendments to their first lien credit facility and receivables facility, respectively (collectively, the "Amendments").

7.  Notwithstanding the Amendments, the Debtors have determined that a complete delevering of their capital structure is now necessary.  In or about March 2012 significant holders of claims under the Debtors' first lien credit facility and the 10.5% Notes formed an informal creditor group (the "Informal Creditor Group").  Since its formation, the Informal Creditor Group and its advisors have engaged in constructive dialogue with the Debtors regarding a comprehensive restructuring of the Debtors' outstanding debt and equity.

8.  After months of good faith, arm's length negotiations among the Debtors and the Informal Creditor Group and their respective advisors, on May 10, 2012,

4

the parties reached an agreement on the terms of a restructuring to completely delever the Debtors' balance sheet. The Debtors have commenced these Chapter 11 Cases to implement the terms of the agreement which has been embodied in the Prepackaged Plan and the accompanying Restructuring Support Agreement (as defined in the Prepackaged Plan).

## RELIEF REQUESTED

9.   In the ordinary course of business, the Debtors incur: (a) certain sales, use, real and personal property taxes; (b) fees for licenses and reporting; (c) annual report and franchise taxes; (d) income and gross receipt taxes; (e) employment related taxes; and (f) other similar charges and assessments (collectively, the "Taxes") that are payable directly to various state and local taxing authorities (collectively, the "Taxing Authorities") as such payments become due. The Debtors operate nationwide and, as such, the Debtors must pay Taxes to numerous Taxing Authorities throughout the country.

10.   The Debtors generally incur and collect use taxes (the "Use Taxes") when they purchase taxable products for which no sales tax was charged by the vendors. Furthermore, the Debtors are required to collect sales taxes ("Sales Taxes" and collectively with the Use Taxes, the "Sales and Use Taxes") from purchasers of their products on a per sale basis and periodically remit Sales Taxes to the applicable Taxing Authorities. In general, Sales Taxes accrue as the Debtors' products are sold and are calculated based upon a statutory percentage of the sale price. Sales Taxes are then remitted to the applicable Taxing Authorities based on either estimated future or prior sales tax collections. The Debtors paid approximately $13.94 million in Sales and Use Taxes in 2011.

5

11. Typically, the five states where the Debtors pay the largest amounts of state Sales and Use Taxes are Arizona, California, Hawaii, North Carolina, and Washington. The Debtors' combined state Sales and Use Tax liability from March 2011 through February 2012 to these states was approximately $10,500,000, which accounts for the majority of the Debtors' total liability for Sales and Use Taxes.

12. Furthermore, the Debtors are subject to various business licensing taxes ("Licensing Taxes") in several states and localities. These Licensing Taxes are assessed as either a fixed fee or are calculated based on gross sales receipts in the applicable jurisdiction. The Debtors paid approximately $35,300 in Licensing Taxes in 2011.

13. The Debtors also pay real and personal property taxes ("Real and Personal Property Taxes") in the ordinary course of business as such taxes become due. One third of the Real and Personal Property Taxes are incurred in connection with a warehouse facility in Lewisville, Texas. The Debtors paid approximately $752,000 in Real and Personal Property Taxes in 2011.

14. The Debtors also have annual report and franchise tax obligations (the "Annual Report and Franchise Taxes"). The Debtors paid approximately $347,000 in Annual Report and Franchise Taxes in 2011.[2]

15. In addition, the Debtors pay income taxes (the "Income Taxes") as well as taxes on the total gross revenues of the company in several state and local state jurisdictions (the "Gross Receipts Taxes"). The Debtors paid approximately $2.55 million in Income Taxes and $18,550 in local state Gross Receipts Taxes in 2011.

---

[2] Annual Report and Franchise Taxes liability for 2010, paid in first quarter of 2012.

16. The Debtors are also required by law to withhold from domestic employees' wages or pay directly various amounts related to federal, state and local taxes, including, without limitation, payroll taxes, Federal Insurance Contribution Act ("FICA") taxes, unemployment taxes and other taxes that accrue on wages, benefits, disability and workers' compensation paid to the Debtors' employees ("Employment Taxes"). The Debtors paid approximately $94,058,538 in Employment Taxes in 2011.[3]

17. The Debtors also collect, withhold or incur various other federal, state and local taxes ("Other Taxes"). The Debtors' liability for Other Taxes in 2011 was approximately $824,850.

18. Although the Debtors believe that they are current on all of their Taxes that have become due as of the Petition Date, because many of the Taxes are paid on a periodic basis (and in arrears), a lag between the time when the Debtors incur an obligation to pay certain Taxes and the date such Taxes become due and payable may exist. As a result, some Taxing Authorities may have claims against the Debtors for Taxes that have accrued but remain unpaid as of the Petition Date, and for certain other Taxes that will come due during the pendency of these cases.

19. The Debtors anticipate that approximately $18 million in Employment Taxes[4] and $300,000 in remaining Taxes will come due between May 15, 2012 and July 30, 2012.

20. By this Motion, the Debtors seek authority, in their discretion, to pay the relevant Taxing Authorities: (i) any Taxes that have accrued, but were not yet due

---

[3] This figure includes both the employer and employee portions of the payroll tax.

[4] Approximately $2.85 million of payroll taxes accrue each bi-weekly pay period, inclusive of both employer and employee portions.

and owing or were not paid in full, as of the Petition Date; and (ii) any prepetition Taxes that arose prior to the Petition Date that become due and owing during the pendency of the chapter 11 cases in the ordinary course of business.[5]

21.     The Debtors are also subject to certain federal and state audit investigations and may be subject to further audit investigations (the "Audits") during the pendency of these cases that may result in additional prepetition Taxes being assessed against the Debtors (such additional Taxes, the "Audit Amounts").  The Debtors seek authority, in their discretion, to satisfy any such Audit Amounts in the ordinary course of business.[6]

22.     To implement the relief requested herein, the Debtors further request that the order approving this Motion authorize financial institutions (the "Banks") to honor and process transfers, deposits, or checks issued by any of the Debtors on account of any prepetition Taxes that have not cleared as of the Petition Date, and to permit the Banks to rely on the Debtors' representations as to which checks are issued and can be paid in accordance with this Motion without any duty of further inquiry and without liability for following the Debtors' instructions.

---

[5] Nothing in this Motion or any related order affects or shall be deemed to affect the Debtors' ability to contest the amount or basis of any Taxes that may be due to the various Taxing Authorities, or to require the Debtors to pay any of the applicable Taxes.  The Debtors expressly reserve all of their rights and defenses related thereto.

[6] Nothing contained herein or in the order approving this Motion constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Audit Amount.  The Debtors expressly reserve all rights with respect to any Audit.  Furthermore, the Debtors reserve the right to contest the Audit Amounts, if any, claimed to be due as a result of the Audits.

8

**BASIS FOR RELIEF REQUESTED**

23. Numerous grounds justify granting the requested relief. <u>First</u>, the Prepackaged Plan provides for the payment in full of all allowed unsecured claims. Creditors voting on the Prepackaged Plan voted overwhelmingly to accept the Prepackaged Plan and the Debtors are seeking a confirmation hearing as soon as the Court can schedule one. As a result, granting the relief requested herein will affect only the timing of the payment to such creditors and will not affect or impair the rights of other creditors in these chapter 11 cases.

24. <u>Second</u>, a portion of the Taxes may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code and therefore must be paid in full under any plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(c). Thus, paying such Taxes would give the applicable Taxing Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan, and will save the Debtors the potential interest expense (and penalties) that might otherwise accrue.

25. <u>Third</u>, in some or all of the states in which the Debtors owe Taxes, unpaid property taxes can give rise to liens which can attach to real and personal property. Such liens potentially could entitle the relevant Taxing Authorities to a secured claim against property of the relevant Debtor's estate. Paying such Taxes would therefore only affect the timing of the payments, and not the amounts that the Debtors would ultimately have to pay to the applicable Taxing Authorities.

26. <u>Fourth</u>, nonpayment of Taxes could cause the Taxing Authorities to take adverse actions that would disrupt the Debtors' day-to-day business operations and delay the chapter 11 cases, including, but not limited to, filing liens, as noted above,

9

but also preventing the Debtors from conducting business in the applicable jurisdictions, seeking to lift the automatic stay, and increasing the number of audits. Such actions would distract the Debtors' from their reorganization efforts and impose significant costs and burdens on the Debtors' estates.

27.  <u>Fifth</u>, some Taxing Authorities may assert that certain of the Taxes are so-called "trust fund" taxes that the Debtors are required to collect from third parties and hold in trust for the Taxing Authorities' benefit. To the extent that the Debtors collect sales, use and other Taxes from their customers on behalf of the Taxing Authorities, such Taxes may not constitute property of the Debtors' estates. *See Begier* v. *Internal Revenue Service*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference because such funds are not property of the debtor's estate); 5 COLLIER ON BANKRUPTCY ¶ 541.28 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). As a consequence, the Debtors would not have an equitable interest in such Taxes and, assuming they could be adequately identified and traced, such amounts would not constitute property of the Debtors' estates and would not be subject to the automatic stay. *See City of Farrell* v. *Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994); *see also* <u>In re Thomas</u>, 2007 Bankr. LEXIS 2006, at *21-22 (Bankr. S.D.N.Y. June 4, 2007) (stating the well-settled principle that debtors do not own an equitable interest in property that they hold in trust for another, and that therefore funds held in trust are not property of the estate). Accordingly, because the Debtors have no equitable interest in these trust fund Taxes, payment does not prejudice the rights of any of the Debtors' other creditors. The Debtors should therefore be able to pay any Taxes that constitute trust fund taxes as they become due and payable.

28.     <u>Sixth</u>, even if some of the Taxes would not ordinarily be considered "trust fund" taxes in a particular jurisdiction, sections 105(a) and 363(b) of the Bankruptcy Code authorize the requested relief. Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]" 11 U.S.C. § 105(a). It permits a bankruptcy court to take whatever action "is appropriate or necessary in aid of the exercise of its jurisdiction." 2 COLLIER ON BANKRUPTCY, ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Similarly, section 363(b)(1) of the Bankruptcy Code authorizes a debtor to use property of the estate other than in the ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1).

29.     The "necessity of payment" doctrine also supports the requested relief. This rule recognizes the existence of the judicial power to authorize postpetition payment of prepetition obligations when necessary to the continued operation of the debtor. *See, e.g., In re Ionosphere Clubs*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) *citing Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286, 311 (1882) (articulating legal theory later termed the "doctrine of necessity' or the "'necessity of payment' doctrine" and holding that payment of pre-receivership claim prior to reorganization permitted to prevent stoppage of crucial business relations); *In re Boston and Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation); *Southern Ry. Co.* v. *Flournoy*, 301 F.2d 847, 852 (4th Cir. 1962) ("The principle of necessity of payment [espoused in *Miltenberger*] has since been carried into different factual surroundings as

11

the basis for granting superiority to business-operating accounts."); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (granting approval to pay prepetition claims of certain trade vendors which were critical to the debtors' reorganization); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to continued operation of business).

30.  Debtors frequently invoke the necessity of payment doctrine early in a reorganization case when preservation of the estate proves most critical and often extremely difficult. For that reason, bankruptcy courts may choose to invoke their equitable powers to authorize a debtor to pay certain critical prepetition claims under section 105(a) if "authorizing the payment of the prepetition debt creates 'the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" *In re Structurelite Plastics Corp.,* 86 B.R. 922, 932 (Bankr. S.D. Ohio 1988) (citation omitted); *see also In re Eagle-Picher Industries, Inc.,* 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (stating that "to justify payment of a prepetition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the [c]hapter 11 process"); *Ionosphere Clubs,* 98 B.R. at 176.

31.  Substantial precedent exists for authorizing payment of prepetition taxes. In numerous chapter 11 cases in this District, the Court has authorized debtors pursuant to sections 105 and 363 of the Bankruptcy Code to pay similar prepetition tax obligations. *See*, *e.g.*, *In re Getty Petroleum Marketing Inc.*, Case No. 11-15606 (Bankr. S.D.N.Y. Dec. 23, 2011) [Docket No. 91]; *In re Borders Group, Inc.*, Case No. 11-10614 (Bankr. S.D.N.Y. Mar. 15, 2011); *In re Great Atl. & Pac. Tea Co.* 10-24549 (Bankr. S.D.N.Y. Jan. 13, 2011) [Docket No. 499]; *In re Blockbuster Inc.*, 10-14997 (Bankr.

S.D.N.Y. Oct. 21, 2010) [Docket No. 355]; *In re Finlay Enters. Inc.*, Case No. 09-14873 (Bankr. S.D.N.Y. Sept. 3, 2009) [Docket No. 194]; *In re Frontier Airlines Holdings, Inc.*, Case No. 08-11298 (RDD) (Bankr. S.D.N.Y. Apr. 14, 2008) [Docket No. 48]. The Debtors submit the circumstances described herein warrant similar relief.

33. Seventh, some states hold responsible officers personally liable in various circumstances for unpaid Sales and Use Taxes. *See*, *e.g.*, *John F. Olson et al.*, *Director & Officer Liability: Indemnification and Insurance* § 3:21 (Thomson Reuters/West ed. 2011) ("[d]irectors and officers may be subject to civil or criminal penalties for failure to see that corporate tax returns are filed and taxes are paid under federal and some state laws. . .Additionally, some states hold corporate officers personally liable for any sales tax and penalty owed and not paid by the corporation, regardless of cause.") (*citing* W. Va. Code § 11-15-7 and Ohio Rev. Code Ann. § 5739.33). To the extent that any such "trust fund" Taxes remain unpaid by any of the Debtors, their officers could be subject to civil liability or criminal prosecution during the pendency of these chapter 11 cases. The possibility or occurrence of any such lawsuit or criminal prosecution would distract the Debtors and their officers from their effort to implement a successful reorganization strategy, to the detriment of all parties-in-interest.

33. Based upon the foregoing, the Debtors respectfully submit that the relief requested herein is necessary, appropriate and in the best interest of their estates and all of their creditors, and should be approved.

**WAIVER OF BANKRUPTCY RULES 6003(b), 6004(a),
6004(h) AND LOCAL RULE 9013-1(b)**

34. The Debtors submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set

forth herein, Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") has been satisfied. Furthermore, given the nature of the relief requested herein, the Debtors respectfully request a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a); (ii) the 14-day stay under Bankruptcy Rule 6004(h); and (iii) the notice requirements under Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rule 9013-1(b)").

## NOTICE

35.    As of the date hereof, no creditors' committee, trustee, or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to: (i) the United States Trustee, Attention: Andrea B. Schwartz; (ii) counsel for the DIP/Exit Agent; (iii) the parties identified on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (iv) counsel for the Informal Creditor Group; (v) counsel for the Prepetition Senior Secured Notes Trustee; (vi) counsel for the Prepetition Agent; (vii) counsel for the Prepetition L/C Bank; (viii) the Securities and Exchange Commission; (ix) the United States Attorney for the Southern District of New York; (x) the Internal Revenue Service; (xi) the Environmental Protection Agency; (xii) the Pension Benefit Guaranty Corporation; (xiii) the New York State Department of Taxation; (xiv) the New York City Tax Department; and (xv) such other parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## NO PRIOR REQUEST

36.    No prior request for the relief sought herein has been made to this or to any other court.

14

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the form attached hereto as <u>Exhibit A</u> granting the relief requested and such other and further relief as it deems just and proper.

Dated: May 21, 2012
      New York, New York

PAUL, WEISS, RIFKIND WHARTON & GARRISON LLP

By:   /s/ Jeffrey D. Saferstein
Alan Kornberg
(akornberg@paulweiss.com)
Jeffrey D. Saferstein
(jsaferstein@paulweiss.com)
Philip Weintraub
(pweintraub@paulweiss.com)
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

Proposed attorneys for the Debtors and Debtors-in-Possession

15

# **EXHIBIT A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, *et al.,* | : Case No. 10-____ (___) |
| | : |
| | : Joint Administration Pending |
| Debtors. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ORDER AUTHORIZING THE PAYMENT
OF CERTAIN PREPETITION SALES, USE, FRANCHISE
AND PROPERTY TAXES, LICENSING FEES, AND SIMILAR OBLIGATIONS**

Upon the motion (the "Motion")[1] of Houghton Mifflin Harcourt Publishing Company and its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (each, a "Debtor" and collectively, the "Debtors"), requesting entry of an order pursuant to sections 105(a), 363(b) and 507(a)(8) of the Bankruptcy Code: (A) authorizing the Debtors to pay certain accrued and outstanding prepetition sales, use, property and franchise taxes, and other similar charges and assessments; and (B) authorizing banks and other financial institutions to honor and process all checks and wire transfers involving the payment of such Taxes; and upon consideration of the Affidavit of Bill Bayers, general counsel to the Debtors, pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York, sworn to on May 21, 2012; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that venue of these cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and it

---

[1] Capitalized terms used and not defined herein shall have the meaning ascribed to them in the Motion.

appearing that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and a hearing having been held to consider the relief requested in the Motion; and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.   The Motion is GRANTED as modified herein.

2.   The Debtors are authorized, in their discretion, to pay accrued and outstanding prepetition Taxes and Audit Amounts to the Taxing Authorities in the ordinary course of business to the extent set forth in the Motion.

3.   The Debtors' financial institutions (the "<u>Banks</u>") are authorized and directed to honor the Debtors' payments of prepetition Taxes and Audit Amounts on or after the Petition Date and, to the extent any Bank may have honored the Debtors' payments of any prepetition Taxes or Audit Amounts prior to the Petition Date, such honoring is ratified.  The Banks are authorized and directed to process and honor all other checks and transfers issued for payments approved by this Order and/or reissue checks for any payments approved by this Order where such checks may have been dishonored postpetition.

4.   Nothing in the Motion or this Order shall or shall be deemed to impair the Debtors' right to contest, in their discretion, the amount or validity of any of the Taxes or Audit Amounts that may be due to any of the Taxing Authorities.

2

5. Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors. The requirements of Bankruptcy Rules 6004(a) and 6004(h) and Local Rule 9013-1(b) are waived.

6. Notwithstanding any provision in the Bankruptcy Rules to the contrary: (a) this Order shall be effective immediately and enforceable upon its entry; (b) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (c) the Debtors are authorized and empowered, and may in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

7. This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

Dated: _____, 2012
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE