Alan W. Kornberg
Jeffrey D. Saferstein
Philip A. Weintraub
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Proposed Counsel to the Debtors
and the Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HOUGHTON MIFFLIN | : | Case No. 12-____ (___) |
| HARCOURT PUBLISHING COMPANY, *et al.,*[1] | : | |
| | : | (Joint Administration Pending) |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING
THE PAYMENT OF PREPETITION GENERAL UNSECURED CLAIMS AND
OTHER UNIMPAIRED CLAIMS IN THE ORDINARY COURSE OF BUSINESS**

Houghton Mifflin Harcourt Publishing Company and its affiliated debtors

and debtors-in-possession in the above-captioned cases (each a "Debtor," and

collectively, the "Debtors"), by and through their undersigned counsel, hereby move this

Court for entry of an order substantially in the form attached hereto as Exhibit A (the

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification
number, are Houghton Mifflin Harcourt Publishing Company (6030), Houghton Mifflin Harcourt
Publishers Inc. (7305), HMH Publishers, LLC (7173), Houghton Mifflin Holding Company, Inc.
(2898), Houghton Mifflin, LLC (2961), Houghton Mifflin Finance, Inc. (2812), Houghton Mifflin
Holdings, Inc. (0674), HM Publishing Corp. (5843), Riverdeep Inc., a Limited Liability Company
(9612), Broderbund LLC (6113), RVDP, Inc. (2557), HRW Distributors, Inc. (4902), Greenwood
Publishing Group, Inc. (4537), Classroom Connect, Inc. (3282), ACHIEVE! Data Solutions, LLC
(7499), Steck-Vaughn Publishing LLC (6929), HMH Supplemental Publishers Inc. (7571), HMH
Holdings (Delaware), Inc. (6372), Sentry Realty Corporation (6742), Houghton Mifflin Company
International, Inc. (9100), The Riverside Publishing Company (0173), Classwell Learning Group Inc.
(9252), Cognitive Concepts, Inc. (5986), Edusoft (9992), and Advanced Learning Centers, Inc. (2861).
The address for all of the debtors is 222 Berkeley Street, Boston, MA 02116.

"Order") authorizing the Debtors to:  (i) pay certain prepetition general unsecured claims and (ii) pay other unimpaired claims in the ordinary course of business.  In support of this motion (the "Motion"), the Debtors rely upon the Affidavit of William F. Bayers, general counsel to the Debtors, (the "Bayers Affidavit") filed contemporaneously herewith pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York and incorporated herein by reference.  In further support of the Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction to hear this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Sections 105(a), 363(b), 503(b)(9), 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code") provide the statutory predicate for the requested relief.

## BACKGROUND

2.      On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      As described more fully below, contemporaneously with the filing of their petitions, the Debtors also filed their Prepackaged Joint Plan of Reorganization (the "Prepackaged Plan") to implement a restructuring of certain of the Debtors' outstanding indebtedness and existing equity interests.  Although the solicitation period remains open, as of the Petition Date, 90.3% of the total amount of creditors entitled to

2

vote on the Prepackaged Plan voted in favor of the Prepackaged Plan and 76% in amount

of equity holders entitled to vote on the Prepackaged Plan voted in favor of the

Prepackaged Plan.  The Debtors did not receive any ballots rejecting the Prepackaged

Plan.  As a result of the overwhelming support for the Prepackaged Plan, the Debtors

intend to move forward with confirmation of the Prepackaged Plan at the Court's earliest

available date.

4.      As of the date hereof, no creditors' committee, trustee or examiner

has been appointed in these cases.

5.      The Debtors comprise one of the leading educational publishers in

the U.S. public school market (known as kindergarten to grade 12 or "K-12").  The

Debtors offer a diverse portfolio of products and services, including textbooks,

workbooks, supplemental materials, technology-based products, teaching guides, various

types of standardized and customized tests, professional assessment products, and a wide

range of trade and reference titles.  The Debtors are organized into the following two

divisions:  education and trade and reference.  The education division is the largest

division and represents approximately 90% of the Debtors' total revenue.  The Debtors'

revenue and EBITDA for the year ended December 31, 2011 were approximately $1.295

billion and $238 million, respectively.

6.      The global financial crisis over the past several years has

negatively affected the Debtors' recent financial performance.  The Debtors' business

depends largely on state and local funding and the recession-driven decreases in state

spending as well as significant purchase deferrals in key states and territories resulted in

material reductions in the overall size of the Debtors' key K-12 market.  Lack of

anticipated federal stimulus support also contributed to the Debtors' substantial revenue

decline.  As a result of the deteriorating macroeconomic conditions, the Debtors, along

with certain of their non-debtor affiliates, implemented a consensual out-of-court

restructuring in March, 2010.  Despite the out-of-court restructuring, due to the

continuing contraction of funds for state education spending and higher deferrals of

awarded business than expected, the Debtors have continued to experience financial

difficulties.  On or about December 22, 2011 and December 29, 2011, the Debtors

entered into amendments to their first lien credit facility and receivables facility,

respectively (collectively, the "Amendments").

    7.    Notwithstanding the Amendments, the Debtors have determined

that a complete delevering of their capital structure is now necessary.  In or about March

2012, significant holders of claims under the Debtors' first lien credit facility and the

10.5% Notes formed an informal creditor group (the "Informal Creditor Group").  Since

its formation, the Informal Creditor Group and its advisors have engaged in constructive

dialogue with the Debtors regarding a comprehensive restructuring of the Debtors'

outstanding debt and equity.

    8.    After months of good faith, arm's length negotiations among the

Debtors and the Informal Creditor Group and their respective advisors, the parties

reached an agreement on the terms of a restructuring to completely delever the Debtors'

balance sheet.  The Debtors have commenced these cases to implement the terms of the

agreement which has been embodied in the Prepackaged Plan and the accompanying

Restructuring Support Agreement (as defined in the Prepackaged Plan).

**RELIEF REQUESTED**

      9.      Concurrently with the filing of this Motion, the Debtors have filed customary "first day" motions (the "<u>First Day Motions</u>") seeking authority to pay or otherwise honor prepetition obligations to, among other creditors, the Debtors' (i) employees, (ii) customers, (iii) critical vendors, and (iv) taxing authorities (collectively the "<u>Prepetition Payment Motions</u>").  In light of (i) the anticipated short duration of these prepackaged chapter 11 cases and (ii) the proposed unimpairment and payment in full of general unsecured claims pursuant to the terms of the Prepackaged Plan, the Debtors hereby seek the entry of an order authorizing the Debtors to pay the Debtors' prepetition liabilities, as they become due in the ordinary course of business, to holders of undisputed claims that are not impaired under the Prepackaged Plan in accordance with section 1124 of the Bankruptcy Code (collectively, the "<u>Unimpaired Claims</u>"), including, without limitation, claims of (i) the Debtors' prepetition suppliers of goods and services; (ii) potential lienholders; (iii) advertisers; (iv) authors and licensors; (v) rent and utility service providers; (vi) external data and technology support service providers; and (vii) consultants, legal advisors (except for those professionals subject to filing fee applications) and auditors that are not addressed in the First Day Motions (collectively, the "<u>General Unsecured Creditors</u>").   In exchange, the Debtors may, as appropriate and necessary, seek agreements from General Unsecured Creditors receiving Payment, as defined below, on their Unimpaired Claims to continue to extend prepetition trade credit terms to the Debtors for the duration of these chapter 11 cases.

**Relief Requested is Consistent with the Prepackaged Plan**

      4.      The Prepackaged Plan, which has been accepted by an overwhelming amount of creditors entitled to vote, provides that holders of Unimpaired

Claims will be paid in full on the Effective Date of the Prepackaged Plan or on the date

on which such obligations become due and owing in the ordinary course of business.  As

of the Petition Date, the Debtors estimate that approximately $112,534,000 in

Unimpaired Claims will come due during the course of these chapter 11 cases.[2]  The

Debtors seek to pay such amounts only as they become due and payable in the ordinary

course of the Debtors' businesses.

5.      The overall purpose of these chapter 11 cases and the Prepackaged

Plan is to implement a consensual balance sheet restructuring for the Debtors with

Payment in full to, among others, all of the Debtors' trade and other unsecured creditors.

The Prepackaged Plan will provide the financial stability to allow the Debtors to continue

their efforts to maintain and enhance their position as a leading publishing company in

the United States.  However, the Debtors cultivate relationships with a wide variety of

General Unsecured Creditors, and any loss of confidence regarding the Company's

ability to honor its obligations to them would undermine the goals of the Prepackaged

Plan by disrupting the Debtors' businesses and reducing the value of the Debtors' estates.

Accordingly, to (i) facilitate a smooth transition into and out of bankruptcy; (ii) preserve

the Debtors' relationships with their General Unsecured Creditors; (iii) enhance the

Debtors' credibility; and (iv) maximize the value of the Debtors' estates in furtherance of

the goals of the Prepackaged Plan, it is critical that the Debtors assure the General

Unsecured Creditors that they have sufficient authority to continue to honor their

obligations in the ordinary course over the short duration of these chapter 11 cases.

---

[2]   Estimate of amount to come due between the Petition Date and June 29, 2012.  Includes amounts:  (i) to
be paid under purchase orders for direct materials (goods) for sale; (ii) accrued royalties due to authors;
(iii) Advanced Learning Center vendors; (iv) HMH and Heinemann accounts payable; (v) purchase
orders for indirect materials (non-goods); and (v) other accrued liabilities.

6.     The requested relief is not an attempt to prioritize certain claims over others and is consistent with the terms of the Prepackaged Plan which proposes to pay all Unimpaired Claims in full.  Moreover, Payment of the Unimpaired Claims in the ordinary course of business will ease the administrative burden on the Debtors' estates pending confirmation of the Prepackaged Plan by eliminating the need for a bar date and claims procedures.

7.     Accordingly, the Debtors request authority (but not direction) to pay as they come due in the ordinary course of business, the Prepetition Claims of General Unsecured Creditors who agree to continue to provide their goods and services on the customary credit terms that existed 120 days prior to the Petition Date, or on such other terms and conditions as are acceptable to the Debtors.   To the extent the Prepetition Claims of General Unsecured Creditors came due prior to the Petition Date, the Debtors request authority to pay such Prepetition Claims upon entry of the Order.

**Conditions on Payment to General Unsecured Creditors**

8.     In an effort to ensure that the Payment of Unimpaired Claims provides the Debtors with a benefit to their estates, the Debtors shall determine, in their sole discretion, which Unimpaired Claims, if any, will be paid pursuant to this Motion.

9.     Furthermore, if a General Unsecured Creditor accepts Payment under this Motion of any portion of an Unimpaired Claim (a "Payment"), such General Unsecured Creditor is deemed to have agreed to (i) continue the parties' business relationship and to provide goods and/or services to the Debtors on terms (including, without limitation, terms regarding the pricing of goods and level of service) that are, from the perspective of the Debtors, at least as good as or better than the terms and conditions (including credit terms) as they existed 120 days prior to the Petition Date, or

7

on other terms that are acceptable to the Debtors, in their sole discretion; or (ii) release goods and other assets of the Debtors in the General Unsecured Creditor's possession to the Debtors  (the "Trade Terms").  The Trade Terms shall be applicable for the duration of the Debtors' chapter 11 cases.

10.     If a General Unsecured Creditor has accepted a Payment and fails to comply with the Trade Terms, then (a) any Payment received by the General Unsecured Creditor may be deemed by the Debtors to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may (i) recover from the General Unsecured Creditor in cash or (ii) at the Debtors' option, apply against any outstanding administrative claim held by such General Unsecured Creditor and (b) upon recovery of any Payment, the corresponding prepetition claim of the General Unsecured Creditor will be reinstated in the amount recovered by the Debtors.

11.     If the Debtors seek to recover a Payment from a General Unsecured Creditor due to its failure to comply with the Trade Terms, the General Unsecured Creditor may contest such action by: (i) making a written request (a "Request") to the Debtors to schedule a hearing before this Court and (ii) providing a detailed description of the reason for such Request.  Upon receipt of the Request and description of the purpose for the Request, the Debtors will request a hearing and provide notice to the General Unsecured Creditor making the Request as well as to the Notice Parties (as defined below).

## BASIS FOR RELIEF REQUESTED

**Payment of Unimpaired Claims is Appropriate
Under Sections 1107(a), 1108 and 363(b) of the Bankruptcy Code**

12.     Section 363(b)(l) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(l).  Courts in this and other circuits have stated that use of property outside the ordinary course of business is proper when the Debtor  articulates "some business justification, other than the mere appeasement of major creditors."  *See, e.g., Law Debenture Trust Co. v. Calpine Corp. (In re Calpine Corp.)*, 356 B.R. 585, 594 (S.D.N.Y. 2007); *Official Comm. Of Unsecured Creditors v. Enron Corp. (In re Enron Corp.)*, 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (*quoting In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)); *In re Ionosphere Clubs*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (stating that section 363(b) gives the court "broad flexibility" in authorizing the use of funds outside the ordinary course of business but noting that the debtor must articulate some business justification, other than mere appeasement of major creditors, for doing so).

14.     As discussed above, it is the Debtors' business judgment that failure to pay the Unimpaired Claims would undermine the goals of the Prepackaged Plan and impose unnecessary administrative burdens on the Debtors' estates, particularly in light of the anticipated short duration of these chapter 11 cases.  Moreover, timely Payment is consistent with the terms of the Prepackaged Plan and would not undermine the priority scheme outlined in the Bankruptcy Code.

**Payment of Unimpaired Claims is Appropriate Under Section 105(a) of the
Bankruptcy Code and is in Accordance with the Doctrine of Necessity**

15.     Section 105(a) of the Bankruptcy Code, which codifies the

equitable powers of bankruptcy courts, authorizes the Court to "issue any order, process,

or judgment that is necessary or appropriate to carry out the provisions of [the

Bankruptcy Code]."  11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code ensures

a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of

the exercise of its jurisdiction."  2 COLLIER ON BANKRUPTCY 105.01 (Alan N. Resnick &

Henry J. Sommer eds., 16th ed.).  Under section 105(a), courts may permit pre-plan

payments of prepetition obligations when essential to the continued operation of the

debtor's business.  *Id.* Courts that have approved such payments have relied on the

"necessity of payment" doctrine, which further supports the requested relief.  *Ionosphere

Clubs*, 98 B.R. at 176 (necessity of payment rule applies to chapter 11 debtors)[3] (*citing

In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (payment of

creditors' claims authorized under "necessity of payment" doctrine) (additional citations

omitted)); *In re Just For Feet Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (recognizing "the

court's power to authorize payment of pre-petition claims when such payment is

necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*,

---

[3]    Although the Court in *Ionosphere Clubs* was applying the necessity of payment doctrine in a railroad
reorganization case, it noted that the doctrine would still be applicable under the rationale of Judge
Learned Hand who applied this rule to a non-railroad debtor.  *Id.* at 176 (*citing Dudley v. Mealey*, 147
F.2d 268 (2d Cir.), *cert. denied*, 325 U.S. 873 (1945)).  In *Dudley*, Judge Hand stated that "[j]ust as it is
recognized that, after insolvency, the expenses of continued operation of a business may be necessary to
preserve its value for the secured creditors themselves, and for that reason that the receiver's creditors
have priority, so it may be before insolvency."  *Dudley*, 147 F.2d at 271.

171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (noting that the debtors "may pay pre-

petition claims that are essential to continued operation of business"); 2 COLLIER ON

BANKRUPTCY ¶ 105.02[4] [a] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

16.     Pursuant to the "doctrine of necessity," bankruptcy courts have

recognized the existence of judicial equitable power to authorize the payment of

prepetition claims where such payments are necessary to preserve the going concern

value of a debtor's business, thereby facilitating its reorganization.  *See, e.g., In re

Ionosphere Clubs*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989) (*citing Miltenberger v.

Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286, 311 (1882) (articulating legal theory later

termed the "doctrine of necessity" or the "'necessity of payment' doctrine" and holding

that payment of pre-receivership claim prior to reorganization permitted to prevent

stoppage of crucial business relations)); *In re Boston and Me. Corp.*, 634 F.2d 1359, 1382

(1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay

claims for goods and services that are indispensably necessary to the debtors' continued

operation); *Southern Ry. Co.* v. *Flournoy*, 301 F.2d 847, 852 (4th Cir. 1962) ("The

principle of necessity of payment [espoused in *Miltenberger*] has since been carried into

different factual surroundings as the basis for granting superiority to business-operating

accounts."); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (granting

approval to pay prepetition claims of certain trade vendors which were critical to the

debtors' reorganization); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D.

Del. 1994) (noting that debtors may pay prepetition claims that are essential to continued

operation of business).  Debtors often invoke the necessity of payment doctrine early in a

reorganization case when preservation of the estate proves most critical and is often

difficult.

17.     If the Debtors were not authorized to honor their obligations to

holders of Unimpaired Claims in the ordinary course, the Debtors' General Unsecured

Creditors may question the Debtors' ability to maintain  "business as usual" operations

which would undermine the Debtors' relationships with their General Unsecured

Creditors.   This, in turn, would diminish the value of the Debtors' estate as General

Unsecured Creditors tighten trade terms or halt delivery of goods and services altogether

and could negatively impact the Debtors' reputation and good will.  The Debtors operate

in a highly competitive industry, and their continued success depends on maintaining the

confidence of their key stakeholder groups.  Any loss of confidence among these

stakeholders could jeopardize the Debtors' important relationships with their General

Unsecured Creditors and harm the Debtors' chapter 11 estates and reorganization

process.  Although the relief requested  in the Debtors' First Day Motions likely will help

the Debtors avoid many of the damaging effects of a chapter 11 filing, such relief will not

be sufficient to allow the Debtors to avoid the harm and stigma associated with a

chapter 11 filing.

**Payment of Certain Unimpaired Claims is Authorized Under
Sections 503(b)(9) and 363(c)(1) of the Bankruptcy Code**

18.     A portion of the General Unsecured Claims totaling approximately

$12,305,531 relates to deliveries of goods to the Debtors within the twenty (20) days

prior to the Petition Date.

19.     Under section 503(b)(9) of the Bankruptcy Code, claims for the

value of goods received by the Debtors in the ordinary course of their businesses during

the 20-day period prior to the Petition Date are entitled to administrative priority status

(the "Twenty-Day Administrative Claims").  Accordingly, the General Unsecured Claims

that fall within the meaning of section 503(b)(9) of the Bankruptcy Code would have to

be paid in full in cash, on the Effective Date of the Prepackaged Plan, unless the holders

of the Twenty-Day Administrative Claims agree to different treatment in order for the

Debtors to confirm the Prepackaged Plan.  11 U.S.C. § 1129(a)(8)(A).  As a result, the

relief requested in the Motion in connection with the Twenty-Day Administrative Claims

is merely an extension and acceleration of the required treatment of such claims under

any proposed plan of reorganization.  Furthermore, to the extent that these Unimpaired

Claims are entitled to administrative priority, the Payment of such claims will not deplete

the pool of assets generally available to other unsecured creditors.

**The Prepackaged Chapter 11 Case Guidelines**

20.    In accordance with the Amended Procedural Guidelines for

Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern

District of New York dated November 24, 2009 (the "Guidelines"), the Debtors' motion

for an order authorizing the Debtor to pay creditors whose prepetition claims will be paid

in full in cash on consummation under the Debtor's plan is listed as a "Typical First Day

Motion and Order" in a prepackaged bankruptcy case.  Guidelines, at § VI.C.16.

21.    Because the proposed Plan provides that all Unimpaired Claims

will be paid in full, no parties in interest will be prejudiced by the relief requested herein.

Due to the prepackaged nature of these cases and the very brief amount of time that the

Debtors anticipate spending in chapter 11,  it also will be an unnecessary burden for the

Debtors and their estates to analyze and process each Unimpaired Claim so as to

13

determine which amounts are payable as postpetition administrative expenses and which

amounts should be held back until such time as the terms and conditions of the proposed

Prepackaged Plan are effectuated.  Indeed, it is likely that the Debtors will emerge from

chapter 11 before some prepetition amounts even become due by their ordinary trade

terms. Under these circumstances, approval of the requested relief is appropriate and

consistent with the aforementioned Guidelines.

    22.  In "prepackaged" bankruptcy cases, where prepetition claims are

to be paid in full pursuant to the debtor's plan of reorganization, courts in this District

have previously authorized the current payment of Unimpaired Claims prior to

confirmation of the plan. *See, e.g., In re Penton Business Media Holdings, Inc.*, Case No.

10-10689 (AJJ) (Bankr. S.D.N.Y. Feb. 11, 2010) [Docket No. 43]; *In re CIT Group Inc.*,

Case No. 09-16565 (ALG) (Bankr. S.D.N.Y. Nov 24, 2009) [Docket No. 128]; *In re

Tricom, S.A.*, Case No. 08-10720 (REG) (Bankr. S.D.N.Y. Mar. 4, 2008) [Docket

No. 39].

**REQUEST FOR AUTHORITY FOR BANKS TO HONOR AND PAY CHECKS
AND FUNDS TRANSFERS RELATED TO UNIMPAIRED CLAIMS**

    23.  To implement the relief requested herein, the Debtors further

request that all their banks and other financial institutions (collectively, the "Debtors'

Banks") be authorized and directed to receive, process, honor and pay all checks

presented for payment of, and to honor all funds transfer requests made by the Debtors

related to the claims that the Debtors seek authority in this Motion to pay, regardless of

whether such checks were presented or funds transfer requests were submitted prior to or

after the Petition Date; provided, however, that (i) funds are available in the Debtors'

accounts to cover such checks and funds transfers and (ii) the Debtors' Banks are

authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by the order granting the relief sought herein.

24.     Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim constitutes an Unimpaired Claim or Twenty-Day Administrative Claim; or (e) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

### REQUEST FOR WAIVER OF BANKRUPTCY RULES 6003(B), 6004(A), 6004(H) AND LOCAL RULE 9013-1(B)

25.     The Debtors submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") has been satisfied.  Furthermore, given the nature of the relief requested herein, the Debtors respectfully request a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a); (ii) the 14-day stay under Bankruptcy Rule 6004(h); and (iii) the notice requirements under Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rule 9013-1(b)").

### NOTICE

26.     As of the date hereof, no creditors' committee, trustee, or examiner has been appointed in these chapter 11 cases.  Notice of this Motion has been provided to:  (i) the United States Trustee, Attention:  Andrea B. Schwartz; (ii) counsel for the DIP/Exit Agent; (iii) the parties identified on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (iv) counsel for the Informal Creditor Group; (v) counsel for

the Prepetition Senior Secured Notes Trustee; (vi) counsel for the Prepetition Agent; (vii)

counsel for the Prepetition L/C Bank; (viii) the Securities and Exchange Commission;

(ix) the United States Attorney for the Southern District of New York; (x) the Internal

Revenue Service; (xi) the Environmental Protection Agency; (xii) the Pension Benefit

Guaranty Corporation; (xiii) the New York State Department of Taxation; (xiv) the New

York City Tax Department; and (xv) such other parties entitled to notice pursuant to

Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief

requested, no other or further notice need be provided.

## <u>NO PRIOR REQUEST</u>

27.    No prior request for the relief sought in this Motion has been made

to this or any other Court.

WHEREFORE, the Debtors respectfully request that this Court enter an

order substantially in the form attached hereto as Exhibit A granting the requested relief

and such other and further relief as it deems just and proper.

Dated:  May 21, 2012                        PAUL, WEISS, RIFKIND WHARTON &
         New York, New York                 GARRISON LLP

                                            By:   /s/ Jeffrey D. Saferstein_____
                                            Alan Kornberg
                                            (akornberg@paulweiss.com)
                                            Jeffrey D. Saferstein
                                            (jsaferstein@paulweiss.com)
                                            Philip Weintraub
                                            (pweintraub@paulweiss.com)
                                            1285 Avenue of the Americas
                                            New York, New York  10019-6064
                                            Telephone:  (212) 373-3000
                                            Facsimile:   (212) 757-3990


                                            Proposed attorneys for the Debtors and
                                            Debtors-in-Possession

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| HOUGHTON MIFFLIN | : Case No. 12-____ (___) |
| HARCOURT PUBLISHING COMPANY, *et al.,* | : |
| | : (Joint Administration Pending) |
| Debtors. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### INTERIM ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION GENERAL UNSECURED CLAIMS AND OTHER UNIMPAIRED CLAIMS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "Motion")[1] of Houghton Mifflin Harcourt

Publishing Company and its affiliated debtors and debtors-in-possession in the above-

captioned cases (each a "Debtor," and collectively, the "Debtors"), requesting entry of an

order pursuant to sections 105(a), 363, 1107(a) and 1108 of the Bankruptcy Code

authorizing the Debtors to pay prepetition general unsecured claims and other unimpaired

claims in the ordinary course of business; and upon consideration of the Bayers Affidavit

pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of

New York, sworn to on May 21, 2012; and this Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it

appearing that venue of these cases and the Motion in this District is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b); and it appearing that notice of the Motion has been given

as set forth in the Motion and that such notice is adequate and no other or further notice

need be given; and a hearing having been held to consider the relief requested in the

---

[1]    All capitalized terms used and  not defined herein shall have the meaning ascribed to them in the
Motion.

1

Motion and upon the record of the hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED that:

1.      The Motion is GRANTED as modified herein.

2.      In addition to the amounts the Debtors are authorized to pay pursuant to the First Day Motions and their respective orders, the Debtors are authorized, in the Debtors' sole discretion and in the ordinary course of their businesses, to pay Unimpaired Claims as they become due and payable; *provided*, *however*, that prior to the Effective Date of the Prepackaged Plan, the Debtors must obtain the prior written consent of the Informal Creditor Group before paying any Unimpaired Claim of $5 million or more with the exception of Unimpaired Claims listed on the list of the top twenty (20) unsecured creditors attached to the Bayers Declaration.

3.      To the extent the Prepetition Claims of General Unsecured Creditors came due prior to the Petition Date, the Debtors are authorized to pay such Prepetition Claims upon entry of this Order.

4.      If a General Unsecured Creditor accepts a Payment, such General Unsecured Creditor is deemed to have agreed to: (i) continue the parties' business relationship and to provide goods and/or services to the Debtors on terms (including, without limitation, terms regarding the pricing of goods and level of service) that are, from the perspective of the Debtors, at least as good as or better than the terms and

conditions (including credit terms) as they existed 120 days prior to the Petition Date, or on other terms that are acceptable to the Debtors, in their sole discretion; or (ii) release goods and other assets of the Debtors in the General Unsecured Creditor's possession to the Debtors.  The Trade Terms shall be applicable for the duration of the Debtors' chapter 11 cases.

5.    If a General Unsecured Creditor has accepted a Payment and fails to comply with the Trade Terms, then (a) any Payment received by the General Unsecured Creditor may be deemed by the Debtors to be an unauthorized voidable postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may (i) recover from the General Unsecured Creditor in cash or (ii) at the Debtors' option, apply against any outstanding administrative claim held by such General Unsecured Creditor and (b) upon recovery of any Payment, the corresponding prepetition claim of the General Unsecured Creditor will be reinstated in the amount recovered by the Debtors.

6.    If the Debtors seek to recover a Payment from a General Unsecured Creditor due to its failure to comply with the Trade Terms, the General Unsecured Creditor may contest such action by (i) making a Request to the Debtors to schedule a hearing before this Court and (ii) providing a detailed description of the reason for such Request.  Upon receipt of the Request the Debtors will request a hearing and provide notice to the General Unsecured Creditor making the Request and the Notice Parties.

7.    The Debtors' banks are authorized and directed to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, Unimpaired Claims paid pursuant to this Order,

regardless of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date; provided, however, that (i) funds are available in the Debtors' accounts to cover such checks and funds transfers and (ii) the Debtors' banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

8. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim is a claim for payments authorized pursuant to the Motion; or (v) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

9. Within three (3) business days after entry hereof, the Debtors shall serve a copy of the Motion and this Order upon (i) the United States Trustee, Attention: Andrea B. Schwartz; (ii) counsel for the DIP/Exit Agent; (iii) the parties identified on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (iv) counsel for the Informal Creditor Group; (v) counsel for the Prepetition Senior Secured Notes Trustee; (vi) counsel for the Prepetition Agent; (vii) counsel for the Prepetition L/C Bank; (viii) the Securities and Exchange Commission; (ix) the United States Attorney for the Southern District of New York; (x) the Internal Revenue Service; (xi) the Environmental Protection Agency; (xii) the Pension Benefit Guaranty Corporation; (xiii) the New York State Department of Taxation; (xiv) the New York City Tax Department; and (xv) such other parties entitled to notice pursuant to Local Rule 9013-1(m).

10.     A hearing shall be held to consider the relief granted herein on a final basis on _____, 2012, at _.m., before the Honorable _____, United States Bankruptcy Judge, in Courtroom _____ Alexander Hamilton Court House, One Bowling Green, New York, New York; and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-242, and served upon (i) the United States Trustee, <u>Attention</u>:  Andrea B. Schwartz; (ii) counsel for the DIP/Exit Agent; (iii) the parties identified on the Debtors' consolidated list of twenty (20) largest unsecured creditors; (iv) counsel for the Informal Creditor Group; (v) counsel for the Prepetition Senior Secured Notes Trustee; (vi) counsel for the Prepetition Agent; (vii) counsel for the Prepetition L/C Bank; (viii) the Securities and Exchange Commission; (ix) the United States Attorney for the Southern District of New York; (x) the Internal Revenue Service; (xi) the Environmental Protection Agency; (xii) the Pension Benefit Guaranty Corporation; (xiii) the New York State Department of Taxation; (xiv) the New York City Tax Department; and (xv) such other parties entitled to notice pursuant to Local Rule 9013-1(m).

11.     Any objections or responses to the Motion shall be filed on or before May [ ], 2012 at 4:00 p.m. prevailing Eastern Time and served on parties in interest as required by the Local Rules.

12.     This Order, and all acts taken in furtherance of or reliance upon this Order, shall be effective notwithstanding the filing of an objection.

13.     Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the

6

Debtors.  The requirements of Bankruptcy Rules 6004(a) and 6004(h) and Local Rule

9013-1(b) are waived.

       14.    The Court shall retain jurisdiction to hear and determine all matters

arising from or related to the implementation of this Order.


Dated:  May [  ], 2012
      New York, New York


                                     _____

                                     UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:                                              :    Chapter 11
                                                    :
HOUGHTON MIFFLIN                                    :    Case No. 12-____ (___)
HARCOURT PUBLISHING COMPANY, *et al.,*              :
                                                    :    (Joint Administration Pending)
                                    Debtors.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FINAL ORDER AUTHORIZING THE DEBTORS TO PAY PREPETITION GENERAL UNSECURED CLAIMS AND OTHER UNIMPAIRED CLAIMS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "Motion")[1] of Houghton Mifflin Harcourt

Publishing Company and its affiliated debtors and debtors-in-possession in the above-

captioned cases (each a "Debtor," and collectively, the "Debtors"), requesting entry of an

order pursuant to sections 105(a), 363, 1107(a) and 1108 of the Bankruptcy Code

authorizing the Debtors to pay prepetition general unsecured claims and other unimpaired

claims in the ordinary course of business; and upon consideration of the Bayers Affidavit

pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of

New York, sworn to on May 21, 2012; and this Court having jurisdiction to consider the

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it

appearing that venue of these cases and the Motion in this District is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and it appearing that this matter is a core proceeding

pursuant to 28 U.S.C. § 157(b); and it appearing that notice of the Motion has been given

as set forth in the Motion and that such notice is adequate and no other or further notice

---

[1]    All capitalized terms used and  not defined herein shall have the meaning ascribed to them in the Motion.

1

need be given; and a hearing having been held to consider the relief requested in the

Motion and upon the record of the hearing and all of the proceedings had before the

Court; and the Court having found and determined that the relief sought in the Motion is

in the best interests of the Debtors, their estates, their creditors and all other parties in

interest; and that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is hereby ORDERED that:

15.    The Motion is GRANTED as modified herein.

16.    In addition to the amounts the Debtors are authorized to pay

pursuant to the First Day Motions and their respective orders, the Debtors are authorized,

in the Debtors' sole discretion and in the ordinary course of their businesses, to pay

Unimpaired Claims as they become due and payable; *provided*, *however*, that prior to the

Effective Date of the Prepackaged Plan, the Debtors must obtain the prior written consent

of the Informal Creditor Group before paying any Unimpaired Claim of $5 million or

more with the exception of Unimpaired Claims listed on the list of the top twenty (20)

unsecured creditors attached to the Bayers Declaration.

17.    To the extent the Prepetition Claims of General Unsecured

Creditors came due prior to the Petition Date, the Debtors are authorized to pay such

Prepetition Claims upon entry of this Order.

18.    If a General Unsecured Creditor accepts a Payment, such General

Unsecured Creditor is deemed to have agreed to: (i) continue the parties' business

relationship and to provide goods and/or services to the Debtors on terms (including,

without limitation, terms regarding the pricing of goods and level of service) that are,

from the perspective of the Debtors, at least as good as or better than the terms and

conditions (including credit terms) as they existed 120 days prior to the Petition Date, or

on other terms that are acceptable to the Debtors, in their sole discretion; or (ii) release

goods and other assets of the Debtors in the General Unsecured Creditor's possession to

the Debtors.  The Trade Terms shall be applicable for the duration of the Debtors' chapter

11 cases.

19.    If a General Unsecured Creditor has accepted a Payment and fails

to comply with the Trade Terms, then (a) any Payment received by the General

Unsecured Creditor may be deemed by the Debtors to be an unauthorized voidable

postpetition transfer under section 549 of the Bankruptcy Code that the Debtors may (i)

recover from the General Unsecured Creditor in cash or (ii) at the Debtors' option, apply

against any outstanding administrative claim held by such General Unsecured Creditor

and (b) upon recovery of any Payment, the corresponding prepetition claim of the

General Unsecured Creditor will be reinstated in the amount recovered by the Debtors.

20.    If the Debtors seek to recover a Payment from a General

Unsecured Creditor due to its failure to comply with the Trade Terms, the General

Unsecured Creditor may contest such action by (i) making a Request to the Debtors to

schedule a hearing before this Court and (ii) providing a detailed description of the reason

for such Request.  Upon receipt of the Request the Debtors will request a hearing and

provide notice to the General Unsecured Creditor making the Request and the Notice

Parties.

21.    The Debtors' banks are authorized and directed to receive, process,

honor and pay all checks presented for payment of, and to honor all funds transfer

requests made by the Debtors related to, Unimpaired Claims paid pursuant to this Order, regardless of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date; provided, however, that (i) funds are available in the Debtors' accounts to cover such checks and funds transfers and (ii) the Debtors' banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

22.    Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim is a claim for payments authorized pursuant to the Motion; or (v) a request to assume any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

23.    Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.  The requirements of Bankruptcy Rules 6004(a) and 6004(h) and Local Rule 9013-1(b) are waived.

24.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:  May [  ], 2012
         New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE