# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY, *et al.*,[1] | ) ) ) | Case No. 12-12171 (REG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### INTERIM ORDER (I) AUTHORIZING POST-PETITION SECURED SUPERPRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 105(a), 362, 364(c)(1), 364(c)(2) AND 364(d), (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 363, 364 AND 507, (IV) GRANTING CERTAIN PROTECTIVE RELIEF WITH REGARD TO THE FEE LETTERS RELATING TO THE DIP/EXIT FACILITIES, AND (V) SCHEDULING A FINAL HEARING ON DEBTOR-IN-POSSESSION AND EXIT FINANCING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c)

Upon the motion, dated May 21, 2012 (the "**Motion**"), of (i) Houghton Mifflin Harcourt Publishers Inc. ("**HMHP**"), (ii) HMH Publishers LLC ("**Publishers**"), (iii) Houghton Mifflin Harcourt Publishing Company ("**HMCo**"; together with HMHP and Publishers, the "**Borrowers**"), and their affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**"), in the above-captioned chapter 11 cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 2002, 4001

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Houghton Mifflin Harcourt Publishing Company (6030), Houghton Mifflin Harcourt Publishers Inc. (7305), HMH Publishers, LLC (7173), Houghton Mifflin Holding Company, Inc. (2898), Houghton Mifflin, LLC (2961), Houghton Mifflin Finance, Inc. (2812), Houghton Mifflin Holdings, Inc. (0674), HM Publishing Corp. (5843), Riverdeep Inc., a Limited Liability Company (9612), Broderbund LLC (6113), RVDP, Inc. (2557), HRW Distributors, Inc. (4902), Greenwood Publishing Group, Inc. (4537), Classroom Connect, Inc. (3282), ACHIEVE! Data Solutions, LLC (7499), Steck-Vaughn Publishing LLC (6929), HMH Supplemental Publishers Inc. (7571), HMH Holdings (Delaware), Inc. (6372), Sentry Realty Corporation (6742), Houghton Mifflin Company International, Inc. (9100), The Riverside Publishing Company (0173), Classwell Learning Group Inc. (9252), Cognitive Concepts, Inc. (5986), Edusoft (9992), and Advanced Learning Centers, Inc. (2861).

and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the

Local Bankruptcy Rules for the Southern District of New York, including Rule 4001-2 (the

"**SDNY Local Rules**"), seeking, among other things:

(a)    authorization for the Borrowers to obtain, and for HMH Holdings

(Delaware), Inc. ("**Holdings**") and all of the Borrowers' direct and indirect

domestic subsidiaries that are Debtors herein (collectively, with Holdings, the

"**DIP Guarantors**) (excluding certain subsidiaries that currently are not

guarantors or pledgors under the Prepetition First Lien Credit Agreement (as

hereinafter defined)) to guarantee, postpetition secured financing up to the

aggregate principal amount of $500,000,000, the "**DIP Facility**"); and to incur the

Obligations[2] (the "**DIP Obligations**"), consisting of, among other things, (i)

subject to Availability, a non-amortizing asset-based revolving credit facility (the

"**DIP ABL Facility**) providing for revolving credit loans in an aggregate principal

amount of up to $250,000,000 (the "**DIP ABL Loans**"), inclusive of (x) a letter of

credit subfacility for letters of credit in an aggregate amount of $25,000,000, and

(y) a discretionary swingline loan subfacility in an aggregate amount of

$20,000,000, and (ii) a non- amortizing[3] term loan facility (the "**DIP Term Loan**

**Facility**") providing for a term loan in an aggregate principal amount of up to

$250,000,000 (the "**DIP Term Loan**" and, together with the DIP ABL Loans, the

"**DIP Loans**"), including, on an interim basis, for a period (the "**Interim Period**")

from the entry of this order (the "**Interim Order**") through the entry of the Final

---

[2]    Capitalized terms not otherwise defined herein shall have the respective meanings ascribed to them in the Motion or the DIP/Exit Loan Agreements (as hereinafter defined), as applicable.

[3]    The Exit Term Loan Facility (as hereinafter defined) is an amortizing term loan facility.

Order (as hereinafter defined), up to an aggregate principal amount of (A) $250,000,000 in Availability under the DIP ABL Facility, in accordance with the terms and conditions of the Superpriority Senior Secured Debtor-in-Possession and Exit Revolving Credit Agreement, dated as of May 22, 2012, in the form annexed to the Motion as Exhibit A and incorporated herein by reference (as it may be amended from time to time in accordance with the terms thereof and of this Interim Order, the "**DIP/Exit Revolving Credit Agreement**"), and (B) $150,000,000 in Term Loans under the DIP Term Loan Facility, in accordance with the terms and conditions of the Superpriority Senior Secured Debtor-in-Possession and Exit Term Loan Agreement, dated as of May 22, 2012, in the form annexed to the Motion as Exhibit B and incorporated herein by reference (as it may be amended from time to time in accordance with the terms thereof and of this Interim Order, the "**DIP/Exit Term Loan Agreement**"; together with the DIP/Exit Revolving Credit Agreement, the "**DIP/Exit Loan Agreements**"), among the Borrowers, the guarantors from time to time party thereto (the "**DIP/Exit Guarantors**"), Citigroup Global Markets Inc., or one or more of its affiliates, as Administrative Agent, Collateral Agent, Lead Arranger and Book Runner (the "**DIP/Exit Agents**"; prior to the Exit Facility Conversion Date (as hereinafter defined), in such collective capacities in connection with the DIP Facility, the "**DIP Agent**"), and the lenders from time to time party thereto (the "**DIP/Exit Lenders**");

(b)    authorization for the Debtors, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, to grant the DIP Agent (for the

ratable benefit of the DIP Agent and the Lenders under the DIP Facility (the "**DIP Lenders**") and, as applicable, other Secured Parties (as defined in the DIP/Exit Loan Agreements)[4] (collectively, the "**DIP Secured Parties**")) liens, as defined in section 101(37) of the Bankruptcy Code, (the "**DIP Liens**") upon the Debtors' property as provided in and as contemplated by, this Interim Order, the Final Order (as hereinafter defined), the DIP/Exit Loan Agreements and the Security Documents;

(c)    authorization, upon the occurrence of the Exit Facility Conversion Date, for the Debtors to convert the DIP Facility into a post-emergence exit financing facility (the "**Exit Facility**"[5]; the DIP Facility together with the Exit Facility, the "**DIP/Exit Facilities**") and convert the DIP Obligations into post-emergence exit Obligations (the "**Exit Obligations**"), whereupon (i) the DIP ABL Facility shall convert into a post-emergence secured asset backed revolving loan facility (the "**Exit ABL Facility**")[6] and the DIP ABL Loans shall convert into post-emergence loans ( the "**Exit ABL Loans**"), (ii) the DIP Term Loan Facility shall convert into post-emergence exit term loans (the "**Exit Term Loan Facility**") and the loans thereunder shall convert into post-emergence loans (the "**Exit Term Loans**" and, together with the Exit ABL Loans, the "**Exit Loans**" ),

---

[4]    Other Secured Parties include certain providers to the Debtors of hedging and cash management services that are secured under the DIP/Exit Loan Agreements.

[5]    The Exit Facility consists of the Exit ABL Facility and the Exit Term Loan Facility, each as hereinafter defined.

[6]    The Exit ABL Facility will have (i) a letter of credit subfacility in an aggregate amount of $40,000,000, which may be used, among other things, to replace, roll over or backstop certain outstanding letters of credit, and (ii) a discretionary swingline loan subfacility in an aggregate amount of $20,000,000.

and (iii) the DIP Liens shall convert into post-emergence liens (the "**Exit Liens**" and together with the DIP Liens, the "**DIP/Exit Liens**");

(d)    authorization for the Debtors to execute and enter into the DIP/Exit Loan Agreements and all related documents contemplated thereby (the "**DIP/Exit Documents**") and to perform such other and further acts as may be required in connection with the DIP/Exit Loan Agreements;

(e)    authorization for the Debtors to use cash collateral (including cash and cash equivalent proceeds maintained in deposit and securities accounts subject to prepetition control agreements) and other collateral pursuant to sections 363(c) and 363(e) of the Bankruptcy Code, Bankruptcy Rule 4001(b) and the SDNY Local Rules, including SDNY Local Rule 4001-2, on the terms and conditions set forth in this Interim Order;

(f)    authorization for the Debtors to use the proceeds of the borrowings under the DIP Facility (i) to refinance the Prepetition Receivables Facility (as hereinafter defined), (ii) to provide liquidity for working capital and for other general corporate purposes of the Loan Parties (including payment of fees and expenses in connection with the transactions contemplated hereby) and for costs associated with the administration of the Cases, and (iii) to provide certain adequate protection payments described in paragraph 11(b) below, to or for the benefit of: (A) the Prepetition Agent (as hereinafter defined) and the lenders (collectively, the "**Prepetition First Lien Bank Lenders**") from time to time party to, the First Lien Credit Agreement, dated as of December 12, 2007 (as amended, supplemented, restated or otherwise modified from time to time, the

"**Prepetition First Lien Credit Agreement**") by and among Holdings, HMH Publishing Company, HMHP, Publishers, HMCo, the guarantors party thereto, Citibank, N.A. (as successor in interest to Wilmington Trust FSB), as Administrative Agent (the "**Prepetition Administrative Agent**"), and Citibank, N.A. (as successor in interest to Credit Suisse AG, Cayman Islands Branch), as Collateral Agent (the "**Prepetition First Lien Collateral Agent**"; together with the Prepetition Administrative Agent, the "**Prepetition Agent**"), and (B) holders (the "**Prepetition Senior Secured Noteholders**"; and together with the Prepetition First Lien Bank Lenders, the "**Prepetition Secured Creditors**") of the 10½% Senior Secured Notes due 2019 (the "**Prepetition Senior Secured Notes**") issued by HMHP and HMCo under that certain indenture dated as of May 26, 2011 (the "**Prepetition Senior Secured Notes Indenture**") (as amended, supplemented, restated or otherwise modified from time to time), by and among HMHP and HMCo, certain guarantors, and The Bank of New York Mellon Trust Company, N.A., as trustee and collateral agent (in such collective capacities, the "**Prepetition Senior Secured Notes Trustee**");

(g)    authorization for the Debtors to continue to (i) maintain the letter of credit facility pursuant to which Wells Fargo Bank, National Association ("**Wells Fargo**" or the "**Prepetition L/C Bank**") has agreed to issue up to $50 million of standby letters of credit under that certain Credit Agreement, dated as of October 26, 2010, by and among HMHP, as Borrower, and Wells Fargo, as Issuer (as amended, modified or supplemented, from time to time, the

"**Prepetition L/C Facility**"), which letters of credit have been cash collateralized, and (ii) and make any payments as required under the Prepetition L/C Facility;

(h)    the granting of allowed superpriority claims to the DIP Agent (for the ratable benefit of the DIP Lenders and the DIP Agent), pursuant to section 364(c)(1) of the Bankruptcy Code, payable from, and having recourse to, all prepetition and postpetition property of the Debtors' estates and all proceeds thereof, as provided herein;

(i)    subject only to and effective upon entry of the Final Order granting such relief, the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

(j)    authorization for the Debtors to provide adequate protection to the Prepetition Agent, the Prepetition First Lien Bank Lenders, the Prepetition Senior Secured Notes Trustee and the Prepetition Senior Secured Noteholders from any diminution in value of their interest in the Prepetition Loan Collateral or the Prepetition Senior Secured Notes Collateral (as the case may be);

(k)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP/Exit Documents and this Interim Order;

(l)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary (x) to have HM Publishing Corp., as the sole member (in such capacity, the "**Member**") of HM Receivables Co. II, LLC ("**HM Receivables Co.**"), (i) consent to the termination by HM Receivables Co. of an existing and undrawn accounts receivable financing (described below)

7

and certain related actions to amend the limited liability company agreement of HM Receivables Co. to eliminate certain "special purpose vehicle" restrictions on HM Receivables Co.; (ii) permit the sale and distribution of substantially all of the assets of HM Receivables Co. to the Member; (iii) consent to the dissolution of HM Receivables Co. and (y) in connection therewith, (i) to have certain Debtors referred to below as "**Originators**" terminate receivables sales to HM Receivables Co. (and for HM Receivables Co. to terminate the purchase of receivables from the Originators) and purchase such receivables from HM Receivable Co. and (ii) for HMCo to terminate servicing and undertakings in favor of HM Receivables Co. (and for HM Receivables Co. to terminate servicing by and such undertakings of HMCo);

(m)    certain protective relief with regard to the fee letter and the agency fee letter, each dated May 10, 2012 (collectively, the "**Fee Letters**") relating to the DIP/Exit Facilities, by and among HMHP, Publishers, HMCo and Citigroup Global Markets Inc., an affiliate of the DIP Agent; and

(n)    that the Bankruptcy Court (as hereinafter defined) schedule a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") authorizing the balance of the borrowings and letter of credit availability under the DIP/Exit Documents on a final basis, as set forth in the Motion and the DIP/Exit Documents filed with this Court.

The Interim Hearing having been held by this Court on May __, 2012, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2); and upon the record made by the Debtors at the

Interim Hearing and after due deliberation and consideration and sufficient cause appearing

therefor;

## THE COURT HEREBY FINDS AND DETERMINES THAT:[7]

A.    The Bankruptcy Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b)

and 1334, over the Cases, and over the persons and property affected hereby.  Consideration of

the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  The statutory

predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the

Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and the SDNY Local Rules.  Venue

of the Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    On May 21, 2012 (the "**Petition Date**"), the Debtors filed voluntary

petitions in the United States Bankruptcy Court for the Southern District of New York (the

"**Bankruptcy Court**") for relief, and commenced cases under chapter 11 of the Bankruptcy

Code.  The Cases have been consolidated procedurally for administrative purposes, and the

Debtors have continued in the possession of their assets and in the management of their

businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    As of the date hereof, the office of the United States Trustee for the

Southern District of New York (the "**U.S. Trustee**") has not appointed an official committee of

unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (to the

extent any such committee is subsequently appointed in these Cases, it shall be known as the

"**Committee**" for purposes of this Interim Order).

---

[7]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.

D.      Contemporaneously with the filing of their chapter 11 petitions, the

Debtors filed a proposed joint plan of reorganization (the "**Plan**") and a disclosure statement in

support thereof (the "**Disclosure Statement**").  The Debtors commenced solicitation of votes on

the Plan from impaired stakeholders prior to the Petition Date.  The voting period is scheduled to

conclude (i) on May 18, 2012 for (a) the Prepetition First Lien Bank Lenders and (b) the

Participating Lenders under that certain Restructuring Support Agreement, dated May 10, 2012

(the "**RSA**"), between and among the Participating Company Entities and the Participating

Lenders (each term as defined therein) and (ii) on June 11, 2012 for (a) the Prepetition Senior

Secured Noteholders and (b) the Existing Common Stockholders (as defined in the Plan).  The

Plan and the Disclosure Statement are the result of intensive, arms' length and good faith

negotiations between the Debtors and an informal group of unaffiliated investors comprised of

holders, or the advisors, nominees, or investment managers for beneficial holders, of claims

under the Prepetition First Lien Credit Agreement and the Prepetition Senior Secured Notes

Indenture (the "**Informal Creditor Group**").[8]

E.      Notice of the hearing (the "**Interim Hearing**") and the relief requested in

the Motion was given on the Petition Date by electronic mail, facsimile and/or overnight delivery

to (i) the U.S. Trustee, (ii)  the Prepetition Administrative Agent (on behalf of itself and the

Prepetition First Lien Bank Lenders) or its counsel, (iii) the Prepetition First Lien Collateral

Agent (on behalf of itself and the Prepetition First Lien Bank Lenders) or its counsel, (iv) the

---

[8]    The members of the Informal Creditor Group currently are the following entities (including certain of their
affiliates): (i) Paulson & Co., Inc., (ii) Q Investments, L.P., (iii) Anchorage Capital Group, L.L.C., (iv) Apollo
Management Holdings, L.P., (v) Avenue Capital Group, (vi) Blackrock Financial Management, Inc., (vii)
Lehman Commercial Paper Inc., (viii) Oakhill Advisors, L.P., and (ix) Knighthead Capital Management LLC.
The Informal Creditor Group engaged Houlihan Lokey Capital, Inc., as its financial advisor and Akin Gump
Strauss Hauer & Feld, LLP as legal counsel to assist it in connection with restructuring negotiations in the
Cases.  As of the Petition Date, the members of the Informal Creditor Group hold, in the aggregate, more than
66 2/3% of the total outstanding indebtedness held by the Prepetition Secured Creditors.

Prepetition Senior Secured Notes Trustee (on behalf of itself and the Prepetition Senior Secured

Noteholders) or its counsel, (v) JP Morgan Chase Bank, N.A. ("**JPMCB**"), as Administrative

Agent under the Prepetition Receivables Facility (as hereinafter defined) or its counsel, (vi)

counsel to the DIP/Exit Agents (on behalf of themselves and the DIP/Exit Lenders), (vii) counsel

to the Informal Creditor Group, (viii) Wells Fargo, as Issuer under the Prepetition L/C Facility or

its counsel, (ix) the entities listed on the Debtors' consolidated list of 20 largest unsecured

creditors, (x) the Internal Revenue Service, (xi) the Securities and Exchange Commission, (xii)

the United States Attorney for the Southern District of New York, (xiii) the Environmental

Protection Agency, (xiv) Pension Benefit Guaranty Corporation, (xv) the New York State

Department of Taxation, (xvi) the New York City Tax Department, and (xi) any other party that

has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice

under the Bankruptcy Rules (collectively, the "**Initial Notice Parties**"). Such notice constitutes

good and sufficient notice of the Motion and the Interim Hearing under the circumstances in

accordance with Bankruptcy Rules 4001(b) and 4001(c), the SDNY Local Rules and section

102(1) of the Bankruptcy Code, as required by sections 363(c), 363(e), 364(c) and 364(d) of the

Bankruptcy Code in light of the emergency nature of the relief requested in the Motion.

      F.      Without prejudice to the rights of any other party (but subject to the

limitations contained in paragraph 33), the Debtors admit, stipulate and agree that:

      (i)      As of the Petition Date, the Borrowers and the applicable guarantors,

without defense, counterclaim, or offset of any kind, were indebted and liable to the

Prepetition First Lien Bank Lenders in the aggregate principal amount of

$2,806,566,303.15, $2,570,815,478.95 of which is currently owed in aggregate principal

amount in respect of the Term Loans under and as defined in the Prepetition First Lien

Credit Agreement and $235,750,824.20 of which is owed in aggregate principal amount

outstanding in respect of the Revolving Loans under and as defined in such agreement,

plus all accrued and unpaid interest thereon, fees, expenses (including, without limitation,

any attorneys' fees and related expenses and disbursements that are chargeable or

reimbursable under the Prepetition First Lien Credit Agreement and related documents),

charges and other obligations incurred in connection therewith as provided in the

Prepetition First Lien Credit Agreement and related documents (the "**Prepetition Credit**

**Agreement Debt**"); *provided that* the foregoing does not include any prepayment fees or

premiums or other penalties under the Prepetition First Lien Credit Agreement.

(ii)    As of the Petition Date, the Borrowers and the applicable guarantors,

without defense, counterclaim, or offset of any kind, were indebted and liable to the

Prepetition Senior Secured Noteholders in the aggregate principal amount outstanding of

$300,000,000, plus all accrued and unpaid interest thereon, fees, expenses (including,

without limitation, any indenture trustee's or attorneys' fees and related expenses and

disbursements under and as provided in the Prepetition Senior Secured Notes Indenture

and related documents (the "**Prepetition Senior Secured Notes Debt**" and, together with

the Prepetition Credit Agreement Debt, the "**Prepetition Secured Debt**" and all of the

documents in respect thereof, the "**Prepetition Secured Debt Documents**" and all of the

obligations of the Debtors thereunder, the "**Prepetition Secured Obligations**"));

*provided that* the foregoing does not include any prepayment fees or premiums or other

penalties under the Prepetition Senior Secured Notes Indenture.

(iii)    The Prepetition Credit Agreement Debt and the Prepetition Senior Secured

Notes Debt constitute the legal valid and binding obligations of each of the Debtors,

enforceable in accordance with their terms (other than in respect of the stay of

enforcement arising from section 362 of the Bankruptcy Code).

(iv)    No portion of the Prepetition Secured Debt is subject to disallowance,

avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy

Code or applicable non-bankruptcy law, other than as expressly set forth in the

Prepetition Intercreditor Agreement (as hereinafter defined).

(v)    The liens and security interests granted to the Prepetition First Lien

Collateral Agent (the "**Prepetition Credit Agreement Liens**") in respect of the collateral

securing the obligations due in respect of the Prepetition Credit Agreement Debt (the

"**Prepetition Loan Collateral**"), and the liens and security interests granted to the

Prepetition Senior Secured Notes Trustee ("**Prepetition Senior Secured Note Liens**"

and together with the Prepetition Credit Agreement Liens, the "**Prepetition Existing**

**Liens**") in respect of the collateral securing the obligations due in respect of the

Prepetition Senior Secured Notes Debt (the "**Prepetition Senior Secured Notes**

**Collateral**" and, together with the Prepetition Loan Collateral, the "**Prepetition Secured**

**Indebtedness Collateral**"),[9] including, without limitation, all security agreements,

pledge agreements, mortgages, deeds of trust and other security documents executed by

any of the Debtors are (a) valid, binding, perfected and, other than in respect of the stay

of enforcement arising from section 362 of the Bankruptcy Code, enforceable liens and

security interests in the collateral securing the Prepetition Secured Obligations and (b) not

subject to disallowance, recharacterization, avoidance or subordination pursuant to the

---

[9]    The relative rights of the Prepetition First Lien Bank Lenders and the Prepetition Senior Secured
Noteholders with respect to the Prepetition Existing Liens are governed by the Pari Passu Intercreditor
Agreement (as defined in the Prepetition Senior Secured Notes Indenture) (the "**Prepetition Intercreditor**
**Agreement**").

Bankruptcy Code or applicable non-bankruptcy law, other than as expressly set forth in the Prepetition Intercreditor Agreement.

G.     Prior to the Petition Date, the Debtors sold receivables pursuant to an accounts receivable securitization (the "**Receivables Portfolio**") to certain non-debtor affiliates, as evidenced by (a) the Receivables Sale and Servicing Agreement, dated as of August 4, 2010 (as amended, supplemented, restated or otherwise modified from time to time, the "**Receivables Sale Agreement**"), by and among, HM Receivables Co., a non-debtor affiliate of the Debtors, as Buyer, certain of the Debtors, as the originators thereunder (the "**Originators**"), HMCo as the servicer (in such capacity, the "**Servicer**"), and the other parties from time to time party thereto, and (b) the Receivables Funding and Administration Agreement, dated as of August 4, 2010 (as amended, supplemented, restated or otherwise modified from time to time, the "**Prepetition Receivables Facility**"), by and among HM Receivables Co., as borrower, JPMCB, as administrative agent and the lenders from time to time party thereto and (c) certain related documents entered into in connection therewith.[10]

H.     The Borrowers requested that the DIP/Exit Agents and the DIP/Exit Lenders enter into the DIP/Exit Facilities in order to (a) refinance the Prepetition Receivables Facility, (b) fund expenses, working capital and other general corporate needs of the Borrowers and the DIP/Exit Guarantors subject to compliance with the requirements of the DIP/Exit Loan Agreements, and (c) pay all authorized costs, fees and expenses in connection with the Cases.

---

[10]     HM Receivables Co. was formed on June 14, 2010 under the laws of the State of Delaware and is organized pursuant to a Limited Liability Company Agreement effective as of July 26, 2010 (as amended, the "**LLC Agreement**").  HMCo is the sole Member of HM Receivables Co.

I.     The DIP/Exit Agents and the DIP/Exit Lenders have agreed to provide the DIP/Exit Facilities on the condition that the Receivables Portfolio and all collections thereon are pledged as collateral security for the DIP/Exit Facilities, and the Debtors have agreed to pledge the Receivables Portfolio and all collections thereon, upon the termination of the Prepetition Receivables Facility, the sale of the Receivables Portfolio to the Originators and the distribution of substantially all of the assets of HM Receivables Co. to the Member, including the deposit account into which such collections are presently received.

J.     To provide a guaranty and security for the repayment of the advances made under the DIP/Exit Facilities, and the satisfaction of other obligations of the Borrowers hereunder and under the DIP/Exit Documents, (a) the DIP/Exit Guarantors have agreed to provide a guaranty of the due and punctual payment of the DIP/Exit Obligations, and (b) the Borrowers and the DIP/Exit Guarantors have agreed to grant the DIP/Exit Liens.

K.     Approval of the DIP/Exit Facilities is vital to avoid immediate and irreparable harm to the Debtors' estates, and, therefore, is in the best interests of all of the Debtors' stakeholders. The ability of the Debtors to finance their operations requires the availability of additional working capital, the absence of which would immediately and irreparably harm the Debtors, their estates, and their creditors. An immediate need exists for the Debtors to obtain financing in order to enable them to continue their ordinary course operations, meet their payroll and other necessary ordinary course business expenditures, acquire goods and services, refinance the Prepetition Receivables Facility, satisfy the adequate protection provisions hereunder, and administer and preserve the value of their estates. Allowing the Debtors to incur indebtedness for borrowed money to fund such additional working capital is vital to preserving and maintaining the Debtors' going concern value.

L.      Given their financial condition, existing financing arrangements, and
capital structure, the Debtors are unable to obtain financing from sources other than the DIP
Lenders on terms more favorable than the DIP Facility.  The Debtors are unable to obtain
unsecured credit allowable only as an administrative expense pursuant to section 503(b)(1) of the
Bankruptcy Code.

M.      The Debtors also are unable to obtain credit secured by a Lien junior to the
Prepetition Existing Liens on the Prepetition Secured Indebtedness Collateral under sections
364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code.

N.      The Debtors are unable to obtain credit for borrowed money without the
Debtors (i) granting to the DIP Agent (for the ratable benefit of the DIP Agent, the DIP Lenders
and the other DIP Secured Parties) Liens on substantially all of the assets of the Debtors pursuant
to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code and (ii) granting to the DIP
Agent (for the ratable benefit of the DIP Agent and the DIP Lenders) a superpriority
administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code.

O.      The terms and conditions of the DIP/Exit Facilities, including those that
provide for the payment of interest and fees of the DIP/Exit Agents (for the ratable benefit of the
DIP/Exit Agents and the DIP/Exit Lenders) at the times, and in the manner provided under the
DIP/Exit Loan Agreements, as well as any fees paid directly to the DIP/Exit Agents, are fair,
reasonable, and the best available under the circumstances and reflect the Debtors' prudent
business judgment consistent with their fiduciary duties and are supported by reasonably
equivalent value and consideration.

P.    The DIP/Exit Loan Agreements were negotiated in good faith and at arm's

length between the Debtors, on the one hand, and the DIP/Exit Agents and the DIP/Exit Lenders,

on the other hand and the terms of the DIP/Exit Facilities are fair and reasonable under the

circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their

fiduciary duties and are supported by reasonably equivalent value and fair consideration. Credit

to be extended under the DIP/Exit Facilities will be extended in good faith, in consequence of

which the DIP/Exit Agents and the DIP/Exit Lenders are entitled to the protection and benefits of

section 364(e) of the Bankruptcy Code.

Q.    The Prepetition Agent (for the benefit of the Prepetition Agent and the

Prepetition First Lien Bank Lenders), the Prepetition Senior Secured Notes Trustee (for the

benefit of the Prepetition Senior Secured Notes Trustee and the Prepetition Senior Secured

Noteholders), collectively, and together with any other parties granted security under the

Prepetition First Lien Credit Agreement (or related documents), including any hedge agreement

providers secured by the Prepetition Secured Indebtedness Collateral (the "**Adequate Protection**

**Parties**") are entitled, pursuant to sections 361, 363(c), 363(e), 364(d) and 507 of the Bankruptcy

Code, to adequate protection of their interests (to the extent of the debt respectively held) in the

Prepetition Secured Indebtedness Collateral from any diminution in value of their collateral

resulting from, among other things, the Debtors' use of their Cash Collateral and the Debtors'

use, sale or lease of the Prepetition Secured Indebtedness Collateral, the imposition of the

automatic stay and the priming of the Prepetition Existing Liens by the DIP Liens pursuant to

section 364(d) of the Bankruptcy Code. The Debtors have agreed, in their reasonable and

prudent business judgment consistent with their fiduciary duties, to provide adequate protection

to the Adequate Protection Parties on the terms, conditions and limitations set forth in this

Interim Order, which terms, conditions and limitations are fair and reasonable and were

negotiated in good faith and at arm's length, and are supported by reasonably equivalent value

and consideration.

R.    To facilitate Debtors' ability to obtain the DIP/Exit Loans, in exchange

for, among other things, the adequate protection set forth herein, and as part of the Restructuring

agreed to under the RSA, the Prepetition Secured Creditors have consented to or not objected to

the priming of their liens, pursuant to section 364(d) of the Bankruptcy Code, by the liens and

security interests to be granted pursuant to the DIP/Exit Documents and this Interim Order as

security for the payment and performance of all of the DIP Obligations, and have also consented

or not objected to the Debtors' use of Cash Collateral pursuant to this Interim Order.

S.    The relief requested in the Motion is necessary, essential and appropriate

for the continued operation of the Debtors' businesses and the management and preservation of

their properties.

T.    It is in the best interest of Debtors' estates for the Debtors to be authorized

to borrow under the DIP/Exit Loan Agreements and the other DIP/Exit Documents.

U.    For the reasons described above, entry of this Interim Order is in the best

interests of the Debtors, their estates and their creditors.

ACCORDINGLY, IT IS HEREBY ORDERED that:

1.      The Motion, and the terms and the conditions of the DIP/Exit Facilities described therein, are hereby approved in all respects.  The Debtors are authorized to:

(a)      enter into the DIP/Exit Facilities;

(b)      execute and deliver each of the DIP/Exit Documents to which any Debtor is a party;

(c)      with respect to the Borrowers, borrow and obtain (i) upon entry of this Interim Order, initial extensions of credit up to an aggregate principal amount of $250,000,000 in Availability under the DIP ABL Facility and $150,000,000 under the DIP Term Loan Facility pending the Final Hearing, and (ii) upon entry of the Final Order, a subsequent extension of credit of an additional $100,000,000 under the DIP Term Loan Facility;

(d)      use proceeds of the DIP Loans made during the Interim Period to (i) indefeasibly repurchase the Receivables Portfolio relating to the Prepetition Receivables Facility and terminate such facility, (ii) fund expenses, working capital and other general corporate needs of the Borrowers and DIP/Exit Guarantors, and (iii) fund the costs associated with the administration of the Debtors' Cases;

(e)      pay all fees and expenses required under or referred to in the DIP/Exit Loan Agreements as such become due, including, agent fees, commitment fees, letter of credit fees and facility fees, and reasonable fees and expenses of attorneys, financial advisors, accountants and other professionals, in

each case in accordance with the terms of the applicable commitment and fee letters, the DIP/Exit Documents and this Interim Order; and

(f)    indefeasibly pay the Adequate Protection Obligations (as defined in Paragraph 11(b)).

2.    The Debtors hereby are authorized and directed to do and perform all acts and to make, execute, and deliver all instruments and documents that may be required or necessary for the performance by the Debtors under the DIP/Exit Loan Agreements and the creation and perfection of the DIP Liens.

3.    Each officer of the Debtors hereby is authorized to execute and deliver each of the DIP/Exit Documents, such execution and delivery to be conclusive of his or her respective authority to act in the name of and on behalf of the Debtors.

4.    As security for the DIP Obligations, effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent of, or over, any Collateral (as defined below), the following security interests and liens are hereby granted to the DIP Agent pursuant to the DIP/Exit Documents for its own benefit and the ratable benefit of the DIP Lenders and the other Secured Parties in accordance with the relative priorities set forth in the DIP/Exit Loan Agreements (all property identified in clauses (a), (b) and (c) below, other than Excluded Assets (as defined in the DIP/Exit Documents) being collectively referred to as the "**Collateral**"),[11] subject to the payment of the Carve Out:

---

[11] Notwithstanding anything contained herein to the contrary, the Borrowers and the Guarantors shall not be required to pledge to the DIP Agent in excess of 65% of the voting capital stock of their direct foreign subsidiaries or any of the capital stock or interests of indirect foreign subsidiaries.

(a)     Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid,
binding, continuing, enforceable, fully-perfected first priority senior security
interest in and lien upon all pre- and post-petition property of the Debtors,
whether existing on the Petition Date or thereafter acquired, that, on or as of the
Petition Date is not subject to valid, perfected and non-avoidable liens
(collectively, "**Unencumbered Property**"), including, without limitation, all cash
and cash collateral of the Debtors (whether maintained with the DIP Agent or
otherwise) and any investment of such cash and cash collateral, inventory,
accounts receivable, other rights to payment whether arising before or after the
Petition Date (including, without limitation, postpetition intercompany claims
against the Debtors), contracts, properties, plants, equipment, general intangibles,
documents, instruments, interests in leaseholds, real properties, patents,
copyrights, trademarks, trade names, other intellectual property, capital stock of
subsidiaries, and the proceeds, product, offspring or profits of all the foregoing, as
set forth in the DIP/Exit Documents, but excluding the Excluded Assets (as
defined in the DIP/Exit Documents).

(b)     Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid,
binding, continuing, enforceable, fully-perfected first priority senior priming
security interest in and lien upon all pre- and post-petition property of the Debtors
(including, without limitation, cash collateral, inventory, accounts receivable,
other rights to payment whether arising before or after the Petition Date,
contracts, properties, plants, equipment, general intangibles, documents,
instruments, interests in leaseholds, real properties, patents, copyrights,

trademarks, trade names, other intellectual property, capital stock of subsidiaries and the proceeds, product, offspring or profits of all the foregoing as set forth in the DIP/Exit Documents, but excluding the Excluded Assets (as defined in the DIP/Exit Documents)), whether now existing or hereafter acquired, that is subject to the Prepetition Existing Liens.  Such security interests and liens shall be senior in all respects to the interests in such property of any of the Prepetition Secured Creditors arising from current and future liens of any of the Prepetition Secured Creditors (including, without limitation, adequate protection liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date.

(c)       Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre- and post-petition property of the Debtors (other than the Excluded Assets (as defined in the DIP/Exit Documents) and other than the property described in clauses (a) or (b) of this paragraph 4, as to which the liens and security interests in favor of the DIP Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date, or to any valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (other than the Adequate Protection Liens), which security

interests and liens in favor of the DIP Agent are junior to such valid, perfected and unavoidable liens.

(d)    Notwithstanding the foregoing clauses (a), (b) and (c), the Collateral under this Interim Order shall not include any claims, causes of action or other avoidance claims arising under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but, subject only to and effective upon entry of the Final Order, shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**").

5.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted, as necessary, to permit (i) the Debtors to grant the DIP Liens to the DIP Agent (for the ratable benefit of the DIP Agent and the DIP Secured Parties), as provided in Paragraph 4 and the DIP/Exit Loan Agreements and the Adequate Protection Liens as provided in Paragraph 11, (ii) the Debtors to perform the DIP Obligations and the Adequate Protection Obligations and incur the liabilities to the DIP Agent and the DIP Lenders under the DIP/Exit Documents, (iii) the exercise of remedies by the DIP Agent following a DIP Order Event of Default in accordance with and as defined in Paragraph 23, including delivery by the DIP Agent of an Enforcement Notice (as defined in Paragraph 25), and (iv) any action of the DIP Agent or DIP Secured Parties to file and record financing statements, mortgages or other instruments to provide further notice of and evidence the grant and perfection of the DIP Liens.

6.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted, only to the extent necessary, (i) to permit the Member, the Servicer and each

Originator to execute, issue, deliver, enter into and adopt, as the case may be, the consent to the termination by HM Receivables Co. of the Receivables Sale Agreement, the Prepetition Receivables Facility and related documents as necessary to effectuate the release of the Receivables Portfolio and other collateral from any liens under or in respect of the Prepetition Receivables Facility and to transfer the Receivables Portfolio to the Originators and substantially all of the other assets, including the Receivables Portfolio's collection deposit accounts, to the Member or as directed by the Member, and to take actions in furtherance of the foregoing, including the payment by the Servicer of all amounts owing by HM Receivables Co. in respect of the Prepetition Receivables Facility and the transactions contemplated under this paragraph; (ii) in connection therewith, to permit the Member to consent to the elimination of "special purpose provisions", including the requirement for HM Receivables Co. to have and only take certain actions with the consent or affirmative vote of an independent director, to facilitate the foregoing; (iii) to permit the Member to consent to the dissolution of HM Receivables Co. and take action in furtherance thereof; and (iv) to permit HM Receivables Co. to take any actions necessary and consistent with and in furtherance of the foregoing, including termination the Receivables Sale Agreement, the Prepetition Receivables Facility and related documents (whether by operation of such agreements or affirmative action) and to terminate the Originators' rights and obligations under the Receivables Sale Agreement and related documents.

7.     The cash and cash equivalent proceeds of the Prepetition Secured Indebtedness Collateral, including the cash and cash equivalent proceeds located in deposit or securities accounts subject to control agreements or otherwise within the control of the Adequate Protection Parties, constitute "cash collateral" within the meaning of section 363 of the Bankruptcy Code ("**Cash Collateral**").  The Debtors hereby are authorized to use Cash

24

Collateral and other property in which the Adequate Protection Parties have an interest pursuant
to sections 363(b) and 363(c) of the Bankruptcy Code in accordance with the terms and
conditions of the DIP/Exit Loan Agreements and this Interim Order; *provided* that, such Cash
Collateral only may be used as authorized and permitted herein, including for (a) working
capital; (b) other general corporate purposes of the Debtors; and (c) payment of the costs
associated with administration of the Debtors' cases and, except for use of Cash Collateral with
respect to the Carve-Out, only so long as (i) subject to Paragraph 25, no Event of Default (as
defined in the respective DIP/Exit Loan Agreements) shall have occurred and is continuing and
(ii) the DIP Termination Date (as defined in Paragraph 22) shall not have occurred.

8.      Dominion and control over each depository account of the Debtors or
other third party that was subject to a deposit account control agreement in favor of the Adequate
Protection Parties as of the Petition Date shall immediately be deemed to be shared by the
Adequate Protection Parties with the DIP Agent, and such deposit account control agreements
shall hereafter be enforceable by the DIP Agent against, and binding upon, each depository
institution party thereto until the DIP Obligations have been paid in full in cash and the DIP/Exit
Agreements shall have been terminated.

9.      Except as otherwise agreed in writing among the Debtors, the DIP Agent,
the DIP Lenders and the Informal Creditor Group, the Debtors shall use proceeds of the DIP
Loans, Cash Collateral or collateral securing the DIP Liens (the "**DIP Collateral**") only as
permitted under the DIP/Exit Documents.

10.     The Debtors hereby are authorized and directed to use the proceeds of the
DIP Facility on the Closing Date (as defined in the DIP/Exit Term Loan Agreements), to
repurchase the Receivables Portfolio and indefeasibly repay in full the Prepetition Receivables

25

Facility.  Such repurchase shall be irrevocable and shall not be subject to challenge, rescission,

disgorgement or any other challenge under any circumstances, including, pursuant to any claim

by any party in interest.  The Liens existing on the Receivables Portfolio shall be deemed

released automatically, and without further order of the Bankruptcy Court, upon the indefeasible

repayment in full of the Prepetition Receivables Facility.  Notwithstanding the foregoing,

JPMCB is hereby directed, upon the indefeasible repayment in full of the Prepetition Receivables

Facility to take such actions (including making any filings) as the Debtors or DIP Agent may

request to evidence the release of such Liens.

        11.      As adequate protection of the interests of the Adequate Protection Parties

in the Prepetition Secured Indebtedness Collateral, the Adequate Protection Parties hereby are

granted the following:

        (a)      To the extent of any net diminution in the value of the Prepetition

Loan Collateral or Prepetition Senior Secured Notes Collateral (as the case may

be), including Cash Collateral, resulting from, among other things, the sale, lease

or use by the Debtors (or other decline in value) of the Cash Collateral or any

other Prepetition Loan Collateral or Prepetition Senior Secured Notes Collateral,

the priming of the Prepetition First Lien Collateral Agent's security interests and

liens in the Prepetition Loan Collateral, or the priming of the Prepetition Senior

Secured Notes Trustee's security interests and liens in Prepetition Senior Secured

Notes Collateral, by the DIP Agent and the DIP Lenders and the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, "**Net**

**Diminution**"), the Prepetition First Lien Collateral Agent and the Prepetition

Senior Secured Notes Trustee respectively are granted (effective and perfected

26

upon the date of the entry of this Interim Order and without the necessity of the

execution by the Debtors of mortgages, security agreements, pledge agreements,

financing statements or other agreements), unless the Prepetition First Lien

Collateral Agent or Prepetition Senior Secured Notes Trustee shall, each in its

reasonable discretion, determine that execution of such documents is necessary or

desirable), a replacement security interest in and lien upon all the DIP Collateral,

subject and subordinate only to (i) the DIP Liens, (ii) with respect to the

Prepetition Senior Secured Notes Collateral, except as otherwise provided by the

Prepetition Intercreditor Agreement, the Liens of the Prepetition Senior Secured

Notes Trustee, (iii) with respect to the Prepetition Loan Collateral, except as

otherwise provided by the Prepetition Intercreditor Agreement, the Liens of the

Prepetition Agent, (iv) a valid, enforceable, perfected and unavoidable Lien of

Prepetition L/C Bank in connection with a cash collateral account with HMHP

(the "**Prepetition L/C Bank Collateral**") pursuant to the Prepetition L/C Facility,

(v) all valid, enforceable, perfected and unavoidable liens on all of the Debtors'

assets and property in existence as of the Petition Date or duly perfected after the

Petition Date as permitted by section 546(b) of the Bankruptcy Code, and (vi) the

Carve-Out (the "**Adequate Protection Liens**").

     (b)     The Debtors are authorized and directed under sections 361, 363

and 364 of the Bankruptcy Code to make adequate protection payments which

shall include (i) the payment, when due or as soon as practicable thereafter, of all

reasonable and documented costs, fees and expenses incurred either prior to or

after the Petition Date of (x) the Prepetition Agent and its counsel, (y) the

Prepetition Senior Secured Notes Trustee and its counsel, and (z) the Informal

Creditor Group and its advisors (in accordance with the terms of the applicable

prepetition engagement letters), in each case, incurred in connection with the

Debtors, the Cases or the transactions contemplated hereby, and (ii) the payments

in respect of the Prepetition Secured Debt in the aggregate amount of $69,700,000

(such payments in clauses (i) and (ii) of this paragraph 11(b), collectively, the

"**Adequate Protection Payments**"; the Debtors' obligations to make the

Adequate Protection Payments, collectively, the "**Adequate Protection**

**Obligations**"), which will be allocated on a ratable basis, and indefeasibly paid on

the Closing Date (as defined in the DIP/Exit Loan Agreements), as follows: (x)

6.19% to the Prepetition Administrative Agent to adequately protect the interests

of holders of the Revolving Loans (as defined in the Prepetition First Lien Credit

Agreement) under the Prepetition First Lien Credit Agreement, with such amount

to then be remitted by the Prepetition Administrative Agent to the holders of the

Revolving Loans, (y) 67.55% to the Prepetition Administrative Agent to

adequately protect the interests of holders of the Term Loans (as defined in the

Prepetition First Lien Credit Agreement) under the Prepetition First Lien Credit

Agreement, with such amount to then be remitted by the Prepetition

Administrative Agent to the holders of the Term Loans, and (z) 26.26% to the

Prepetition Senior Secured Notes Trustee to adequately protect the interests of the

Prepetition Senior Secured Noteholders under the Prepetition Senior Secured

Notes Indenture, with such amount to then be remitted by the Prepetition Senior

Secured Notes Trustee to the Prepetition Senior Secured Noteholders.  None of

the Adequate Protection Payments relating to fees or expenses in paragraph

11(b)(i) shall be subject to the approval of the Bankruptcy Court, and no recipient

of any such payment shall be required to file with respect thereto any interim or

final fee application with the Bankruptcy Court; *provided*, that copies of invoices

with reasonable supporting detail (with such redactions as may be necessary to

maintain attorney/client privilege or any other applicable privilege) for fees and

expenses shall be provided to counsel for the Debtors, the DIP Lenders, the

Informal Creditor Group, the Committee, and the U.S. Trustee not less than

fifteen (15) days prior to the proposed date of any such Adequate Protection

Payment. Notwithstanding anything to the contrary contained herein, no portion

of the Loans, the Letters of Credit, the Collateral (including any Cash Collateral),

the Carve Out or the Prepetition Secured Indebtedness Collateral shall be used,

without the prior written consent of each affected party, (A) to challenge the

validity, perfection, priority, extent or enforceability of the (i) Loans, any other

Obligations or any liens or security interests securing the Obligations or (ii) the

Prepetition Secured Debt, the Prepetition Secured Obligations or any liens or

security interests securing the Prepetition Secured Obligations; (B) to investigate

or assert any other claims or causes of action against any of the (i) DIP Agent or

DIP Lender or any other holder of any Obligations or (ii) the Prepetition Agent,

the Prepetition Senior Secured Notes Trustee, the Prepetition Secured Creditors or

any other holder of any Prepetition Secured Obligations; (C) for any act which

has the effect of materially or adversely modifying or compromising the rights

and remedies of (i) the DIP Agent or any other Agent or Lender as set forth in any

Loan Document or (ii) the Prepetition Agent, the Prepetition Senior Secured

Notes Trustee, the Prepetition Secured Creditors as set forth in the Prepetition

Secured Debt Documents or the RSA, as applicable.

(c)    Claims of the Adequate Protection Parties with respect to the

Adequate Protection Obligations and for any Net Diminution shall be entitled to

all of the benefits of section 507(b) of the Bankruptcy Code; *provided* that any

claim of the Adequate Protection Parties arising thereunder shall be an allowed

administrative expense claim (the "**Junior Superpriority Claim**") junior in

priority and subordinate in all respects only to the Carve-Out and the

Superpriority Claim (as defined in Paragraph 16).

12.    Payment of the Prepetition Secured Obligations shall, at all times, be

subordinated to the (i) indefeasible payment in full of the DIP Obligations and (ii) the Carve-Out.

Additionally, and without limiting the generality of the foregoing, unless and until all

outstanding DIP Obligations are indefeasibly paid in full in cash and the DIP Termination Date

(as defined in paragraph 22) shall have occurred, under no circumstances shall any holder of

indebtedness under the Prepetition First Lien Credit Agreement or the Prepetition Senior Secured

Notes Indenture, or any beneficiary of any Adequate Protection Obligations have, with respect

thereto, any enforcement rights against the DIP Collateral or any other rights or remedies that

may interfere with or otherwise restrict the rights and remedies of the DIP Agent or any DIP

Secured Party hereunder, under the DIP/Exit Loan Agreements or otherwise with respect to DIP

Obligations.  The DIP Agent and the DIP Secured Parties shall have no obligations to the

Adequate Protection Parties with respect to the DIP Collateral and, without limiting the

generality of the foregoing, (i) none of the Adequate Protection Parties shall oppose, interfere

with or otherwise attempt to prevent the DIP Agent on behalf of itself and the DIP Secured

Parties from enforcing their security interests in, or Liens on, any of the DIP Collateral and (ii)

none of the foregoing parties shall have any right to require the DIP Agent and the DIP Secured

Parties to (a) marshal any property or assets of the Debtors, or (b) enforce any guaranty or any

security interest or Lien given by any person or entity other than any of the Debtors to secure the

payment of any or all of the DIP Obligations as a condition precedent or concurrent to taking any

action against or with respect to the DIP Collateral.

   13. This Interim Order shall be sufficient and conclusive notice and evidence

of the grant, validity, perfection, and priority of the DIP Liens without the necessity of filing or

recording this Interim Order (other than as docketed in the Cases) or any financing statement,

mortgage or other instrument or document which may otherwise be required under the law of

any jurisdiction or the taking of any other action to validate or perfect the DIP Liens, or to entitle

the DIP Agent to the priorities granted herein (including, in respect of cash or deposits or

investment property, any requirement that the DIP Agent or a DIP Secured Party have possession

of or dominion and control over, any such cash in order to perfect an interest therein); *provided*,

that the Debtors are authorized to execute and the DIP Agent may file or record financing

statements, mortgages or other instruments further to evidence or further to perfect the DIP Liens

authorized, granted and perfected hereby; *provided further*, that no such filing or recordation

shall be necessary or required in order to create, perfect or affect the priority of any such Lien.

The DIP Agent, in its discretion, may file a copy of this Interim Order as a mortgage, financing

statement or similar perfection document with any recording officer designated to file financing

statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors

have real or personal property (but is not required to perfect any Lien).

14.    To the extent provided for in DIP/Exit Loan Agreements, the Debtors are hereby authorized and directed to pay, on the Closing Date and on an on-going basis as provided in the DIP/Exit Documents, all reasonable and documented fees and out-of-pocket expenses (including, without limitation, reasonable fees, disbursements and charges of outside counsel) of the DIP/Exit Agents in connection with the DIP/Exit Facilities and the transactions contemplated thereby. None of such fees and expenses shall be subject to the approval of the Bankruptcy Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Bankruptcy Court; *provided* that copies of invoices for such payments shall be provided to counsel for the Debtors, the Informal Creditor Group, the Committee, and the U.S. Trustee, not less than ten days prior to the proposed date of any such payment.

15.    The DIP/Exit Loan Agreements and each of the DIP/Exit Documents, respectively, shall constitute and evidence the valid and binding DIP Obligations of each of the Debtors, which DIP Obligations shall be enforceable against each of the Debtors in accordance with their terms and the terms of this Interim Order.

16.    Subject and subordinate only to the Carve-Out, the DIP Obligations shall be allowed administrative expense claims with priority, under sections 364(c)(1) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever (the "**Superpriority Claim**").

17.    Except for the Carve-Out or as otherwise provided in this Interim Order, no costs or expenses of administration, including, professional fees allowed and payable under sections 330 and 331 of the Bankruptcy Code that have been or may be incurred in the Cases,

and no priority claims to the DIP Collateral are, or will be, prior to or on a parity with the DIP

Obligations, any Superpriority Claim, or any other claims of the DIP Agent (whether for itself or

for the ratable benefit of the DIP Lenders), or the DIP Lenders arising hereunder.

18.    The term "**Carve-Out**" means (a) all fees required to be paid to the Clerk

of the Bankruptcy Court and to the Office of the U.S. Trustee pursuant to 28 U.S.C. §1930(a),

(b) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy

Code in an aggregate amount not exceeding $250,000 and (c) any and all allowed and unpaid

claims of any professional representing the Debtors or the Committee whose retention is

approved by the Bankruptcy Court during the Cases pursuant to section 327 or 1103 of the

Bankruptcy Code, for unpaid fees and expenses (and the reimbursement of out-of-pocket

expenses allowed by the Bankruptcy Court incurred by any members of any such committee (but

excluding fees and expenses of third party professionals employed by members of any such

committee)) incurred, subject to the terms of this Interim Order and the Final Order, (i) prior to

the occurrence of an Event of Default and (ii) at any time after the occurrence and during the

continuance of an Event of Default in an aggregate amount not exceeding $5,000,000, *provided*

that (x) prior to the occurrence and continuance of an Event of Default in respect of which the

Carve Out is invoked, the allowed professional fees and disbursements incurred by professional

persons employed by the Debtors or the Committee (including any fees and expenses of the

members of any such Committee) may be paid without reducing the dollar limitation under

clause (c) above to the extent reasonable and documented and subject to the entry of a customary

order of the Bankruptcy Court allowing for the interim payment of such amounts, and subject

further to the Bankruptcy Court's final approval of such professional fees and disbursements, (y)

nothing herein shall be construed to impair the ability of any party to object to any of the fees,

expenses, reimbursement or compensation described in clauses (i) and (ii) above, and (z) cash or

other amounts on deposit in any letter of credit cash collateral accounts established pursuant to

the DIP/Exit Loan Agreements shall not be subject to the Carve-Out.

19.    Solely upon entry of the Final Order and subject to the Carve-Out (i) as a

further condition of the DIP Facility and any obligation of the DIP Agent or the DIP Lenders to

make credit extensions pursuant to the DIP/Exit Loan Agreements, and (ii) as an integral part of

the adequate protection provided to the Prepetition Secured Creditors and in consideration for,

among other things, the Prepetition Secured Creditors' consent to the Restructuring (as defined

in the RSA) and the priming of the Prepetition Existing Liens, no costs or expenses of

administration of the Cases or any future proceeding that may result therefrom, including

liquidation in chapter 7 or other proceedings under the Bankruptcy Code, shall be charged

against or recovered from the DIP Collateral, the Cash Collateral, or the Prepetition Secured

Indebtedness Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar

principle of law without the prior written consent of the DIP Agent, the Prepetition Agent or the

Prepetition Senior Secured Notes Trustee, as the case may be, and no such consent shall be

implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the

Prepetition Agent, the Prepetition Senior Secured Notes Trustee or the Prepetition Secured

Creditors.

20.    The DIP Liens and the Adequate Protection Liens shall not be subject or

subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the

Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after

the Petition Date including, without limitation, any liens or security interests granted in favor of

any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtors.

21.    Interest on the DIP Obligations shall accrue at the rates and shall be paid at the times as provided in the DIP/Exit Documents. All amounts applied to the payment of the DIP Obligations shall be applied thereto in the manner set forth in the DIP/Exit Documents.

22.    All (a) DIP Obligations shall be immediately due and payable, without notice and demand, and (b) authority to use the proceeds of the DIP Loans and to use Cash Collateral shall cease, subject to the obligations with respect to the Carve-Out, on the earlier of (i) the DIP Facility Maturity Date (as defined in the respective DIP/Exit Loan Agreements) and (ii) the date that is 60 days after the entry of the Interim Order (or such later date as approved by the Required Lenders) if the Final Order has not been entered on or prior to such date (the "**DIP Termination Date**").

23.    The occurrence of the DIP Termination Date or, if sooner, the DIP Agent's furnishing the Debtors with notice of the occurrence of any Event of Default (as defined in the respective DIP/Exit Loan Agreements), shall constitute a "**DIP Order Event of Default**". Unless and until the DIP Obligations and Adequate Protection Obligations are unconditionally and indefeasibly repaid in full in cash, the protections afforded to the DIP/Exit Agents and DIP/Exit Lenders under the DIP/Exit Loan Agreements and hereunder, and any actions taken pursuant thereto and hereto, the protections afforded to the Adequate Protection Parties hereunder, and any actions taken pursuant hereto, and the Carve-Out (as to services rendered prior to conversion to a case pursuant to chapter 7 of the Bankruptcy Code or the effective date of a plan of reorganization), shall survive the entry of any order confirming a plan of reorganization or converting any of the Cases into a case pursuant to chapter 7 of the Bankruptcy

Code.  The Debtors agree not to seek, and it shall constitute an Event of Default under the

DIP/Exit Loan Agreements, if any of the Debtors seek, or if there is entered, (i) any modification

or extension of this Interim Order without the prior written consent of the DIP Agent, the

Required Lenders, and the Informal Creditor Group (such consent not to be unreasonably

withheld), and no such consent shall be implied by any other action, inaction or acquiescence by

the DIP Agent or DIP Lenders, (ii) an order converting any of the Cases to a case under chapter 7

of the Bankruptcy Code or (iii) an order dismissing any of the Cases.  If an order dismissing any

of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such

order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code), to the

fullest extent permitted by law, that (i) the DIP Liens, the Adequate Protection Liens, the

Superpriority Claim and the Junior Superpriority Claim granted, pursuant to the DIP/Exit Loan

Agreements and this Interim Order, shall continue in full force and effect and maintain their

priorities as provided in this Interim Order until the DIP Obligations and Adequate Protection

Obligations are indefeasibly paid in full in cash and (ii) the Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims, Liens, priorities and

security interests as provided in this Interim Order.

24.    The time and manner of payment of the DIP Obligations, the DIP Liens,

the Adequate Protection Liens, the Adequate Protection Obligations, the Superpriority Claim and

the Junior Superpriority Claim shall not be altered or impaired by any chapter 11 plan of

reorganization (except to the extent expressly permitted under the DIP/Exit Loan Agreements

with regard to the Approved Plan of Reorganization) that may hereafter be confirmed or by any

further order of the Court which may hereafter be entered without the consent of the DIP Agent,

the DIP Lenders and the Adequate Protection Parties.

25.    Upon the occurrence of a DIP Order Event of Default and at any time

thereafter during the continuance thereof, with five business days' prior written notice (an

**"Enforcement Notice"**) of any such occurrence, in each case given to the Debtors and their

counsel, counsel to the Informal Creditor Group, the Prepetition Agent and its counsel, the

Prepetition Senior Secured Notes Trustee and its counsel, counsel to the Committee, and the U.S.

Trustee, the DIP Agent shall be entitled to exercise the DIP Agent's rights and remedies as set

forth in the DIP/Exit Documents or under applicable law.  Any Enforcement Notice shall also be

filed with the Bankruptcy Court.  This Interim Order shall not prejudice the rights of any party-

in-interest to oppose the exercise of the DIP Agent's or the DIP Lenders' remedies; *provided* that

the only issue that may be raised by any party in opposition thereto shall be whether a DIP Order

Event of Default has in fact occurred and is continuing, and the Debtors hereby waive their right

to seek any relief, whether under section 105 of the Bankruptcy Code or otherwise, that would in

any way impair, limit or restrict, or delay the exercise or benefit of, the rights and remedies of

the DIP Agent or the DIP Lenders under the DIP/Exit Loan Agreements or this Interim Order.

Subject to the immediately preceding sentence, upon the expiration of the five business day

period, in the absence of a determination by the Bankruptcy Court that a DIP Order Event of

Default has not occurred or is not continuing or unless otherwise ordered by the Court, the DIP

Agent and the DIP Lenders shall be entitled to pursue all remedies under the DIP/Exit Loan

Agreements or applicable law without further order to the Bankruptcy Court, and the automatic

stay is hereby deemed modified to permit the pursuit of such remedies.  In no event shall the DIP

Agent, the DIP Secured Parties, the Prepetition Agent, the Prepetition Senior Secured Notes

Trustee or the Prepetition Secured Creditors be subject to the equitable doctrine of "marshaling"

or any similar doctrine with respect to the DIP Collateral or the Prepetition Secured Indebtedness

Collateral, as applicable. Further, in no event shall the "equities of the case" exception of section 552(b) of the Bankruptcy Code apply to the Prepetition Existing Liens and security interest of the Prepetition Agent, the Prepetition Senior Secured Notes Trustee or the Prepetition Secured Creditors.

26.    In addition, immediately following the occurrence and during the continuance of any DIP Order Event of Default but subject to the Carve-Out: (i) the Debtors shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Agent, as provided in the DIP/Exit Loan Agreements and (ii) any obligation otherwise imposed on the DIP Agent and the DIP Lenders to provide any loan or any other extension of credit under the DIP Facility shall be suspended.

27.    Nothing included herein shall prejudice, impair, or otherwise affect the rights of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Senior Secured Notes Trustee or the Prepetition Secured Creditors to seek any other or supplemental relief in respect of the Debtors and the Cases, in each case consistent with and subject to the provisions of this Interim Order.

28.    If any provision of this Interim Order is hereafter modified, amended, vacated, reversed or stayed in any respect by subsequent order of this or any other court for any reason, such modification, amendment, vacation, reversal or stay shall not affect the validity of any obligation or liability incurred pursuant to this Interim Order.

29.    The DIP Liens and Superpriority Claim granted under the DIP Facility and this Interim Order, and the Adequate Protection Liens and the Junior Superpriority Claim granted to Adequate Protection Parties under this Interim Order, and the priority thereof, and any payments made pursuant to the DIP Facility and this Interim Order, shall be binding (subject to

the terms of this Interim Order) on the Debtors, any successor trustee or examiner, and all

creditors of the Debtors, as provided in section 364(e) of the Bankruptcy Code.

30.     Notwithstanding anything herein or in any other order by the Court to the

contrary, no party may, and no borrowings, proceeds of letters of credit, Cash Collateral,

Prepetition Secured Indebtedness Collateral, DIP Collateral, portion of the proceeds of the DIP

Facility or part of the Carve-Out may be used for any of the following (each, a "**Lender Claim**")

without the prior written consent of (i) the DIP Agent and the DIP Lenders and/or (ii) the

Prepetition Agent, the Prepetition Senior Secured Notes Trustee and the Prepetition Secured

Creditors, as applicable to: (a) object, contest or raise any defense to the validity, perfection,

priority, extent or enforceability of any amount due under any of the DIP/Exit Documents or the

Prepetition Secured Debt Documents, or the Liens or Prepetition Existing Liens (as applicable)

or claims granted under the DIP/Exit Documents, the Prepetition Secured Debt Documents or

this Interim Order, (b) assert any claim or cause of action against the DIP Agent, any DIP

Lender, the Prepetition Agent, the Prepetition Secured Notes Trustee or the Prepetition Secured

Creditors, or any of their respective agents, affiliates, representatives, attorneys or advisors,

(c) prevent, hinder or otherwise delay the DIP Agent's assertion, enforcement or realization on

the DIP Collateral (including Cash Collateral) in accordance with the DIP/Exit Documents or

this Interim Order, (d) assert or prosecute any action for preferences, fraudulent conveyances,

other avoidance power claims or any other claims, counterclaims or causes of action, objections,

contests or defenses against the DIP Agent, any DIP Lender, the Prepetition Agent, the

Prepetition Senior Secured Notes Trustee or the Prepetition Secured Creditors, or any of their

respective agents, affiliates, representatives, attorneys or advisors in connection with matters

related to the DIP/Exit Documents, the DIP Collateral, the Prepetition Secured Debt Documents,

the Prepetition Secured Indebtedness Collateral, the RSA or the Cases, or (e) seek to modify any

of the rights granted to the DIP/Exit Agents, the DIP/Exit Lenders, under the DIP/Exit

Documents, or this Interim Order or (ii) the Prepetition Agent, the Prepetition Senior Secured

Notes Trustee or the Prepetition Secured Creditors under the Prepetition Secured Debt

Documents or this Interim Order.  Notwithstanding the foregoing, the Committee, if any, shall

have a budget not to exceed $75,000 for the investigation, but not the prosecution, of claims and

issues with respect to the Prepetition Existing Liens.

   31. Each stipulation, admission and agreement contained in this Interim Order

shall be binding upon the Debtors and any successor thereto (including any chapter 7 or chapter

11 trustee appointed or elected for any of the Debtors) under all circumstances and for all

purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Lender

Claims as of the date of entry of this Interim Order.  Each stipulation, admission and agreement

contained in this Interim Order shall also be binding upon all other parties in interest, including,

without limitation, the Committee, under all circumstances and for all purposes.

   32. The DIP Agent's or any DIP Lender's failure to seek relief or otherwise

exercise its rights and remedies under the DIP Facility or this Interim Order, shall not constitute

a waiver of any of the DIP Agent's or any DIP Lender's rights hereunder, thereunder, or

otherwise.

   33. The stipulations and acknowledgments contained in findings of fact of in

this Interim Order shall be binding upon (a) the Debtors and any successor thereto (including,

without, limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the

Debtors) under all circumstances; (b) all other parties in interest, including, without limitation,

the Informal Creditor Group, the Committee, the Prepetition Agent and the Prepetition Senior

Secured Notes Trustee, except to the extent that (i) a party in interest has timely filed an

adversary proceeding or contested matter with respect to any such stipulation or

acknowledgment within 30 days from the date of this Interim Order, and (ii) there is a final order

entered in favor of the plaintiff in such adversary proceeding or contested matter; and (c) nothing

in this Interim Order vests any person ( as defined in the Bankruptcy Code), including, without

limitation, the Committee, with standing or authority to pursue any cause of action belonging to

the Debtors or their estates, including, without limitation, any cause of action against the DIP

Agent, the DIP/Exit Lenders, the Prepetition Agent, the Prepetition Senior Secured Notes

Trustee or the Prepetition Secured Creditors.

      34.    The Debtors, the DIP Agent and the DIP Lenders may amend any Loan

Document in accordance with the terms thereof, and the DIP Agent and the DIP Lenders may

waive, any provision of any Loan Document in accordance with the terms thereof, and the

Debtors may update any representations and release the DIP Agent and DIP Lenders, in each

case without seeking the approval of the Court; *provided* that such amendment or waiver, in the

judgment of the Debtors and the DIP Agent (as the case may be), is either non-prejudicial to the

rights of third parties (including those of the Prepetition Secured Creditors) or is not material,

and that notice thereof be provided to the Adequate Protection Parties (or their respective

counsel), counsel to the Committee, counsel to the Informal Creditor Group and the U.S. Trustee

not less than three days prior to the effective date of such amendment or waiver (or such shorter

period as to which such parties may agree). Except as otherwise set forth in this paragraph, no

waiver, modification, or amendment of any of the provisions of the DIP/Exit Loan Agreements

shall be effective unless set forth in writing and approved by the Court.

35.     Nothing contained in this Interim Order shall, or shall be deemed to alter the rights, remedies and obligations of the Participating Company Entities (as defined in the RSA) and the Informal Creditor Group (or its members) under the RSA.

36.     The Debtors are hereby authorized to maintain the Prepetition L/C Facility and make any payments as required under the Prepetition L/C Facility.

37.     Subject to the entry of the Final Order and upon the occurrence of the Exit Facility Conversion Date, the Debtors are authorized to take all actions necessary to (i) convert the DIP Facility into the Exit Facility, (ii) convert the DIP Obligations into Exit Obligations, and (iii) satisfy the Exit Obligations in accordance with the terms of the DIP/Exit Loan Agreements.

38.     The Fee Letters shall be filed in redacted form and unredacted copies shall be provided solely to (i) the U.S. Trustee, (ii) counsel to the Committee, (iii) the legal and financial advisors for the Informal Creditor Group, and any individual member of the Informal Creditor Group in accordance with the terms of the Fee Letters, and (iv) any other party as may be ordered by the Court or agreed by the Debtors and the DIP Agent (collectively, the "**Limited Notice Parties**"). The Limited Notice Parties shall at all times keep the Fee Letters strictly confidential and shall not disclose the contents of the Fee Letters to any party whatsoever, including but not limited to their respective clients. Any pleadings filed in these Cases that reference or disclose information that is redacted from the Fee Letters shall be filed under seal or redacted accordingly.

39.     Nothing in this Interim Order or in any of the DIP/Exit Loan Agreements or any other documents or agreements related to the DIP/Exit Facilities shall in any way be construed or interpreted to impose upon the DIP/Exit Agents, any of the DIP/Exit Lenders, the Prepetition Agent, the Prepetition Senior Secured Notes Trustee or the Prepetition Secured

Creditors or any of their respective advisors any liability for any claims or causes of action

arising from activities by the Debtors or any of their affiliates on or prior to the Petition Date or

subsequent to the Petition Date, whether in connection with the operation of their businesses, the

Cases, any restructuring efforts prior to the commencement of the Cases, or otherwise.

40.     Any Subsidiary (as defined in the DIP/Exit Loan Agreements) of the

Debtors that hereafter becomes a debtor in a case under chapter 11 of the Bankruptcy Code in

this Court shall automatically, immediately upon the filing of a petition for relief for such

Domestic Subsidiary, be deemed to be one of the "Debtors" hereunder in all respects, and all the

terms and provisions of this Interim Order, including, those provisions granting security interests

in, and Liens on, the DIP/Exit Collateral, the Adequate Protection Liens, the Superpriority

Claims and the Junior Superpriority Claims in each of the Cases, shall immediately be applicable

in all respects to such Domestic Subsidiary and its chapter 11 estate.

41.     In the event of any inconsistency between the terms and conditions of any

Loan Document and of this Interim Order, the provisions of this Interim Order shall govern and

control.

42.     Following entry of this Interim Order, the Debtors shall, on or before May

[____], 2012, provide notice of the Motion, this Interim Order and the Final Hearing by telecopy,

overnight delivery service, hand delivery or U.S. mail to each of the Initial Notice Parties and,

without duplication, to (i) the applicable state and local taxing authorities and (ii) parties who

have filed a request for service prior to such date.  Such notice shall constitute good and

sufficient notice of the Final Hearing.  The notice of approval of this Interim Order shall state

that any party in interest objecting to the DIP/Exit Facilities, the adequate protection being

provided to the Adequate Protection Parties, or the terms of the Final Order shall file written

objections in the Cases with the Court, and shall serve such objections so that they are actually received, by not later than 4:00 p.m. (EDT) on [_____], 2012.  Any such objections shall be served upon:  (a) counsel for the Debtors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn:  Alan W. Kornberg, Esq., Jeffrey D. Saferstein, Esq. and Elizabeth R. McColm, Esq., (b) counsel for the DIP/Exit Agents, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022, Attn:  Fredric Sosnick, Esq. and Edmund M. Emrich, Esq., (c) counsel for the Informal Creditor Group, Akin Gump Strauss Hauer & Feld, LLP, One Bryant Park, New York, NY 10036, Attn:  Ira S. Dizengoff, Esq. and Philip C. Dublin, Esq., (d) counsel for the Prepetition Agent, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York  10022, Attn:  Fredric Sosnick, Esq. and Edmund M. Emrich, Esq., (e) the Prepetition Secured Notes Trustee or its counsel, BNY Mellon, Corporate Finance, 525 William Penn Place, 38th Floor, Pittsburgh, Pennsylvania 15259, Attn:  Ray O'Neil, Relationship Manager, (f) counsel for the Prepetition L/C Bank, Seyfarth Shaw LLP, World Trade Center East, Two Seaport Lane, Suite 300, Boston, Massachusetts  02210, Attn:  William J. Hanlon, Esq., and (g) the U.S. Trustee, 33 Whitehall Street, 21st Floor, New York, NY 10004, Attn:  Andrea B. Schwartz, Assistant U.S. Trustee.

43.    This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon execution hereof.

44.     The Final Hearing to consider the Motion and Final Order is hereby

scheduled for [_____], 2012 at United States Bankruptcy Court, Southern District of

New York, before the undersigned United States Bankruptcy Judge.

SO ORDERED by the Court this _____ day of May, 2012.


_____
UNITED STATES BANKRUPTCY JUDGE