**EXHIBIT E**

**EXECUTION VERSION**

*Highly Confidential*

**CITIGROUP GLOBAL MARKETS INC.**
**388 Greenwich Street**
**New York, New York 10013**

May 10, 2012

Houghton Mifflin Harcourt Publishers Inc.
HMH Publishers LLC
Houghton Mifflin Harcourt Publishing Company
222 Berkeley Street
Boston, MA 02116

Attention: Eric Shuman
             Chief Financial Officer

FEE LETTER

Ladies and Gentlemen:

Reference is made to the Commitment Letter dated the date hereof (the "Commitment Letter") among Houghton Mifflin Harcourt Publishers Inc., HMH Publishers LLC and Houghton Mifflin Harcourt Publishing Company (collectively, the "Company") and Citigroup Global Markets Inc. Terms used but not defined in this Fee Letter have the meanings assigned thereto in the Commitment Letter (including the attachments thereto).

As consideration for Citi's commitment under the Commitment Letter to provide the Credit Facilities and Citi's services in structuring and arranging the Credit Facilities, the Company will pay (or cause to be paid) to Citi:

(a) for Citi's account, an arrangement fee equal to [ ] of the aggregate amount of commitments under the DIP Term Facility pursuant to the Commitment Letter which is earned and due and payable as follows: (i) with respect to the amount borrowed under the Term Loan Facility on the Closing Date pursuant to the Loan Documents and the Interim Order, on the Closing Date; and (ii) on the balance of the Term Loan Facility, upon entry of the Final Order;

(b) for Citi's account, a base arrangement fee (the "ABL Base Arrangement Fee") equal to [ ] of the aggregate amount of commitments under the DIP ABL Facility pursuant to the Commitment Letter minus the aggregate amount of the ABL Participation Fees (defined below), which is earned and due and payable as follows: (i) with respect to the amount of the DIP ABL Facility authorized pursuant to the Interim Order, at the Closing Date; and (ii) on the balance of the DIP ABL Facility, upon entry of the Final Order;

(c) for the account of each Lender of the DIP Term Loans a participation fee (which in Citi's sole discretion may take the form of original issue discount [ ] which is earned and due and payable as follows: (i) with respect to the amount borrowed under the Term Loan Facility on the Closing Date pursuant to the Loan Documents and the Interim Order, on the Closing Date; and (ii) on the balance of the DIP Term Loans borrowed, upon entry of the Final Order; and

NYDOCS03/948922.3

        (d)     for the account of each Lender under the DIP ABL Facility, a participation fee equal to [ ] which is earned and due and payable as follows: (i) with respect to the amount of the DIP ABL Facility authorized pursuant to the Interim Order, at the Closing Date; and (ii) on the balance of the DIP ABL Facility, upon entry of the Final Order;

(the fees set forth above being referred to herein collectively as the "Fees"). The Fees shall be payable in immediately available funds to Citi in U.S. dollars free and clear of and without deduction for any and all present or future applicable taxes, levies, imposts, deductions, charges or withholdings, and all liabilities with respect thereto (with appropriate gross-up for withholding taxes). Once paid, the Fees shall not (except as set forth above) be refundable under any circumstances.

        Citi reserves the right at any time prior to the earlier of (a) 90 days following the Closing Date and (b) Successful Syndication (whether prior to or after the execution and delivery of the Loan Documents and any borrowings thereunder), after consultation with the Company, to make the changes set forth below if Citi determines that such changes would be necessary or advisable in order to ensure a Successful Syndication of the Credit Facilities, or that a Successful Syndication is not likely to occur:

[ ]

Citi's rights under this paragraph as well as including its will survive the execution of the Loan Documents and any borrowings thereunder and continue in effect until the earlier of (a) Successful Syndication and (b) 90 days following the Closing Date. In the event that the Loan Documents are executed and delivered prior to the completion of such syndication efforts, the Company agrees that it will execute and deliver any amendments to the Loan Documents reasonably deemed advisable by Citi to effect such changes and that the failure to do so shall be an event of default under the Loan Documents as though fully set forth therein.

        This Fee Letter is for the Company's confidential use only and will not, without the prior agreement of Citi, be disclosed by the Company to any person, other than to (x) the Company's affiliates and its and their respective officers, directors, employees, advisors, agents and representatives, and (y) the legal and financial advisors for the Ad Hoc Committee, and any individual member of the Ad Hoc Committee that, in each case, has agreed to maintain this Fee Letter and its terms on a confidential basis, and then only on a confidential and "need to know" basis in connection with the transactions contemplated hereby, and have further agreed not to use the Fee Letter or any of the terms hereof for any purpose other than for consideration of Credit Facilities identified in the Commitment Letter; provided, however, that the Company may make such public disclosures of the terms and conditions hereof (i) as the Company is required by law or compulsory legal process, under advice of the Company's counsel, to make, and (ii) to the extent necessary to obtain required approval from the Bankruptcy Court for the Credit Facilities, provided that the Company agrees to use its commercially reasonable efforts to prevent the contents of this Fee Letter from becoming publicly available, including, without limitation, by the filing of a motion or an ex parte request pursuant to Sections 105(a) and 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018, as applicable, in each case seeking an order of the Bankruptcy Court authorizing the Company to file this Fee Letter under seal, and use commercially reasonably efforts to take such other actions as Citi may reasonably request to preserve the confidentiality of this Fee Letter in connection with any such disclosure. The provisions contained in this paragraph shall remain in full force and effect notwithstanding the termination of the Commitment Letter or Citi's commitment thereunder.

        This Fee Letter shall not constitute or give rise to any obligation to provide any financing; such an obligation will arise only under the Commitment Letter if accepted in accordance with its terms. This Fee Letter may not be amended or any provision hereof waived or modified except by an instrument in writing signed by Citi and the Company. This Fee Letter may be executed in any number of counterparts,

-3-

each of which shall be an original and all of which, when taken together, shall constitute one agreement. Delivery of an executed counterpart of a signature page of this Fee Letter by facsimile or electronic transmission shall be effective as delivery of a manually executed counterpart hereof. This Fee Letter shall be governed by, and construed in accordance with, the laws of the State of New York.

[Signature Page Follows]

     Please indicate your acceptance of the provisions hereof by signing the enclosed copy of this Fee Letter and returning it to Thomas Halsch of Citigroup Global Markets Inc., 388 Greenwich Street, New York, New York 10013, 19th Floor (fax: 646-358-3784) at or before 5 p.m. (New York City time) on May 11, 2012.

     If you elect to deliver this Fee Letter by fax or electronic transmission, please arrange for the executed original to follow by next-day courier.

Very truly yours,

CITIGROUP GLOBAL MARKETS INC.,

By: _____
     Name:
     Title:

Accepted and agreed to as of
the date first written above:

HOUGHTON MIFFLIN HARCOURT PUBLISHERS INC.


By_____
   Name:
   Title:


HMH PUBLISHERS LLC


By_____
   Name:
   Title:


HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY


By_____
   Name:
   Title:

NYDOCS03/948922.3