Hearing Date and Time: June 18, 2012 at 9:45 a.m. (ET)<br>
Reply Deadline and Time: June 13, 2012 at 5:00 p.m. (ET)

**AKIN GUMP STRAUSS HAUER & FELD LLP**
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
Ira Dizengoff
Philip C. Dublin
Rachel Ehrlich Albanese

*Counsel to the Informal Creditor Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                                               :
In re:                                                         :   Chapter 11
                                                               :
HOUGHTON MIFFLIN HARCOURT                                      :   Case No. 12-12171 (REG)
PUBLISHING COMPANY, et al.                                     :
                                                               :
                    Debtors.                                   :   (Jointly Administered)
---------------------------------------------------------------x
```

### OBJECTION OF THE INFORMAL CREDITOR GROUP
### TO THE MOTION OF THE UNITED STATES TRUSTEE,
### PURSUANT TO 28 U.S.C. § 1406(a) AND RULE 1014(a)(2) OF THE
### <u>FEDERAL RULES OF BANKRUPTCY PROCEDURE, TO TRANSFER VENUE</u>

The informal group of lenders under that certain First Lien Credit Agreement, dated as of December 12, 2007 (the "**Informal Creditor Group**"), among HMH Holdings (Delaware), Inc., HMH Publishers LLC, Houghton Mifflin Harcourt Publishing Company, the lender parties thereto, and Citibank N.A., as administrative agent, by and through its undersigned counsel, hereby files this objection (the "**Objection**") to the *Motion of the United States Trustee, Pursuant to 28 U.S.C. § 1406(a) and Fed. R. Bankr. P. 1014(a)(2), to Transfer These Cases to a District Where Venue Is Proper*, dated May 30, 2012 [ECF No. 57] (the "**Transfer Motion**"). In support of this Objection, the Informal Creditor Group respectfully represents as follows:

## **OBJECTION**[1]

1.  By the Transfer Motion, the U.S. Trustee contends that venue of these cases in the Southern District of New York is improper, and therefore, the cases must be transferred to a different district. Following the filing of the Transfer Motion, the Debtors engaged in discussions with the U.S. Trustee regarding the relief requested therein. In order to address the U.S. Trustee's concerns, on June 1, 2012, the Debtors filed an amended chapter 11 petition for Houghton Mifflin Holdings Company, Inc. ("**HMHC**") which evidences that that its principal – and sole – asset is a lease at 1350 Avenue of the Americas, Suite 815, New York, NY 10019 (the "**NY Lease**"). *See* Am. Voluntary Pet. of Houghton Mifflin Holdings Company, Inc., Case No. 12-12175, dated June 1, 2012 [ECF No. 4] (the "**HMHC Petition**"). As such, venue in this district is proper for HMHC's chapter 11 case pursuant to 28 U.S.C. § 1408(1).[2] The other twenty-four Debtors in these jointly administered cases are affiliates of HMHC within the meaning of Bankruptcy Code section 101(2).[3] As such, pursuant to 28 U.S.C. § 1408(2), venue in the Southern District of New York is also proper for these Debtors.

2.  Despite the fact that venue is clearly proper in the Southern District of New York, the U.S. Trustee has refused to withdraw the Transfer Motion and continues to insist that these cases should be transferred to another district just days before this Court is scheduled to hold a

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Prepackaged Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code* [ECF No. 15] (the "**Plan**").
[2] In bankruptcy cases, venue is governed by 28 U.S.C. § 1408, which provides that a case may be commenced in a district "(1) in which the domicile, residence, principal place of business in the United States, *or principal assets*" of the debtor are located or "(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership." 28 U.S.C. §§ 1401(1) & (2) (emphasis added); *see also In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 866 (Bankr. S.D.N.Y. 1991); *cf. In re Dunmore Homes, Inc.*, 380 B.R. 663, 669 (Bankr. S.D.N.Y. 2008) ("The statute is written in the disjunctive making venue proper in any of the listed locations.") (internal citation omitted).
[3] The Bankruptcy Code defines "affiliate" as "(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . .; (B) corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to

2

hearing to consider confirmation of the consensual, prepackaged Plan. Such a result would be improper on the facts and the law, and the Transfer Motion should be denied.

3. Requests to transfer venue when venue is proper are governed by 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a)(1). Section 1412 provides that a court may transfer a case pending under title 11 if such transfer is "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. In addition, Bankruptcy Rule 1014(a) provides that Section 1412 applies in cases in which a petition is filed in a proper district. Fed. R. Bankr. P. 1014(a)(1).[4] Both the interests of justice and convenience of the parties compel a finding that the Southern District of New York is the proper venue for these chapter 11 cases.

A. Transfer of the Chapter 11 Cases Is Not in the Interest of Justice

4. The interest of justice prong of section 1412 is a broad, flexible and fact-specific standard. *See In re Enron Corp.*, 274 B.R. 327, 347 (Bankr. S.D.N.Y. 2002) (citing *Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)). Courts often will consider the following factors in determining whether a requested transfer of venue is in the interest of justice:

> (1) whether transfer would promote the economic and efficient administration of the bankruptcy estate; (2) whether the interests of judicial economy would be served by the transfer; (3) whether the parties would be able to receive a fair trial in each of the possible venues; (4) whether either forum has an interest in having the controversy decided within its borders; (5) whether the enforceability of any judgment would be affected by the transfer; and (6) whether the plaintiff's original choice of forum should be disturbed.

---

vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor. . ." 11 U.S.C. § 101(2).

[4] Bankruptcy Rule 1014(a)(1) provides that "[i]f a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Fed. R. Bankr. P. 1014(a)(1).

*In re Dunmore Homes*, 380 B.R. at 672.[5]

5.      Because the ultimate purpose of chapter 11 is reorganization, courts evaluating the first factor – whether transfer promotes the economic and efficient administration of the estate – consider where the debtor can most successfully reorganize.  *See In re Enron*, 274 B.R. at 348.  Among the issues evaluated, "[c]ourts have looked at the need to obtain post petition financing, the need to obtain financing to fund reorganization, and the location of the sources of financing and the management personnel in charge of obtaining it."  *In re Dunmore Homes, Inc.*, 380 B.R. at 672 (internal quotations and citations omitted) (supporting transfer of venue in part because "the sources of funding are likely in California and the location of the professionals and management personnel in charge of obtaining funding are in California"); *accord In re Enron*, 274 B.R. at 348 (discussing *In re Garden Manor Assocs.*, 99 B.R. 551 (Bankr. S.D.N.Y. 1988), in which the court "found it relevant that the parties most likely to be a source of capital were located in New York [and so] efforts to reorganize could best be carried forth in New York").  Here, the DIP Credit Facility Agent (and proposed Exit Facility agent), as well as substantially all of the Senior Creditors party to the Restructuring Support Agreement, are located in New York.  Moreover, because the attorneys for each of the Debtors, the Informal Creditor Group, the First Lien Agents and the DIP Lenders are located in New York, transferring venue to a different district would appreciably increase professional fees and expenses in these cases.

6.      Indeed, in light of the fact that the principal parties in interest are located in New York, the Restructuring Support Agreement specifically required that the Debtors commence their chapter 11 cases in this district in order to, among other things, limit costs and expenses and maximize the value of the Debtors' estates for all stakeholders.  In fact, transfer of these cases

---

[5] The third and fifth factors are not applicable to these chapter 11 cases.  The remaining factors are addressed herein.

4

from the Southern District of New York to another jurisdiction would constitute a material breach of the Restructuring Support Agreement, which would not promote the economic or efficient administration of the Debtors' estates.  As the Court is aware, the Restructuring Support Agreement is the cornerstone of these chapter 11 cases.  Paragraph 5(b)(v) of the Restructuring Support Agreement provides for the occurrence of a Support Termination Event, resulting in the termination of the agreement and all parties' obligations thereunder, on the 60th day following the Petition Date unless "the Disclosure Statement has been approved, and the Approved Plan has been confirmed by the *Bankruptcy Court*" (emphasis added).  The "Bankruptcy Court" is defined in paragraph 1(a) of the Restructuring Support Agreement as the United States Bankruptcy Court for the Southern District of New York.  In addition, paragraph 5(b)(xix) provides for the occurrence of a Support Termination Event upon "a bankruptcy filing by any of the Participating Obligors in any jurisdiction other than as provided for in this Agreement and the Restructuring Term Sheet."  Paragraph 12 of the Restructuring Support Agreement provides that while the chapter 11 cases are pending, "the Bankruptcy Court [for the Southern District of New York] shall have exclusive jurisdiction of all matters arising out of or in connection with this Agreement"; the Restructuring Term Sheet contains a similar requirement that the parties "consent to exclusive New York jurisdiction."  A breach of the Restructuring Support Agreement would also result in a material breach of the Debtors' debtor in possession/exit financing facilities, resulting in a default thereunder.

7. As such, any transfer of these cases from the Southern District of New York is a material breach under the operative documents and is antithetical to the success of the Debtors' reorganization.  Particularly here, where there is no factual or legal justification for such a transfer, the Court should deny the Transfer Motion.

5

8. With respect to the second factor – whether the interest of judicial economy would be served by a venue transfer – courts look to the current and target courts' respective "learning curves." For example, in *Manville*, the Second Circuit found that although the convenience of the parties weighed in favor of transfer of venue, the fact that the original bankruptcy court had developed a substantial learning curve supported retention of the case. 896 F.2d at 1391; *see also In re Enron Corp.*, 274 B.R. at 350 (finding substantial learning curve based on court's familiarity with issues and decisions on several interim motions). This Court already has adjudicated a significant amount of relief requested by the Debtors at the first day hearings and the confirmation hearing is scheduled to be held just three days after the hearing on the Transfer Motion. Further, the parties expect the Effective Date to occur shortly after confirmation of Plan, followed closely by final fee applications and a motion for a final decree. Accordingly, judicial economy suggests that this Court should not transfer these cases.

9. In addressing the fourth factor – whether either forum has an interest in having the controversy decided within its borders – courts may consider the location of the debtor's assets, the impact of the value of the assets on the community and the location of the creditors. *See In re Dunmore Homes*, 380 B.R. at 675 (finding California had a greater interest in venue than New York where majority of trade creditors were local California businesses). Although the majority of the Debtors' assets are not located in New York, as noted above, almost all of the members of the Informal Creditor Group, which represents over 70% of the impaired creditors in these cases (by dollar amount) and over 64% of the Debtors' equity holders, are located in New York as are the DIP Credit Facility Agent, the First Lien Agents and the Secured Notes Trustee. Accordingly, this factor weights heavily in favor of venue remaining in this district.

6

10. Finally, with respect to the sixth factor, a debtor's choice of forum "should rarely be disturbed." *In re Hechinger Inv. Co. of Delaware*, 288 B.R. 398, 402 (Bankr. D. Del. 2003) (denying change of venue motion because movant failed to meet burden of proof); *In re Uslar*, 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991) ("[T]he balance of the factors does not weigh in favor of transferring venue and that debtor's choice of forum should not be disturbed."). Therefore, even though a bankruptcy court has discretion to transfer venue, if a debtor has selected a proper venue, its decision is entitled to great weight and "a heavy burden of proof rests on the moving party." *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit P'ship L.P.*, No. 11-7511, 2012 WL 698134, at *2-3 (S.D.N.Y. Mar. 5, 2012) (internal citations omitted); *see also In re Manville Forest Prods. Corp.*, 896 F.2d at 1390 ("The party moving for a change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence."). The court should base its determination on "an individualized, case-by-case consideration of convenience and fairness." *In re Manville Forest Prods. Corp.,* 896 F.2d at 1391. If any factor is "at best neutral [it] thereby weighs in favor of retaining venue [in the original court]." *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 648 (Bankr. S.D.N.Y. 2004). In the instant case, the U.S. Trustee has failed to address, and cannot satisfy, this heavy burden. The Debtors' choice of venue in the Southern District of New York, which is a requirement under the Restructuring Support Agreement, is proper and should be respected.

B.  <u>A Transfer of Venue Would Not Be Convenient for the Parties in Interest</u>

11. There are six factors commonly evaluated by courts when considering the convenience of the parties to determine whether a transfer of venue is appropriate: "(1) the proximity of creditors of every kind to the Court; (2) the proximity of the debtor to the Court; (3) the proximity of the witnesses necessary to the administration of the estate; (4) the location of the

7

assets; (5) the economic administration of the estate; and (6) the necessity for ancillary administration if liquidation should result." *Dunmore Homes*, 380 B.R. at 676.

12. "Among the six factors, courts have often given the most weight to the economic and efficient administration of the estate." *In re Asset Resolution LLC*, No. 09-16142, 2009 WL 4505944, at *2 (Bankr. S.D.N.Y. Nov. 24, 2009) (internal citations omitted); *In re Enron Corp.*, 274 B.R. at 347 (same). As discussed above, avoiding a material breach of the Restructuring Support Agreement is the most important reason to maintain venue in the Southern District of New York. In addition, as stated in connection with the interest of justice analysis, the primary goal of chapter 11 is the reorganization of the Debtors, which is facilitated by maintaining venue in proximity with the professionals involved in the cases. *See Enron*, 274 B.R. at 350. Given that all of the professionals for the Debtors and that a substantial majority of their impaired creditors and equity holders are located in New York, the Southern District of New York is "the most efficient forum for administering these cases." *See id.* at 350-51.

13. In considering the "proximity of creditors" prong, courts examine the number of creditors as well as the amount of the claims held by such creditors. *Id.* at 343, 346 (giving weight to opposition of unsecured creditors' committee and debtors' largest creditors in denying transfer of venue from New York to Texas and noting that that "a large percentage of the overall debt owed to banks [was] located in New York"). In the instant case, substantially all of the members of the Informal Creditor Group, which hold more than two-thirds of the claims classified in the only impaired class of claims under the Plan, are located in New York and have required that these cases proceed in New York as part of the Restructuring Support Agreement. In fact, no creditor or party in interest other than the U.S. Trustee seeks a transfer of venue. Accordingly, the "proximity of creditors" prong weighs in favor of venue in New York.

8

14. Certain of the other convenience factors outlined above, such as the location of the debtor's assets and the necessity of ancillary administration in the event of liquidation, are less relevant where a debtor is restructuring. *See Enron Corp.*, 274 B.R. at 347; *In re Asset Resolution, LLC*, 2009 WL 4505944, *6. This is particularly true in these expedited, prepackaged chapter 11 cases, where the purpose of the reorganization is to delever the Debtors' balance sheet rather than to effectuate an operational restructuring, and the vast majority of the creditors who are facilitating the restructuring are located in New York. These factors militate in favor of this Court maintaining venue during the brief pendency of these chapter 11 cases.

## CONCLUSION

WHEREFORE, for the foregoing reasons, this Court should (i) deny the Transfer Motion in its entirety and (ii) grant the Informal Creditor Group such other relief as the Court may deem just, proper and equitable.

Dated:   June 11, 2012
         New York, New York

AKIN GUMP STRAUSS HAUER & FELD LLP

By:  */s/ Philip C. Dublin*
Ira S. Dizengoff
Philip C. Dublin
Rachel Ehrlich Albanese
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
idizengoff@akingump.com
pdublin@akingump.com
ralbanese@akingump.com

*Counsel to the Informal Creditor Group*
