Alan W. Kornberg
Jeffrey D. Saferstein
Philip A. Weintraub
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

Counsel to the Debtors
and the Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HOUGHTON MIFFLIN | : | Case No. 12-12171 (REG) |
| HARCOURT PUBLISHING COMPANY, *et al.,* | : | |
| | : | Jointly Administered |
| Debtors. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUPPLEMENTAL PLAN SUPPLEMENT DOCUMENTS TO PREPACKAGED JOINT PLAN OF REORGANIZATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Pursuant to Article X.J. of the Prepackaged Joint Plan of Reorganization [Docket No. 15] of Houghton Mifflin Harcourt Publishing Company, Houghton Mifflin Harcourt Publishers Inc., HMH Publishers LLC, Houghton Mifflin Holding Company, Inc., Houghton Mifflin, LLC, Houghton Mifflin Finance, Inc., Houghton Mifflin Holdings, Inc., HM Publishing Corp., Riverdeep Inc., a Limited Liability Company, Broderbund LLC, RVDP, Inc., HRW Distributors, Inc., Greenwood Publishing Group, Inc., Classroom Connect, Inc., ACHIEVE! Data Solutions, LLC, Steck-Vaughn Publishing LLC, HMH Supplemental Publishers Inc., HMH Holdings (Delaware), Inc., Sentry Realty Corporation, Houghton Mifflin Company International, Inc., The Riverside

Publishing Company, Classwell Learning Group Inc., Cognitive Concepts, Inc., Edusoft, and Advanced Learning Centers, Inc., the above- captioned debtors and debtors in possession (each a "**Debtor**," and collectively, the "**Debtors**"), under title 11 of the United States Code, 11 U.S.C. §§101 et seq., the Debtors, by and through their undersigned attorneys, hereby submit the following plan supplement documents, which are attached hereto.  The Debtors reserve the right to amend such documents before the hearing on confirmation of the Plan.

| **Exhibit** | **Document** |
| --- | --- |
| A | Other Amended and Restated Governing Documents (Relating to Reorganized Debtors other than Reorganized HMH Holdings) |
| B | Initial List of Reorganized HMH Holdings Board of Directors and Senior Management of Reorganized Debtors |

Dated: June 20, 2012
        New York, New York

PAUL, WEISS, RIFKIND WHARTON &
GARRISON LLP

By:   ___/s/ Jeffrey D. Saferstein_____
Alan W. Kornberg
(akornberg@paulweiss.com)
Jeffrey D. Saferstein
(jsaferstein@paulweiss.com)
Philip A. Weintraub
(pweintraub@paulweiss.com)
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Facsimile:   (212) 757-3990


Counsel for the Debtors and
Debtors-in-Possession

<u>Exhibit A – Other Amended and Restated Governing Documents</u>

**D**
**PC**

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

FORM MUST BE TYPED          **Restated Articles of Organization**          FORM MUST BE TYPED
**(General Laws Chapter 156D, Section 10.07; 950 CMR 113.35)**

(1)  Exact name of corporation: _____

(2)  Registered office address: _____
*(number, street, city or town, state, zip code)*

(3)  Date adopted: _____
*(month, day, year)*

(4)  Approved by:

*(check appropriate box)*

☐  the directors without shareholder approval and shareholder approval was not required;

OR

☐  the board of directors and the shareholders in the manner required by G.L. Chapter 156D and the corporation's articles
of organization.

(5)  The following information is required to be included in the articles of organization pursuant to G.L. Chapter 156D, Section
2.02 except that the supplemental information provided for in Article VIII is not required:*

## ARTICLE I
The exact name of the corporation is:

## ARTICLE II
Unless the articles of organization otherwise provide, all corporations formed pursuant to G.L. Chapter 156D have the purpose of
engaging in any lawful business.  Please specify if you want a more limited purpose:**

* Changes to Article VIII must be made by filing a statement of change of supplemental information form.
** Professional corporations governed by G.L. Chapter 156A and must specify the professional activities of the corporation.

## ARTICLE III

State the total number of shares and par value, * if any, of each class of stock that the corporation is authorized to issue. All corporations must authorize stock. If only one class or series is authorized, it is not necessary to specify any particular designation.

| WITHOUT PAR VALUE | | WITH PAR VALUE | | |
|---|---|---|---|---|
| TYPE | NUMBER OF SHARES | TYPE | NUMBER OF SHARES | PAR VALUE |
| | | | | |
| | | | | |
| | | | | |

## ARTICLE IV

Prior to the issuance of shares of any class or series, the articles of organization must set forth the preferences, limitations and relative rights of that class or series.  The articles may also limit the type or specify the minimum amount of consideration for which shares of any class or series may be issued.  Please set forth the preferences, limitations and relative rights of each class or series and, if desired, the required type and minimum amount of consideration to be received.

## ARTICLE V

The restrictions, if any, imposed by the articles or organization upon the transfer of shares of any class or series of stock are:

## ARTICLE VI

Other lawful provisions, and if there are no such provisions, this article may be left blank.

*Note:  The preceding six (6) articles are considered to be permanent and may be changed only by filing appropriate articles of amendment.*

*\*G.L. Chapter 156D eliminates the concept of par value, however a corporation may specify par value in Article III. See G.L. Chapter 156D, Section 6.21, and the comments relative thereto.*

### ARTICLE VII

The effective date of organization of the corporation is the date and time the articles were received for filing if the articles are not rejected within the time prescribed by law.  If a later effective date is desired, specify such date, which may not be later than the 90th day after the articles are received for filing:

It is hereby certified that these restated articles of organization consolidate all amendments into a single document.  If a new amendment authorizes an exchange, or effects a reclassification or cancellation, of issued shares, provisions for implementing that action are set forth in these restated articles unless contained in the text of the amendment.

Specify the number(s) of the article(s) being amended:_____

Signed by: _____ ,

*(signature of authorized individual)*

□  Chairman of the board of directors,

□  President,

□  Other officer,

□  Court-appointed fiduciary,

on this _____ day of_____ , _____ .

# COMMONWEALTH OF MASSACHUSETTS

### William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

## Restated Articles of Organization
**(General Laws Chapter 156D, Section 10.07; 950 CMR 113.35)**

I hereby certify that upon examination of these restated articles of organization, duly submitted to me, it appears that the provisions of the General Laws relative to the organization of corporations have been complied with, and I hereby approve said articles; and the filing fee in the amount of $_____ having been paid, said articles are deemed to have been filed with me this _____ day of _____, 20_____ , at _____a.m./p.m.

*time*

Effective date:_____
*(must be within 90 days of date submitted)*

## WILLIAM FRANCIS GALVIN
*Secretary of the Commonwealth*

_____
Examiner

_____
Name approval

Filing fee:  Minimum filing fee $200, plus $100 per article amended, stock increases $100 per 100,000 shares, plus $100 for each additional 100,000 shares or any fraction thereof.

_____
C

_____
M

## TO BE FILLED IN BY CORPORATION
Contact Information:

_____

_____

_____

Telephone: _____

Email: _____

Upon filing, a copy of this filing will be available at www.sec.state.ma.us/cor.
If the document is rejected, a copy of the rejection sheet and rejected document will be available in the rejected queue.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## of

# GREENWOOD PUBLISHING GROUP, INC.

Greenwood Publishing Group, Inc. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.     The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.     The Corporation was initially formed on December 3, 1985 under the name Greenwood Press, Inc.

C.     This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.     Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1.     The name of the corporation is GREENWOOD PUBLISHING GROUP, INC. (the "Corporation").

2.     The address of its registered office in the State of Delaware is The Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of its registered agent at such address is The Corporation Trust Company.

3.     The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.     The total number of shares of stock which the corporation shall have authority to issue is two thousand five hundred (2,500) and the par value of each of such shares is One Cent ($0.01) amounting in the aggregate to Twenty Five Dollars ($25.00).  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

US1:7985597v3

5.       The corporation is to have perpetual existence.

6.       In furtherance and not in limitation of the powers conferred by statute , the board of directors is expressly authorized:

To make, alter or repeal the by-laws of the corporation.

7.       Meetings of stockholders may be held within or without the State of Delaware, as the by-laws may provide. The books of the corporation may be kept (subject to any provision contained in the statutes) outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the by-laws of the corporation. Elections of directors need not be by written ballot unless the by-laws of the corporation shall so provide.

8.       The corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

9.       No director of the corporation shall be personally liable to the corporation or to any of its stockholders for monetary damages arising out of such director's breach of his fiduciary duty as a director of the corporation, except to the extent that the elimination or limitation of such liability is not permitted by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended. No amendment to or repeal of the provisions of this Article 9 shall deprive any director of the corporation of the benefit hereof with respect to any act or failure to act of such director occurring prior to such amendment or repeal.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**GREENWOOD PUBLISHING GROUP, INC.**

By: _____
Name: William Bayers
Title: EVP, Secretary and General Counsel

FORM **BCA 10.30R** (rev. Dec. 2003)
**ARTICLES OF AMENDMENT**
**RESTATED ARTICLES**
**OF INCORPORATION**
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
Springfield, IL  62756
Telephone (217) 782-1832
http://www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to the Secretary of State.

_____ File #_____ Filing Fee: $150.00    Approved:
————————————Submit in duplicate ————————Type or Print clearly in black ink————————Do not write above this line————————

1.    CORPORATE NAME: _____
                                                                                        (Note 1)

2.    MANNER OF ADOPTION OF AMENDMENT:

The following amendment of the Articles of Incorporation was adopted on _____ ,
                                                                                            (Month & Day)
_____ in the manner indicated below. ( "X" one box only)
    (Year)

☐   By a majority of the incorporators, provided no directors were named in the articles of incorporation and no directors
have been elected;
                                                                                        (Note 2)

☐   By a majority of the board of directors, in accordance with Section 10.10, the corporation having issued no shares
as of the time of adoption of this amendment;
                                                                                        (Note 2)

☐   By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder
action not being required for the adoption of the amendment;
                                                                                        (Note 3)

☐   By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly
adopted and submitted to the shareholders. At a  meeting of shareholders, not less than the minimum number of
votes required by statute and by the articles of incorporation were voted in favor of the amendment;
                                                                                        (Note 4)

☐   By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been
duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not
less than the minimum number of votes required by statute and by the articles of incorporation. Shareholders who
have not consented in writing have been given notice in accordance with Section 7.10;
                                                                                        (Notes 4 & 5)

☐   By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been
duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders
entitled to vote on this amendment.
                                                                                        (Note 5)

C-326

3(a)  List all provisions of the restated articles of incorporation that amend the existing articles of incorporation:

3(b)  Text of the Restated Articles of Incorporation:        (Note 6)
      (Attach additional pages if extra space is needed.)

4.     The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows: *(If not applicable, insert "No change")*

5.     (a) The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital (Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) is as follows: *(If not applicable, insert "No change")*

    (b) The amount of paid-in capital (Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) as changed by this amendment is as follows: *(If not applicable, insert "No change")* (Note 7)

|  | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital | $ _____ | $ _____ |

**(Complete either Item 6 or 7 below. All signatures must be in <u>BLACK INK</u>.)**

6.     The undersigned corporation has caused these articles to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true.

Dated _____ , _____    _____
           *(Month & Day)*        *(Year)*      *(Exact Name of Corporation at date of execution)*

_____
    *(Any Authorized Officer's Signature)*

_____
    *(Type or Print Name and Title)*

7.     If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

OR

If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, then a majority of the directors or such directors as may be designated by the board, must sign below, and type or print name and title.

The undersigned affirms, under the penalties of perjury, that the facts stated herein are true.

Dated _____ , _____
         *(Month & Day)*      *(Year)*

_____     _____

_____     _____

_____     _____

_____     _____

## NOTES and INSTRUCTIONS

NOTE 1:   State the true exact corporate name as it appears on the records of the office of the Secretary of State, BEFORE any amendments herein reported.

NOTE 2:   Incorporators are permitted to adopt amendments ONLY before any shares have been issued and before any directors have been named or elected. (§ 10.10)

NOTE 3:   Directors may, without shareholder approval, vote only to restate the articles of incorporation as amended. (§ 10.15(g))

NOTE 4:   All amendments not adopted under § 10.10 or § 10.15 require (1) that the board of directors adopt a resolution setting forth the proposed amendment and (2) that the shareholders approve the amendment.

Shareholder approval may be (1) by vote at a shareholders' meeting *(either annual or special)* or (2) by consent, in writing, without a meeting.

To be adopted, the amendment must receive the affirmative vote or consent of the holders of at least 2/3 of the outstanding shares entitled to vote on the amendment *(but if class voting applies, then also at least a 2/3 vote within each class is required)*.

The articles of incorporation may supersede the 2/3 vote requirement by specifying any smaller or larger vote requirement not less than a majority of the outstanding shares entitled to vote and not less than a majority within each class when class voting applies. (§ 10.20)

NOTE 5:   When shareholder approval is by consent, all shareholders must be given notice of the proposed amendment at least 5 days before the consent is signed. If the amendment is adopted, shareholders who have not signed the consent must be promptly notified of the passage of the amendment. (§§ 7.10 & 10.20)

NOTE 6:   The text of the restated articles of incorporation must set forth the following:
   (i)     the date of incorporation, the name under which the corporation was incorporated, subsequent names, if any, that the corporation adopted pursuant to amendment of its articles of incorporation, and the effective date of any such amendments;
   (ii)    the address of the registered office and the name of the registered agent on the date of filing the restated articles; and
   (iii)   the number of shares of each class issued on the date of filing the restated articles and the amount of paid-in capital as of such date.

If the registered agent and/or registered office have changed, it will be necessary to accompany this document with form BCA 5.10.

If the number of issued shares and/or paid-in capital have changed, it will be necessary to accompany this document with form BCA 14.30.

NOTE 7:   If the paid-in capital is increased due to the provisions of the restatement, the corporation must pay all applicable franchise taxes, penalties and interest before this document can be accepted for filing.

# CERTIFICATE OF AMENDMENT OF

# RESTATED ARTICLES OF INCORPORATION

### of

### EDUSOFT
### a California corporation

The undersigned certify that:

1. They are the Chairman of the Board and the Secretary, respectively, of Edusoft, a California corporation.

2. The Restated Articles of Incorporation of the Corporation (the "Articles of Incorporation") are hereby amended and restated to read in full as follows:

One: The name of the corporation (hereinafter referred to as the "Corporation") is Edusoft.

Two: The existence of the Corporation is perpetual.

Three: The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of California other than the banking business, the trust company business or the practice of a profession permitted to be incorporated by the California Corporations Code.

Four: The total number of shares which the Corporation is authorized to issue is 10,000, all of which are one class and have par value of $0.01 each, and all of which are common shares. The board of directors of the Corporation may issue any or all of the aforesaid authorized shares of the Corporation from time to time for such consideration as it shall determine and may determine from time to time the amount of such consideration, if any, to be credited to paid-in surplus.

Five: The liability of the directors of the Corporation for monetary damages shall be eliminated to the fullest extent permissible under California law. The Corporation is authorized to provide indemnification of agents (as defined in Section 317 of the California Corporations Code) to the fullest extent permissible under California law. Any amendment, repeal or modification of the foregoing provisions of this Article Five by the shareholders of the Corporation shall not adversely affect any right or protection of a director or agent of the Corporation existing at the time of such amendment, repeal or modification.

Six: Meetings of the board of directors of the Corporation may be called by the Chair of the Board, if any, by the President, if any, by any Vice President or Secretary, or by any three directors.·

Seven: To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a)

have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

3.  The foregoing amendments to the Articles of Incorporation have been duly effected pursuant to Section 1400 of the California Corporations Code.

[Signature Page Follows]

[Signature Page to Amended and Restated Articles of Incorporation of Edusoft]

We further declare under penalty of perjury under the laws of the State of California that, to our own knowledge, the matters set forth in this certificate are true and correct.

Date: June __, 2012

By: _____
    Name: William Bayers
    Title: EVP, Secretary and General
    Counsel

By: _____
    Name: Kathleen Rideout
    Title: Assistant Secretary

[Signature Page to Amended and Restated Articles of Incorporation of Edusoft]

# ARTICLES OF RESTATEMENT

## OF

## ARTICLES OF INCORPORATION

## OF

## ADVANCED LEARNING CENTERS, INC.

ADVANCED LEARNING CENTERS, INC. (the "Corporation") hereby presents these Articles of Restatement to its Articles of Incorporation, pursuant to Wyo. Stat. § 17-16-1008, and as its Articles of Restatement, the said ADVANCED LEARNING CENTERS, INC. sets forth the following:

A.    The name of the Corporation is Advanced Learning Centers, Inc.

B.    The text of each amendment approved by the court is as follows. Article SECOND of the Articles of Incorporation of the Corporation is amended to append the following at the end of such Article:

(4) To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

The articles of incorporation are restated in their entirety as follows and as so restated have been approved by the : See restated articles of incorporation attached hereto as Exhibit A.

C.    The date of the court's order approving the articles of amendment is June 21, 2012.

D.    The title of the reorganization proceeding in which the order was entered is *In re Houghton Mifflin Harcourt Publishing Company,* et al., Case No. 12-12171 (REG) (U.S. Bankr. Ct. S.D.N.Y.).

E.    The United States Bankruptcy Court for the Southern District of New York has jurisdiction of the proceeding under Title 11 of the United States Code.

Dated: June 21, 2012

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused Articles of Restatement Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**ADVANCED LEARNING CENTERS, INC.**

By: _____
    Name: William Bayers
    Title: EVP, Secretary and General
    Counsel

**Exhibit A**

**TO**

**RESTATED ARTICLES OF INCORPORATION**

**OF**

**ADVANCED LEARNING CENTERS, INC.**

The Articles of Incorporation for Advanced Learning Centers, Inc. arc amended and restated in their entirety as follows:

FIRST: The name of the corporation is ADVANCED LEARNING CENTERS, INC.

SECOND: The aggregate number of shares which the corporation now shall have the authority to issue is unlimited, consisting of two classes of an unlimited number of shares without par value to be known as "Class 1" and "Class 2" respectively, and such other number of shares of such other classes or series as the board of directors may determine, in whole or in part, having such preferences, limitations, and relative rights, within the limits set forth in WYO. STAT. §17-16-601 or any successor statute, of any class of shares before the issuance of any shares of that class, or one or more series within a class before the issuance of any shares of that series. The terms, limitations, preferences and relative rights of the Class 1 and Class 2 shares are as follows:

(1) Voting rights: Each share of Class 1 stock shall entitle the holder thereof to one vote on any matter on which action of the shareholders is sought. Each share of Class 2 stock shall entitle the holder thereof to one vote on any matter on wl1ich action of the shareholders is sought. The Class 1 stock and Class 2 stock shall vote together as one class for all matters. To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

(2) Dividend Distributions: On any distributions on shares of capital stock by way of dividends, holders of shares shall have the right to receive the distribution on a share-for share basis, regardless of the class of shares held.

(3) Liquidation, Redemption and Merger Distributions: On any distributions in liquidation, redemption or pursuant to merger, holders of shares of Class 1 stock shall be entitled to receive the sum of $29.73 per share before any amount shall be distributed to the holders of shares of Class 2 stock. After holders of shares of Class 1 stock shall have received the sum of $29.73 per share, any further distributions to shareholders shall be paid only to the holders of shares of Class 2 stock. All rights of the holders of shares of

Class 1 stock as shareholders of the corporation shall cease and terminate only after full payment of $29.73 per share shall have been made to such shareholders.

(4) To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

THIRD: Action required or permitted to be taken at a shareholders meeting may be taken without a meeting. and without prior notice, if consents in writing setting forth the action so taken are signed by the holders of outstanding shares having not less than the minimum number of votes that would be required to authorize or take the action at a meeting at which all shares entitled to vote on the action were present and voted.

FOURTH: The address of the registered office of the corporation is 2120 Carey Avenue, Cheyenne, WY 82001, and the name of its registered agent at such address is Registered Agency Services, Inc.

FIFTH:

(1) The corporation shall indemnify any individual made a party to a proceeding because he is or·was a director, officer, incorporator, employee or agent of the corporation against liability incurred in the proceeding if:

(a)    He conducted himself in good faith; and
(b)    He reasonably believed that his conduct was in or at least not opposed to the corporation's best interest; and
(c)    In the case of any criminal proceeding, he had no reasonable cause to believe his conduct was unlawful.

(2) Indemnification shall also be provided for an individual's conduct with respect to an employee benefit plan if the individual reasonably believed his conduct to be in the interests of the participants in and beneficiaries of the plan.

(3) The corporation shall pay for or reimburse the reasonable expenses incurred by a director, officer, incorporator, employee or agent of the corporation who is a party to the proceeding in advance of final disposition of the proceeding if:

(a) The individual furnishes the corporation a written affirmation of his good faith belief that he has met the standard of conduct described herein;
(b) The individual furnishes the corporation a written undertaking executed personally or on his behalf to repay the advance if it is ultimately determined that he did not meet the standard of conduct; and
(c) A determination is made that the facts then known to those making the determination would not preclude indemnification under law.

The undertaking required by this paragraph shall be an unlimited general obligation but need not be secured and may be accepted without reference to financial ability to make repayment.

(4) The indemnification and advancement of expenses authorized herein shall not be exclusive of any other rights to which any director, officer, incorporator, employee or agent may be entitled under any by-law, agreement or resolution of shareholders or disinterested directors or otherwise. The articles of incorporation shall not be interpreted to limit in any manner the indemnification or right to advancement tor expenses of an individual who would otherwise be entitled thereto. These articles of incorporation shall be construed to provide indemnification and advancement of expenses to the extent permitted by law.

SIXTH: No director of Advanced Learning Centers, Inc. shall be personally liable to the corporation or its shareholders for monetary damages for any action taken, or any failure to take any action as a director; provided, however, that this provision shall not eliminate or limit the liability of a director for (1) the amount of financial benefit received by a director to which he is not entitled; (2) an intentional infliction of harm on the corporation or shareholders; (J) for unlawful distributions made in violation of Wyo. Stat. § 17-16-640 with respect to the liability incurred therefor as set forth in Wyo. Stat. § 17-16-833; or (4) an intentional violation of criminal law.

**AMENDED AND RESTATED**
**OPERATING AGREEMENT OF**
**ACHIEVE! DATA SOLUTIONS, LLC**
**A CALIFORNIA LIMITED LIABILITY COMPANY**

THIS AMENDED AND RESTATED OPERATING AGREEMENT (this "Agreement") of ACHIEVE! Data Solutions, LLC, a California limited liability company (the "Company"), is entered into as of June 21, 2012 by HMH Publishers LLC (formerly HMRH Acquisition Co.) (the "Member").

Recitals

WHEREAS, the Member acquired all of the interests of the Company from Harcourt, Inc. ("Harcourt") pursuant to the Agreement for the Sale and Purchase of Shares and Assets relating to the Harcourt Education Business, dated July 16, 2007, by and among the Member, Reed Elsevier Group plc ("Reed"), Houghton Mifflin Riverdeep Group plc and Education Media and Publishing Limited;

WHEREAS, the Member desires to amend and restate the Amended and Restated Operating Agreement of the Company dated as of February 22, 2007 (as amended or amended and restated heretofore, the "Existing Agreement"); and

NOW, THEREFORE, the Existing Agreement is hereby amended and restated in its entirety as set forth below:

1.       The Company was formed pursuant to Articles of Organization (as amended from time to time, the "Articles of Organization") filed on February 25, 2003 pursuant to the Beverly-Killea Limited Liability Company Act, Title 2.5, California Corporations Code, Sec. 17000 *et seq*., as amended (the "Act").

2.       Except as otherwise provided in this Agreement, the default provisions of the Act shall apply to the Company.

3.       The Member shall be the sole "member" of the Company within the meaning of Section 17001(x) of the Act.

4.       The name of the Company shall be "ACHIEVE! Data Solutions, LLC".

5.       The Company shall maintain a California registered office and agent for the service of process as required by the Act.  In the event the registered agent ceased to act as such for any reason or the registered office shall change, the Member shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be.

6.       The purpose and scope of the Company shall be to engage in such lawful activities as shall be determined by the Member in its sole and absolute discretion.

7.      Unless otherwise specified in a certificate of cancellation of articles of organization filed by the Member in respect of the Company pursuant to Section 17356(b) of the Act, the term of the Company shall be perpetual.

8.      Title to all Company property shall be held in the name of the Company; provided, however, that the Company shall make such distributions of cash and/or property to the Member as the Member shall from time to time determine in its sole and absolute discretion.

9.      Except as otherwise required by applicable law, the Member shall have no personal liability for the debts and obligations of the Company.

10.     The Member shall have no obligation to make any contributions to the capital of the Company and shall make only such contributions as the Member shall from time to time determine in its sole and absolute discretion.

11.     The Member shall have no obligation to provide any services to the Company and shall provide only such services as the Member shall from time to time determine in its sole and absolute discretion.

12.     The Company shall indemnify the Member to the fullest extent permitted by law.

13.     The Member shall control the management and operation of the Company in such manner as it shall determine in its sole and absolute discretion.  The Member may appoint, remove and replace managers, officers and employees of the Company from time to time in its sole and absolute discretion.  Notwithstanding any provision of this Agreement to the contrary, any contract, agreement, deed, lease, note or other document or instrument executed on behalf of the Company by the Member shall be deemed to have been duly executed by the Company and third parties shall be entitled to rely upon the Member's power to bind the Company without otherwise ascertaining that the requirements of this Agreement have been satisfied.

14.     To the maximum extent permitted by the Act and other applicable law, the Member:  (i) shall not be subject to any fiduciary or other duties to the Company; and (ii) shall not be liable to the Company for any action or omission concerning the Company or otherwise.

15.     The Member may transfer all or any portion of its interest in the Company in the Member's sole and absolute discretion.  In the event of any such transfer, this Agreement shall be amended to reflect the respective rights and obligations of the Member and the transferee or transferees.  No person shall be admitted to the Company as an additional member without the written consent of the Member, which consent may be withheld in the Member's sole and absolute discretion.

16.     The interpretation and enforceability of this Agreement and the rights and liabilities of the Member as such shall be governed by the laws of the State of California as such laws are applied in connection with limited liability company operating agreements entered into and wholly performed upon in California by residents of California.  To the extent permitted by

2

the Act and other applicable law, the provisions of this Agreement shall supersede any contrary provisions of the Act or other applicable law.

17.    In the event any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be deemed severed from the remainder of this Agreement and replaced with a valid and enforceable provision as similar in intent as reasonably possible to the provision so severed, and shall not cause the invalidity or unenforceability of the remainder of this Agreement.

18.    This Agreement may be amended, in whole or in part, only through a written amendment executed by the Member.

19.    This Agreement contains the entire understanding and intent of the Member regarding the Company and supersedes any prior written or oral agreement respecting the Company.  There are no representations, agreements, arrangements or understandings, oral or written, of the Member relating to the Company which are not fully expressed in this Agreement.

20.    To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

*[Signature Page Follows]*

3

IN WITNESS WHEREOF, the Member has executed this Agreement as of the date first above written.

**HMH PUBLISHERS LLC**

By: _____

    Name:  William Bayers

    Title:    EVP, Secretary and General Counsel

**Execution Copy**

## AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY
## AGREEMENT OF
## BRODERBUND LLC

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT of Broderbund LLC, dated as of June 21, 2012 (this "Agreement"), is adopted, executed and agreed to, for good and valuable consideration, by the Member listed on the signature page hereof.  Certain terms used herein are defined in Section 1.7.

## Article I.

## GENERAL PROVISIONS; DEFINITIONS

1.1    Formation.  The formation of Broderbund LLC (the "LLC") pursuant to and in accordance with the Delaware Limited Liability Company Act, 6 Del. C. § 18-101, et seq., as amended from time to time (the "Act"), occurred on October 2, 2009, with the filing of a certificate of formation of the LLC on October 2, 2009 with the Secretary of State of the State of Delaware (the "Certificate") and the entering into this Agreement.  Upon the execution of this Agreement or a counterpart hereof, other Members shall be admitted to the LLC in accordance with the terms hereof.

1.2    Name.  The name of the LLC will be "Broderbund LLC" or such other name or names as the Board of Managers may from time to time designate.

1.3    Purpose.  The LLC's purpose shall be to engage in any lawful business that may be engaged in by a limited liability company organized under the Act.

1.4    Registered Office, Registered Agent, Place of Business.  The registered office of the LLC required by the Act to be maintained in the State of Delaware shall be the office of the initial registered agent named in the Certificate or such other office (which need not be a place of business of the LLC) as the Board of Managers may designate from time to time in the manner provided by law.  The registered agent of the LLC in the State of Delaware shall be the initial registered agent named in the Certificate or such other person or persons as the Board of Managers may designate from time to time in the manner provided by law.  The LLC will maintain an office and principal place of business at such place or places inside or outside the State of Delaware as the Board of Managers may designate from time to time.

1.5    Certificates.  William Bayers (the "Organizer") is hereby designated as an "authorized person" within the meaning of the Act, and (i) is authorized to obtain all necessary tax identification numbers for the LLC, (ii) has executed, delivered and filed the Certificate of Formation of the LLC with the Secretary of State of the State of Delaware, (iii) the Certificate of Merger of Broderbund LLC, a Minnesota limited liability company, with and into the LLC and (iv) is authorized to execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the LLC to qualify to do business in any state.  Upon completing the foregoing, his powers as an "authorized person" will cease.  The Organizer shall

be indemnified by the LLC and the Member from and against any expense or liability incurred by the Organizer by reason of having been the Organizer.

The existence of the LLC as a separate legal entity shall continue until cancellation of the LLC's certificate of formation as provided in the Act.

1.6     Merger and Transaction Documents.  The merger of Broderbund, LLC, a Minnesota limited liability company ("Merging Entity"), with and into the LLC, with the LLC being the surviving entity of such merger, pursuant to an Agreement and Plan of Merger, dated October 2, 2009, by and between the Merging Entity and the LLC (the "Merger Agreement") by and between the LLC and Merging Entity, in such form as shall be executed by any Member, Manager or officer on behalf of the LLC, and the transactions contemplated thereby, are hereby authorized and approved.  The LLC is hereby authorized to execute, deliver and perform, and any Member, Manager or officer on behalf of the LLC is hereby authorized to execute and deliver (and, as applicable, file with the Delaware Secretary of State), (i) the Merger Agreement, and all documents, agreements or certificates contemplated thereby or related thereto (including the Certificate of Merger of Merging Entity with and into the LLC), (ii) the Mezzanine Guarantee and Collateral Agreement, dated as of December 12, 2007, as amended from time to time, (iii) the First Lien Guarantee and Collateral Agreement, dated as of December 12, 2007, as amended from time to time, (iv) the Sale Rights Agreement, and (v) the Turnover and Non-Interference Agreement, dated August 13, 2009, among Education Media and Publishing Group Limited, certain subsidiaries thereof, the Agent, and the other parties listed on the signature pages thereto, all without any further act, vote or approval of any other Person notwithstanding any other provision of this Agreement.  The foregoing authorization shall not be deemed a restriction on the powers of the Member, any Manager, or any officer to enter into other agreements on behalf of the LLC.

1.7     Definitions.  For purposes of this Agreement:

"Act" has the meaning set forth in Section 1.1.

"Affiliate" of a Member means any other person or entity controlling, controlled by or under common control with such Member.

"Agent" means Credit Suisse, Cayman Islands Branch in its capacity as administrative agent under the Mezzanine Credit Agreement.

"Board of Managers" means the board of managers of the LLC established pursuant to this Agreement.

"Certificate" has the meaning set forth in Section 1.1.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Fiscal Year" has the meaning set forth in Section 6.2.

"LLC" has the meaning set forth in Section 1.1.

"Manager" has the meaning set forth in Section 3.2(a).

"Member" means any party identified on Schedule 1 as a member or admitted as a member after the date of this Agreement in accordance with the terms hereof, in each case for so long as such person continues to be a member hereunder, each in its capacity as a member of the LLC.

"Mezzanine Credit Agreement" means that certain Mezzanine Credit Agreement, dated as of December 12, 2007, by and among HMH Publishing Company, Houghton Mifflin Harcourt Publishers Inc., HMH Publishers LLC, Houghton Mifflin Harcourt Publishing Company, the lenders party thereto, and the Agent as administrative agent and as collateral agent for the lenders, as amended.

"Percentage Interest" means, in respect of each Member, the ratio that the Member's interests as certified in the Certificate issued pursuant to Section 5.1 bears to the total interests of all Members, as set forth on Schedule 1.

"Person" means any individual, corporation, partnership, limited liability company, joint venture, trust, association, organization, governmental entity or other entity.

"Transfer" shall mean sale, assign, transfer, pledge or otherwise dispose of, whether voluntarily or involuntarily or by operation of law.

"Treasury Regulation" means the United States Treasury Regulations promulgated under the Code, and any reference to any particular Treasury Regulation section shall be interpreted to include any final or temporary revision of or successor to that section regardless of how numbered or classified.

    1.8    Term.  The LLC shall continue until dissolved in accordance with Article IV of this Agreement.

    1.9    Tax Status.  The Member intends that the LLC will be classified for U.S. federal income tax purposes as an "eligible entity" that is disregarded as an entity separate from its owner as provided in Treasury Regulation Section 301.7701-3(a).

Article II.

DISTRIBUTIONS

    2.1    Distributions.  Distributions of cash or other assets of the LLC shall be made promptly after receipt thereof by the LLC (provided that there will not be any distribution without approval of the Board of Managers) to each Member pro rata based on each Member's Percentage Interest.

    Notwithstanding any provision to the contrary contained in this Agreement, the LLC shall not make a distribution to any Member on account of his, her or its interest in the LLC if such distribution would violate Section 18-607 or Section 18-804 of the Act or other applicable law.

Article III.

## MANAGEMENT; MEMBER RIGHTS

3.1     <u>Management</u>.  The business and the affairs of the LLC shall be conducted and managed in accordance with the provisions of this Article III.

3.2     <u>Board of Managers</u>.

(a)     The Members hereby delegate to and vest with the Board of Managers the full, exclusive and complete right, power and discretion to manage the LLC.  The Board shall be composed of at least 3 natural persons who are managers within the meaning of the Act (each, a "<u>Manager</u>").  Except as otherwise provided by the Act or the provisions hereof, the business and affairs of the LLC shall be conducted and managed solely by the Board of Managers.  Each Manager present at any meeting of the Board of Managers (whether in person, telephonically or otherwise) or each Manager signing any written resolution or consent of the Board of Managers or authorizing any other action of the Board of Managers shall have the right to exercise 1 vote in the aggregate at any such meeting or in respect of such resolution, consent or action.  Unless otherwise stated in this Agreement, decisions of the Board of Managers shall be made by a majority of the votes cast.

3.3     <u>Officers</u>.

(a)     The Board of Managers may from time to time appoint officers of the LLC, including, but not limited to, a president, one or more vice presidents (each of whom may be designated as an executive vice president, a senior vice president or a vice president with a particular area of responsibility), a treasurer, one or more assistant treasurers, a secretary and one or more assistant secretaries, each of which shall have such rights, powers and authority as provided in this Section 3.3 and as the Board of Managers may from time to time delegate to any such officer.

(b)     Each officer of the LLC may be appointed for an indefinite term; provided, however, that each officer will be deemed removed upon such officer's death or disability and; provided, further, that, subject to the terms of any applicable employment agreement, the Board of Managers may at any time remove and replace any officer for any reason or no reason, in its sole discretion.  Each such officer will be designated a "manager" within the meaning of the Act.  The Board of Managers may appoint a replacement president, vice president, treasurer, assistant treasurer, secretary or assistant secretary upon the removal, death, disability, retirement or any other circumstance necessitating the replacement of such officer.

(i)     Subject to the provisions of Section 3.2(a) hereof, the president shall in general supervise and control all of the business and affairs of the LLC and in general shall perform all duties incident to the office of president and such other duties as may be prescribed by the Board of Managers from time to time.  In the absence of a designation of a chief executive officer by the Board of Managers, the president shall be the chief executive officer of the LLC.

(ii)    Subject to the provisions of Section 3.2(a) hereof, in the absence of the president or in the event of a vacancy in such office, the executive vice president or, in the absence of the executive vice president or in the event of a vacancy in such office, the senior vice president shall perform the duties of the president and when so acting shall have all the powers of and be subject to all the restrictions upon the president; and shall perform such other duties as from time to time may be assigned to such vice president by the president or the Board of Managers.

(iii)    Subject to the provisions of Section 3.2(a) hereof, the treasurer shall have the custody of the funds and securities of the LLC and shall keep full and accurate accounts of receipts and disbursements in books belonging to the LLC and shall deposit all moneys and other valuable effects in the name and to the credit of the LLC in such depositories as may be designated by the Board of Managers.  The treasurer shall disburse the funds of the LLC as may be ordered by the Board of Managers, taking proper vouchers for such disbursements, and shall render to the president and the Board of Managers, whenever the Board of Managers may require, an account of all his or her transactions as treasurer and of the financial condition of the LLC.  In the absence of a designation of a chief fmancial officer by the Board of Managers, the treasurer shall be the chief fmancial officer of the LLC.

(iv)    Subject to the provisions of Section 3.2(a) hereof, the secretary shall: (A) keep the minutes of the proceedings of the Board of Managers and the Members in one or more books provided for that purpose; (B) see that all notices are duly given in accordance with the provisions of this Agreement or as required by law; (C) be custodian of the records and the seal of the LLC; (D) keep a register of the address of each Member which shall be furnished to the secretary by such Member; (E) have general charge of the books of the LLC; and (F) in general perform such other duties as from time to time may be assigned to the secretary by the president or the Board of Managers.

(v)    Subject to the provisions of Section 3.2(a) hereof, the assistant secretaries and assistant treasurers, in general, shall perform such duties as shall be assigned to them by the secretary or treasurer, respectively, or by the president or the Board of Managers.

3.4    Participation by Members.  No Member, in such Member's capacity as a Member, shall (a) participate in the control of the business of the LLC, (b) have any right or power to sign for or to bind the LLC in any manner or for any purpose whatsoever, or (c) have any rights or powers with respect to the LLC except those expressly granted to such Member by the terms of this Agreement or those conferred upon such Member by law.  Except as otherwise provided in this Agreement or required by law, no prior consent or approval of the Members shall be required in respect of any act or transaction to be taken by the Board of Managers or any authorized officer on behalf of or by the LLC.

3.5    Outside Interests.  The Member and any affiliate of the Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others.  The LLC shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

3.6    <u>Indemnification</u>.

(a)    None of the Member, the Organizer, the officers, any "authorized person" under the Act or any of their respective officers, members, shareholders, partners, employees, representatives, agents or affiliates (collectively, the "<u>Covered Persons</u>") shall, to the fullest extent permitted by law, be liable to the LLC or any other person that is a party to or is otherwise bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the LLC and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence, willful misconduct or breach of the implied covenant of good faith and fair dealing created by the Act.

(b)    To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the LLC for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the LLC and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence, willful misconduct breach of the implied covenant of good faith and fair dealing created by the Act, with respect to such acts or omissions; <u>provided</u>, <u>however</u>, that any indemnity under this Section 3.6 by the LLC shall be provided out of and to the extent of LLC assets only, and the Member shall not have personal liability on account thereof.

(c)    To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the LLC prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the LLC of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 3.6.

(d)    A Covered Person shall be fully protected in relying in good faith upon the records of the LLC and upon such information, opinions, reports or statements presented to the LLC by any person as to matters the Covered Person reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the LLC, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e)    To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the LLC or to any other Covered Person, a Covered Person acting under this Agreement shall not be liable to the LLC or to any other Covered Person for its good faith reliance on the provisions of this Agreement or any approval or authorization granted by the LLC or any other Covered Person.  The provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person

otherwise existing at law or in equity, are agreed by the Member to replace such other duties and liabilities of such Covered Person.

(f)      If any Covered Person becomes involved in any capacity in any action, proceeding or investigation in connection with this Agreement or the LLC's business or affairs, whether or not pending or threatened and whether or not any Covered Person is a party thereto, the LLC will pay such reasonable legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith; provided, that, such Covered Person shall provide the LLC with an undertaking to promptly repay to the LLC the amount of any such reimbursed expenses paid to him, her or it to the extent that it shall ultimately be determined that such Covered Person is not entitled to be indemnified by the LLC in connection with such action, proceeding or investigation.  If for any reason (other than by reason of the exclusions from indemnification hereinabove set forth) the foregoing indemnification is unavailable to such Covered Person, or insufficient to hold him harmless, then the LLC shall contribute to the amount paid or payable by such Covered Person as a result of such loss, damage or claim in such proportion as is appropriate to reflect the relative benefits received by the LLC on the one hand and by such Covered Person on the other hand or, if such allocation is not permitted by applicable law, to reflect not only the relative benefits referred to above but also any other relevant equitable considerations.

(g)      The foregoing provisions of this Section 3.6 shall survive any termination of this Agreement.

3.7      Transfer of LLC Interest.

(a)      The Member may assign, in whole or in part, its limited liability company interest in the LLC with the consent of the Board of Managers.  If the Member transfers all of its interest in the LLC pursuant to this Section 3.7, the transferee shall be admitted to the LLC upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the LLC.

(b)      Notwithstanding any other provision of this Agreement, to the fullest extent permitted by law, any Transfer by the Member in contravention of any of the provisions of this Section 3.7 shall be void and ineffective, and shall not bind, or be recognized by, the LLC.

3.8      Member Rights; Meetings.

(a)      No Member shall have any right, power or duty, including the right to approve or vote on any matter, except as expressly required by the Act or other applicable law.

(b)      To the extent the Members have a right to approve or vote on any matter, except as expressly required by the Act or other applicable law or expressly provided for hereunder, the affirmative vote of all Members entitled to vote shall be required to approve any proposed action.

(c)        Meetings of the Members for the transaction of such business as may properly come before such Members shall be held at such place in the United States and, on such date and at such time as the Board of Managers shall determine.  Special meetings of Members for any proper purpose or purposes may be called at any time by the Board of Managers or the Members.  The LLC shall deliver oral or written notice (written notice may be delivered by mail) stating the date, time, place and purposes of any meeting to each Member entitled to vote at the meeting.  Such notice shall be given not less than five (5) and no more than thirty (30) days before the date of the meeting.

(d)        Any meeting of Members may be adjourned from time to time, to reconvene at the same or some other place, and notice need not be given of any such adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting the LLC may transact any business which might have been transacted at the original meeting.

(e)        Whenever notice is required to be given by law or under any provision of this Agreement, a written waiver thereof, signed by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Members need be specified in any written notice or waiver of notice of meeting.

(f)        In order that the LLC may determine the Members entitled to notice of or to vote at any meeting of Members or any adjournment thereof or to consent to action in writing without a meeting, the Members or any officer of the LLC may fix a record date, which record date shall not be more than 60 nor less than 10 days before the date of such meeting or consent, as applicable.  If no record date is set, the record date for determining Members entitled to notice of or to vote at a meeting shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  If no record date is set, the record date for determining Members entitled to consent to action in writing without a meeting shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the LLC.  A determination of Members of record entitled to notice of or to vote at a meeting shall apply to any adjournment of the meeting; provided that a new record date for the adjourned meeting may be established.

Article IV.

DURATION

4.1        Duration.  Subject to the provisions of Section 4.2 of this Agreement, the LLC shall be dissolved and its affairs wound up and terminated upon the first to occur of the following:

(a)      The determination of all of the Members to dissolve, wind up and terminate;

(b)      At any time there are no members of the LLC, unless the LLC is continued in accordance with the Act; or

(c)      The entry of a decree of judicial dissolution under the Act.

Except as otherwise set forth in this Article IV, the Members intend for the LLC to have perpetual existence.

4.2      <u>Winding Up</u>.

Upon dissolution of the LLC, the LLC shall be liquidated in an orderly manner. The Board of Managers (or person or entity appointed by the Board of Managers) shall be the liquidating trustee (as defined in the Act) (hereinafter the "liquidator") pursuant to this Agreement and shall proceed diligently to wind up the affairs of the LLC and make final distributions as provided herein and in the Act. The costs of liquidation shall be borne as a LLC expense. The steps to be accomplished by the liquidator are as follows:

(a)      <u>First</u>, the liquidator shall satisfy all of the LLC's debts, liabilities and obligations to creditors, including Members (whether by payment or the reasonable provision for payment thereof), other than liabilities and obligations for distributions to Members pursuant to Section 18-601 or 18-604 of the Act; and

(b)      <u>Second</u>, all remaining assets shall be distributed to the Members in accordance with Section 2.1.

4.3      <u>Termination</u>. The LLC shall terminate when all of the assets of the LLC, after payment of or due provision for all debts, liabilities and obligations of the LLC, shall have been distributed to the Members in the manner provided for in this Article IV, and the Certificate of the LLC shall have been canceled in the manner required by the Act.

Article V.

CERTIFICATION OF LIMITED LIABILITY COMPANY INTERESTS

5.1      <u>Limited Liability Company Interests</u>. The LLC shall issue certificates to the Members, certifying such Member's Percentage Interest in the LLC. All certificates for limited liability company interests shall be consecutively numbered or otherwise identified and the name of the person or entity to whom the limited liability company interests thereby are issued, with the Percentage Interest and date of issue, shall be entered on the books of the LLC. Limited liability company interests of the LLC shall only be transferred on the books of the LLC by the holder of record thereof or by such holder's attorney duly authorized in writing, upon surrender to the LLC of the certificate for such limited liability company interests endorsed by the appropriate person or persons, with such evidence of the authenticity of such endorsement, transfer, authorization, and other matters as the LLC may require. In that event, it shall be the duty of the LLC to issue a new certificate to the person or entity entitled thereto, cancel the old

certificate, and record the transaction on its books.  The Board of Managers may appoint a bank or trust company organized under the laws of the United States or any state thereof to act as its transfer agent or registrar, or both in connection with the transfer of any limited liability company interests of the LLC.

      5.2    <u>Lost Certificates</u>.  The Board of Managers may direct a new certificate or certificates to be issued in place of any certificate or certificates previously issued by the LLC alleged to have been lost, stolen, or destroyed, upon the making of an affidavit of that fact by the person or entity claiming the certificate to be lost, stolen, or destroyed.  When authorizing such issuance of a new certificate or certificates, the Board of Managers may, in its sole discretion and as a condition precedent to the issuance thereof, require the owner of such lost, stolen, or destroyed certificate or certificates, or his, her or its legal representative, to give the LLC a bond sufficient to indemnify the LLC against any claim that may be made against the LLC on account of the loss, theft or destruction of any such certificate or the issuance of such new certificate.

      5.3    <u>Article 8 Opt-In; Certificate Legend</u>.  Each limited liability company interest in the LLC shall constitute a "security" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of Delaware, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.  Each certificate evidencing limited liability company interests shall bear the following legend: "Each limited liability company interest in the LLC shall constitute a "security" within the meaning of, and governed by, (i) Article 8 of the Uniform Commercial Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of Delaware, and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995.  THE TRANSFER OF THIS CERTIFICATE AND THE LIMITED LIABILITY COMPANY INTERESTS REPRESENTED HEREBY IS RESTRICTED AS DESCRIBED IN THE LIMITED LIABILITY COMPANY AGREEMENT OF THE LLC, DATED AS OF OCTOBER 2, 2009, AS THE SAME MAY BE AMENDED OR RESTATED FROM TIME TO TIME." For any outstanding certificates not bearing this legend, it shall be the duty of the LLC to issue a new certificate to the person or entity entitled thereto, cancel the old certificate, and record the transaction on its books.  This provision shall not be amended, and any purported amendment to this provision shall not take effect, until all outstanding certificates have been surrendered for cancellation.

      5.4    <u>Registration of Limited Liability Company Interests</u>.  The LLC shall maintain books for the purpose of registering the transfer of limited liability company interests.  Notwithstanding any provision of this Agreement to the contrary, a transfer of limited liability company interests requires delivery of an endorsed certificate evidencing the limited liability company interests and shall be effective upon registration of such transfer in the books of the LLC.

Article VI.

BOOKS OF ACCOUNT

6.1    Books.  The Board of Managers will maintain on behalf of the LLC complete and accurate books of account of the LLC's affairs at the LLC's principal office, which books will be open to inspection by any Member (or his authorized representative) at any time during ordinary business hours and shall be maintained in accordance with the Act.

6.2    Fiscal Year.  The fiscal year (the "Fiscal Year") of the LLC shall constitute the 12-month period ending on December 31 of each calendar year.

Article VII.

[Reserved]

Article VIII.

MISCELLANEOUS

8.1    Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed by the Member. Notwithstanding anything to the contrary contained in this Agreement, on or prior to the Sale Rights End Date (as defined in the Sale Rights Agreement), this Agreement may not be amended without the consent of the Agent and the First Lien Agent (as defined in the Sale Rights Agreement).

8.2    Successors.  Except as otherwise provided herein, this Agreement will inure to the benefit of and be binding upon the Members and their respective legal representatives, heirs, successors and permitted assigns.

8.3    Governing Law; Severability.  The Agreement will be construed in accordance with the laws of the State of Delaware, and, to the maximum extent possible, in such manner as to comply with all of the terms and conditions of the Act.  If it is determined by a court of competent jurisdiction that any provision of this Agreement is invalid under applicable law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement.

8.4    Notices.  All notices, demands and other communications to be given and delivered under or by reason of provisions under this Agreement, shall be in writing and shall be deemed to have been given when personally delivered, mailed by first class mail (postage prepaid and return receipt requested), sent by telecopy or sent by reputable overnight courier service (charges prepaid) to the addresses or telecopy numbers set forth in Schedule 1 or to such other addresses or telecopy numbers as have been supplied in writing to the LLC.

8.5    Complete Agreement, Headings, Counterparts.  This Agreement terminates and supersedes all other agreements concerning the subject matter hereof previously entered into among any of the parties.  Descriptive headings are for convenience only and will

not control or affect the meaning or construction of any provision of this Agreement.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine, feminine or the neuter gender shall include the masculine, the feminine and the neuter.  This Agreement may be executed in any number of counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts together will constitute one agreement.

       8.6    <u>Liabilities</u>.  Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the LLC, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the LLC, and the Member shall not be obligated personally for any such debt, obligation or liability of the LLC solely by reason of being a member of the LLC.

       8.7    To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

IN WITNESS WHEREOF, the party hereto has caused this Limited Liability Company Agreement to be signed as of the date first above written.

**MEMBER:**

**RIVERDEEP INC., A LIMITED LIABILITY COMPANY**

By: _____
       Name:  William Bayers
       Title:    EVP, Secretary and General Counsel

SCHEDULE 1

The Members

| Name | Address | Percentage Interest |
|------|---------|---------------------|
| Riverdeep Inc., a Limited Liability Company | 222 Berkeley Street Boston, MA  02116 | 100% |

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**of**

**CLASSROOM CONNECT, INC.**

Classroom Connect, Inc. (the "*Corporation*"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "*DGCL*"), hereby certifies as follows:

A.    The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "*Plan*").

B.    The Corporation, CLASSROOM HOLDINGS, INC., was initially formed on January 9, 1997.

C.    This Amended and Restated Certificate of Incorporation ("*Certificate of Incorporation*"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.    Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1.    The name of this corporation is Classroom Connect, Inc.

2.    Its registered office in the State of Delaware is to be located at 1209 Orange Street, in the City of Wilmington, County of New Castle, Zip Code 19801. The registered Agent in charge thereof is The Corporation Trust Company.

3.    The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

4.    The total number of shares of stock which the corporation shall have authority to issue is one hundred (l00) shares of common stock, par value $1.00 per share.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

5.      The corporation shall, to the fullest extent permitted by the provisions of § 145 of the General Corporation Law of the State of Delaware, as the same may be amended and supplemented, indemnify any and all persons whom it shall have power to indemnify under said section from and against any and all of the expenses, liabilities, or other matters referred to in or covered by said section, and the indemnification provided for herein shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his or her official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee, or agent and shall insure to the benefit of the heirs, executors and administrators of such a person.

6.      To the fullest extent permitted by the General Corporation Law of the State of Delaware, as the same may be amended or supplemented, a director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. Any repeal or modification of the foregoing sentence by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

7.      In furtherance of and not in limitation of powers conferred by statute, it is further provided that:

(a) Subject to the limitations and exceptions, if any, contained in the By-laws of the corporation and this Certificate of Incorporation, the By-laws may be adopted, amended or repealed by the Board of Directors of the corporation with, and only with, the affirmative vote of a majority of all directors then in office; and

(b) Elections of directors need not be by written ballot unless, and only to the extent, otherwise provided in the By-laws.

[Signature Page Follows]

US1:7986663v3

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**CLASSROOM CONNECT, INC.**

By: _____
Name: William Bayers
Title: EVP, Secretary and General Counsel

[Signature Page to Amended and Restated Certificate of Incorporation of Classroom Connect, Inc.]

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**OF**

**CLASSWELL LEARNING GROUP INC.**

Classwell Learning Group Inc. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.    The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.    The Corporation was initially formed on July 27, 2000.

C.    This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.    Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

## ARTICLE I

The name of this corporation is Classwell Learning Group Inc. (hereinafter the "Corporation").

## ARTICLE II

The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle.  The name of its registered agent at that address is The Corporation Trust Company.

## ARTICLE III

The Purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of the State of Delaware.

## ARTICLE IV

The total number of shares of stock which the Corporation shall have authority to issue is one thousand (1,000) shares of Common Stock, each having a par value of one cent ($0.01).  To

the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

## ARTICLE V

The following provisions are inserted for the management of the business and the conduct of the affairs of the Corporation, and for further definition, limitation and regulation of the powers of the Corporation and its directors and stockholders:

(1)  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

(2)  The directors shall have concurrent power with the stockholders to make, alter, amend, change, add to or repeal the By-Laws of the Corporation.

(3)  The number of directors of the Corporation shall be as from time to time fixed by, or in the manner provided in, the By-Laws of the Corporation. Election of the directors need not be by written ballot unless the By-Laws so provide.

(4) No director shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law, (iii) pursuant to Section 174 of the GCL, or (iv) for any transaction from which the director derived an improper personal benefit.   Any repeal or modification of this Article FIFTH by the stockholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification with respect to acts or omissions occurring prior to such repeal or modification.

(5)  In addition to the powers and authority hereinbefore or by statute expressly conferred upon them, the directors are hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, nevertheless, to the Provisions of the GCL, this Certificate of Incorporation, and any By-Laws adopted by the stockholders; provided, however, that no By-Laws hereafter adopted by the stockholders shall invalidate any prior act of the directors which would have been valid if such By-Laws had not been adopted.

## ARTICLE VI

Meetings of stockholders may be held within or without the State of Delaware, as the By-Laws may provide.  The books of the Corporation may be kept (subject to any provision contained in the GCL) outside the State of Delaware at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws of the Corporation.

## ARTICLE VII

The Corporation reserves the right to amend, alter, change or repeal any provision contained in the Certificate of Incorporation, in the manner now or hereafter provided by statute, and all rights conferred upon the stockholders herein are granted subject to this reservation.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**CLASSWELL LEARNING GROUP INC.**

By: _____
Name: William Bayers
Title: EVP, Secretary and General Counsel

# AMENDED AND RESTATED

## ARTICLES OF INCORPORATION

### of

## COGNITIVE CONCEPTS, INC.

Cognitive Concepts, Inc. (the "***Corporation***") hereby certifies pursuant to Section 10.40 of the Illinois Business Corporation Act as follows:

A.   The name of the Corporation is Sentry Realty Corporation.

B.   The text of each amendment approved by the court is as follows.  Article FOURTH of the Articles of Incorporation of the Corporation is amended to append the following at the end of such Article:

> To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

C.   The date of the court's order approving the articles of amendment is June 21, 2012.

D.   The title of the reorganization proceeding in which the order was entered is *In re Houghton Mifflin Harcourt Publishing Company,* et al., Case No. 12-12171 (REG) (U.S. Bankr. Ct. S.D.N.Y.).

E.   The United States Bankruptcy Court for the Southern District of New York has jurisdiction of the proceeding under Title 11 of the United States Code.

The Corporation does hereby certify that the Articles of Incorporation, as amended and restated, are hereby amended and restated to read in their entirety as follows:

FIRST:  The name of the Corporation is Cognitive Concepts, Inc. (hereinafter, the "Corporation").

SECOND:  The address of the registered office of the Corporation in the State of Illinois is 208 South LaSalle Street, Chicago, IL 60604.  The name of its registered agent at that address is CT Corporation System.

THIRD:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the Illinois Business Corporation Act as amended from time to time.

FOURTH:  There shall be 1,000 shares of common stock, par value $0.01 per share, authorized.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing

restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

FIFTH:  For the management of the business and for the conduct of the officers of the Corporation, it is further provided:

(a) No election of Directors need be by written ballot;

(b) Any purported transfer of any shares of stock of the Corporation in violation of the terms of the these Amended and Restated Articles of Incorporation, the Stockholders Agreement, dated as of April 15, 1998 or any applicable subscription agreement, shall be of no force or effect and shall not be recognized by the Corporation.

(c) In furtherance and not in limitation of the powers conferred by statute, the Board of directors is expressly authorized to amend, alter or repeal the By-Laws, and to adopt new By-Laws, of the Corporation except as specifically provided otherwise therein.

SIXTH:  Meetings of stockholders may be held within or without the State of Illinois, as the By-Laws may provide. The books of the Corporation may be kept (subject to any provision contained in the BCA) outside the State of Illinois at such place or places as may be designated from time to time by the Board of Directors or in the By-Laws of the Corporation.

SEVENTH:  Indemnification.

(a) Right to Indemnification. Each person who was or is made a party or is threatened to be made a party to, or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter, a "proceeding") by reason of the fact that such person is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of a partnership, joint venture, trust or other enterprise of the Corporation (hereinafter an "indemnitee") shall be indemnified and held harmless by the Corporation to the fullest extent authorized by Illinois law as the same exists or may hereafter be amended (but in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than permitted prior thereto) against all expense, liability and loss (including attorney's fees, judgments, fines, ERISA and excise taxes or penalties and amounts paid in settlements) reasonably incurred or suffered by such indemnitee in connection therewith if such indemnitee acted in good faith and in a manner he or she reasonably believed to be in and not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. Such indemnification shall continue as to an indemnitee who has ceased to be a director, officer, employee or agent, and shall inure to the benefit of the indemnitee's heirs, executors and administrators.

(b) Right to Advancement of Expenses. The right to indemnification conferred in paragraph (a) of this Article shall include the right to be paid by the Corporation, in advance of the final disposition, the expenses incurred in defending any proceeding for which such right to

indemnification may be applicable (hereinafter, an "advancement of expenses"); provided, however, that, if Illinois law requires, an advancement of expenses incurred by an indemnitee shall be made only upon delivery to the Corporation of an undertaking (hereinafter, an "undertaking"), by or on behalf of such indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a "final adjudication") that such indemnitee is not entitled to be indemnified for such expenses under this Article or otherwise.

(c) Right of Indemnitee to Bring Suit. The rights to indemnification and to the advancement of expenses conferred in paragraphs (a) and (b) of this Article shall be contract rights. If a claim under paragraph (a) or (b) of this Article is not paid in full by the Corporation within sixty (60) days after a written claim has been received by the Corporation, except in the case of a claim for an advance of expenses, in which case the applicable period shall be twenty (20) days, the indemnitee may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the indemnitee shall be entitled to be paid also the expense of prosecuting or defending such suit. In (i) any suit brought by the indemnitee to enforce a right to indemnification hereunder (but not in a suit by the indemnitee to enforce a right in advancement of expenses) it shall be a defense that, and (ii) in any suit by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking the Corporation shall be entitled to recover such expenses upon a final adjudication that, the indemnitee has not met the applicable standard for indemnification set forth above or in Illinois law. Neither the failure of the Corporation (including its board of directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the indemnitee is proper in the circumstances because the indemnitee has met the applicable standard of conduct set forth above or in Illinois law, nor an actual determination by the Corporation (including its board of directors, independent legal counsel, or its stockholders) that the indemnitee has not met such applicable standard of conduct, shall create a presumption that the indemnitee has not met the applicable standard of conduct or in the case of such suit brought by the indemnitee, be a defense to such suit. In any suit brought by the indemnitee to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the indemnitee is not entitled to be indemnified, or to such advancement of expenses, under this Article or otherwise shall be on the Corporation.

(d) Non-Exclusivity of Rights. The rights to indemnification and to the advancement of expenses conferred in this Article shall not be deemed exclusive of any other rights which any person may have or hereafter acquire under any statute, this Amended and Restated Articles of Incorporation, by-law, agreement, vote of stockholders or disinterested directors, or otherwise.

(e) Insurance. The Corporation may purchase and maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under this Article or under Illinois law.

EIGHTH:  To the fullest extent permitted by Illinois law or any other applicable laws as presently or hereafter in effect, no director of the Corporation shall be personally liable to the Corporation or its stockholders for or with respect to any acts or omissions in the performance of his or her duties as a director of the Corporation. No amendment to or repeal of this Article Eighth shall apply to or have any effect on the liability or alleged liability of any director of the Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

NINTH:   In addition to any affirmative vote required by law or these Articles of Incorporation: (a) the authorization of any share exchange, merger or consolidation of the Corporation or any of its subsidiaries with any other corporation; (b) the authorization of any sale, lease, exchange, mortgage, pledge, transfer or other disposition of all, or substantially all, assets or property of the Corporation; (c) the issuance or transfer by the Corporation or any of its subsidiaries of all, or substantially all, securities of the Corporation or any of its subsidiaries to any purchaser in exchange for cash, securities or other property (or a combination thereof) except pursuant to an employee benefit plan of the Corporation or one of its subsidiaries; (d) the adoption of any plan or proposal for the liquidation or dissolution of the Corporation other than as may be proposed by the Board of Directors; or (e) any reclassification of securities (including any reverse stock split) or recapitalization of the Corporation, or any merger or consolidation of the Corporation with any of its subsidiaries or other transaction which has the effect, directly or indirectly, of increasing the proportionate share of the outstanding shares of any class or series of equity or convertible securities of the Corporation or any subsidiary of the Corporation, shall require the affirmative vote of at least a majority of the shares of each class of series of shares entitled to vote as a class on the issue. Such affirmative votes shall be required notwithstanding that any other provisions of these Articles of Incorporation, or any provision of law, or any other agreement might otherwise permit a greater vote.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**COGNITIVE CONCEPTS, INC.**

By: _____

Name: William Bayers

Title: EVP, Secretary and General Counsel

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**OF**

**HM PUBLISHING CORP.**

HM Publishing Corp. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.      The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.      The Corporation was initially formed on September 12, 2003.

C.      This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.      Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1.      The name of this Corporation is HM Publishing Corp.

2.      The registered office of this Corporation in the State of Delaware is located at Corporation Trust Center, 1209 Orange Street, County of New Castle, City of Wilmington, State of Delaware, Zip Code 19801.  The name of its registered agent at such address is The Corporation Trust Company.

3.      The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.      Capital Stock.

4.1.      The total number of shares of stock that the Corporation shall have authority to issue is 1,000 shares of Common Stock, par value $0.001 per share. Each share of Common Stock shall be entitled to one vote.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have

such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

4.2.    Except as otherwise provided in the provisions establishing a class of stock, the number of authorized shares of any class or series of stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the voting power of the Corporation entitled to vote irrespective of the provisions of Section 242(b)(2) of the General Corporation Law of the State of Delaware.

5.    The election of directors need not be by ballot unless the By-laws shall so require.

6.    In furtherance and not in limitation of the power conferred upon the Board of Directors by law, the Board of Directors shall have power to make, adopt, alter, amend and repeal from time to time By-laws of this Corporation, subject to the right of the stockholders entitled to vote with respect thereto to alter and repeal By-laws made by the Board of Directors.

7.    A director of this Corporation shall not be liable to this Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent that exculpation from liability is not permitted under the DGCL as in effect at the time such liability is determined. No amendment or repeal of this paragraph 7 shall apply to or have any effect on the liability or alleged liability of any director of this Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

8.    To the maximum extent permitted from time to time under the law of the State of Delaware, this Corporation renounces any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, business opportunities that are from time to time presented to its officers, directors or stockholders, other than those officers, directors or stockholders who are employees of this Corporation. No amendment or repeal of this paragraph 8 shall apply to or have any effect on the liability or alleged liability of any officer, director or stockholder of the Corporation for or with respect to any opportunities of which such officer, director or stockholder becomes aware prior to such amendment or repeal.

9.    This Corporation shall, to the maximum extent permitted from time to time under the law of the State of Delaware, indemnify and upon request shall advance expenses to any person who is or was a party or is threatened to be made a party to any threatened, pending or completed action, suit, proceeding or claim, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was or has agreed to be a director or officer of this Corporation or while a director or officer is or was serving at the request of this Corporation as a director, officer, partner, trustee, employee or agent of any corporation, partnership, joint venture, trust or other enterprise, including, without limitation, service with respect to employee benefit plans, against expenses (including, without limitation, attorney's fees and charges), judgments, fines, penalties and amounts paid in settlement incurred in connection with the investigation, preparation to defend or defense of such action, suit, proceeding or claim; provided, however, that the foregoing shall not require this Corporation to indemnify or advance

expenses to any person in connection with any action, suit, proceeding, claim or Counterclaim initiated by or on behalf of such person.  Such indemnification shall not be exclusive of other indemnification  rights arising By-law, agreement, vote of directors or stockholders or otherwise and shall inure to the benefit of the heirs and legal representatives of such person.  Any person seeking indemnification under this paragraph 9 shall be deemed to have met the standard of conduct required for such indemnification unless the contrary shall be established. Any repeal or modification of the foregoing provisions of this paragraph 9 shall not adversely affect any right or protection of a director or officer of this Corporation with respect to any acts or omissions of such director or officer occurring prior to such repeal or modification.

10.    The books of this Corporation may (subject to any statutory requirements) be kept outside the State of Delaware as may be designated by the Board of Directors or in the By-laws of this Corporation.

11.    If at any time this Corporation shall have a class of stock registered pursuant to the provisions of the Securities Exchange Act of 1934, for so long as such class is so registered, any action by the stockholders of such class must be taken at an annual or special meeting of stockholders and may not be taken by written consent

12.    This Corporation shall not be governed by Section 203 of the DGCL.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**HM PUBLISHING CORP.**

By: _____

Name: William Bayers

Title: EVP, Secretary and General Counsel

[Signature Page to Amended and Restated Certificate of Incorporation of HM Publishing Corp.]

**D**
**PC**

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

FORM MUST BE TYPED          **Restated Articles of Organization**          FORM MUST BE TYPED

**(General Laws Chapter 156D, Section 10.07; 950 CMR 113.35)**

(1)  Exact name of corporation: _____

(2)  Registered office address: _____
                                            *(number, street, city or town, state, zip code)*

(3)  Date adopted: _____
                              *(month, day, year)*

(4)  Approved by:

   *(check appropriate box)*

   ☐  the directors without shareholder approval and shareholder approval was not required;

   OR

   ☐  the board of directors and the shareholders in the manner required by G.L. Chapter 156D and the corporation's articles
       of organization.

(5)  The following information is required to be included in the articles of organization pursuant to G.L. Chapter 156D, Section
      2.02 except that the supplemental information provided for in Article VIII is not required:*

## ARTICLE I

The exact name of the corporation is:

## ARTICLE II

Unless the articles of organization otherwise provide, all corporations formed pursuant to G.L. Chapter 156D have the purpose of
engaging in any lawful business.  Please specify if you want a more limited purpose:**

* Changes to Article VIII must be made by filing a statement of change of supplemental information form.
** Professional corporations governed by G.L. Chapter 156A and must specify the professional activities of the corporation.

_____
P.C.                                                                                                    c156ds1007950c11335 01/13/05

## ARTICLE III

State the total number of shares and par value, * if any, of each class of stock that the corporation is authorized to issue. All corporations must authorize stock. If only one class or series is authorized, it is not necessary to specify any particular designation.

| WITHOUT PAR VALUE | | WITH PAR VALUE | | |
|---|---|---|---|---|
| TYPE | NUMBER OF SHARES | TYPE | NUMBER OF SHARES | PAR VALUE |
| | | | | |
| | | | | |
| | | | | |

## ARTICLE IV

Prior to the issuance of shares of any class or series, the articles of organization must set forth the preferences, limitations and relative rights of that class or series.  The articles may also limit the type or specify the minimum amount of consideration for which shares of any class or series may be issued.  Please set forth the preferences, limitations and relative rights of each class or series and, if desired, the required type and minimum amount of consideration to be received.

## ARTICLE V

The restrictions, if any, imposed by the articles or organization upon the transfer of shares of any class or series of stock are:

## ARTICLE VI

Other lawful provisions, and if there are no such provisions, this article may be left blank.

*Note:  The preceding six (6) articles are considered to be permanent and may be changed only by filing appropriate articles of amendment.*

*\*G.L. Chapter 156D eliminates the concept of par value, however a corporation may specify par value in Article III. See G.L. Chapter 156D, Section 6.21, and the comments relative thereto.*

### ARTICLE VII

The effective date of organization of the corporation is the date and time the articles were received for filing if the articles are not rejected within the time prescribed by law.  If a later effective date is desired, specify such date, which may not be later than the 90th day after the articles are received for filing:

It is hereby certified that these restated articles of organization consolidate all amendments into a single document.  If a new amendment authorizes an exchange, or effects a reclassification or cancellation, of issued shares, provisions for implementing that action are set forth in these restated articles unless contained in the text of the amendment.

Specify the number(s) of the article(s) being amended:_____

Signed by: _____ ,
*(signature of authorized individual)*

    ☐  Chairman of the board of directors,

    ☐  President,

    ☐  Other officer,

    ☐  Court-appointed fiduciary,

on this _____day of_____ , _____ .

# COMMONWEALTH OF MASSACHUSETTS

William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

## Restated Articles of Organization
**(General Laws Chapter 156D, Section 10.07; 950 CMR 113.35)**

I hereby certify that upon examination of these restated articles of organization, duly submitted to me, it appears that the provisions of the General Laws relative to the organization of corporations have been complied with, and I hereby approve said articles; and the filing fee in the amount of $_____ having been paid, said articles are deemed to have been filed with me this _____ day of _____, 20_____ , at _____a.m./p.m.

*time*

Effective date:_____
*(must be within 90 days of date submitted)*

## WILLIAM FRANCIS GALVIN
*Secretary of the Commonwealth*

_____
Examiner

_____
Name approval

Filing fee:  Minimum filing fee $200, plus $100 per article amended, stock increases $100 per 100,000 shares, plus $100 for each additional 100,000 shares or any fraction thereof.

_____
C

_____
M

## TO BE FILLED IN BY CORPORATION
Contact Information:

_____

_____

_____

Telephone: _____

Email: _____

Upon filing, a copy of this filing will be available at www.sec.state.ma.us/cor.
If the document is rejected, a copy of the rejection sheet and rejected document will be available in the rejected queue.

Execution Copy

AMENDED AND RESTATED

LIMITED LIABILITY COMPANY AGREEMENT
OF
HMH PUBLISHERS LLC

   This Amended and Restated Limited Liability Company Agreement (the "Agreement") of HMH Publishers LLC (formerly known as HMRH Acquisition Co., the "Company") is entered into this 21st day of June, 2012, by Houghton Mifflin Harcourt Publishers Inc. (the "Member") pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del.C. § 18-101, et seq.), as amended from time to time (the "Act") and amends and restates in its entirety the Company's limited liability company agreement.

   1. Name.  The name of the limited liability company governed hereby is HMH Publishers LLC.

   2. Certificates.  Jeremy Dickens, as an authorized person within the meaning of the Act, has executed, delivered and filed on behalf of the Member the Certificate of Formation of the Company with the Secretary of State of the State of Delaware and the Certificate of Conversion of HMRH Acquisition Co. with the Secretary of the State of Delaware.

   3. Member.  Houghton Mifflin Harcourt Publishers Inc. shall be the sole "member" of the Company.  The Member shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

   4. Purpose.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in all lawful activities for which limited liabilities companies may be formed under the Act.

   5. Powers.  Subject to Section 15, the Company shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member pursuant to this Agreement, including Section 15.

   6. Principal Business Office.  The principal place of business and office of the Company shall be located, and the Company's business shall be conducted from, such place or places as may hereafter be determined by the Member.

   7. Registered Office.  The address of the registered office of the Company in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Wilmington, County of New Castle, State of Delaware, 19808.

   8. Registered Agent.  The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware are Corporation

Service Company, 2711 Centerville Road, Wilmington, County of New Castle, State of Delaware, 19808.

      9.    <u>Name and Mailing Address of the member</u>.  The name and the mailing address of the Member are as follows:

| Name | Address |
|---|---|
| Houghton Mifflin Harcourt Publishers Inc. | 222 Berkeley Street<br>Boston, MA 02116<br>c/o Houghton Mifflin Company<br>attn:  William Bayers, SVP and<br>     General Counsel |

      10.    <u>Term</u>.  The term of the Company commenced on the date of filing of the Certificate of Formation of the Company in accordance with the Act and shall continue until dissolution of the Company in accordance with Section 20 of this Agreement.

      11.    <u>Limited Liability</u>.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and none of the Member, any Officer (as hereinafter defined), employee or agent of the Company (including a person having more than one such capacity) shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of acting in such capacity.

      12.    <u>Capital Contributions</u>.  The Member is deemed admitted as a Member of the Company upon its execution and delivery of this Agreement.  The initial contribution of the Member consists of the assets set forth on Schedule A attached hereto.  The total capital of the Member in the Company from time to time shall be referred to as the Member's "Capital."

      13.    <u>Additional Contributions</u>.  The Member is not required to make additional capital contributions to the Company.

      14.    <u>Capital Account</u>.  So long as the Member is the sole member of the Company, all items of income, profit and loss of the Company shall be allocated to the Member.  A Capital account ("<u>Capital Account</u>") shall be maintained for the Member on the books of the Company.  Such Capital Account shall be adjusted to reflect the Member's shares of allocations and distributions as provided in Section 14 of this Agreement, and any additional capital contributions to the Company or distributions from the Company.  Such Capital Account shall further be adjusted to conform to the Treasury Regulations under Section 704(b) of the Internal Revenue Code of 1986, as amended (the "<u>Code</u>"), as interpreted in good faith by the Member.

      15.    <u>Allocations and Distributions</u>.

          a.    <u>Allocations</u>.  Whenever a proportionate part of the Company's taxable income or loss is allocated to the member, every item of income, gain, loss, deduction and credit entering into the computation of such taxable income or loss applicable to the period during which such taxable income or loss was realized shall be allocated to the Member.

US1:7986818v2

b.    <u>Distributions.</u>  Distributions shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to the Member on account of its interest in the Company if such distribution would violate Section 18-607 of the Act or other applicable law.

16.    <u>Management</u>.

a.    The business and affairs of the Company shall be managed by the Member.  The Company has no other members on the date hereof and shall not issue additional membership interests to other persons without the written consent of the Member.  Subject to the express limitations contained in any provision of this Agreement, the Member shall have complete and absolute control of the affairs and business of the Company, and shall possess all powers necessary, convenient or appropriate to carrying out the purposes and business of the Company, including, without limitation, doing all things and taking all actions necessary to carrying out the terms and provisions of this Agreement.

b.    Subject to the rights and powers of the Member and the limitations thereon contained herein, the Member may delegate to any person any or all of its powers, rights and obligations under this Agreement and may appoint, contract or otherwise deal with any person to perform any acts or services for the Company as the Member may reasonably determine.

c.    The Member may be compensated for its services to the Company, as determined in its sole discretion.

17.    <u>Officers</u>.  The Member may, from time to time, as it deems advisable, appoint officers of the Company (the "<u>Officers</u>") and assign in writing titles (including, without limitation, President, Vice President, Secretary and Treasurer) to any such person.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 17 may be revoked at any time by the Member.

18.    <u>Other Business</u>.  The Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

19.    <u>Exculpation and Indemnification</u>.  None of the Member or any officer (each and "<u>Indemnified Party</u>") shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Indemnified Party in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnified Party by this Agreement, except that an Indemnified Party shall be liable for any such loss, damage or claim incurred by reason of such Indemnified Party's gross negligence

US1:7986818v2

or willful misconduct. To the full extent permitted by applicable law, an Indemnified Party shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Indemnified Party by reason of any act or omission performed or omitted by such Indemnified Party in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnified Party by this Agreement, except that no Indemnified Party shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Indemnified Party by reason of gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 18 shall be provided out of and to the extent of Company assets only, and the Member shall have no personal liability on account thereof.

20.    Assignments. The Member may transfer, assign, pledge or hypothecate, in whole or in part, its limited liability company interest, as determined in its sole discretion.

21.    Dissolution.

a.    The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following: (i) the written consent of the Member, (ii) the bankruptcy or withdrawal of the Member and (iii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

b.    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner).

22.    Elections. The Member shall determine the accounting methods and conventions under the tax laws of any and all applicable jurisdictions as to the treatment of income, gain, loss, deduction and credit of the Company or any other method or procedure related to the preparation of such tax returns. The Member may cause the Company to make or refrain from making any and all elections permitted by such tax laws, and the Member shall not be liable for any consequences to any previously admitted or subsequently admitted Members resulting from their making or failing to make any such elections.

23.    Separability of Provisions. Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

24.    Entire Agreement. This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

25.    Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles thereof), and all rights and remedies shall be governed by such laws.

US1:7986818v2

26.     <u>Amendments</u>.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

27.     To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

*[Signature Page Follows]*

US1:7986818v2

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

MEMBER:

**HOUGHTON MIFFLIN HARCOURT PUBLISHERS INC.**

By: _____

     Name:  William Bayers
     Title:    EVP, Secretary and General Counsel

**Schedule A**

| Name | Capital Contribution |
| --- | --- |
| Houghton Mifflin Harcourt Publishers Inc. | $10.00 |

## AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

### OF

## HMH SUPPLEMENTAL PUBLISHERS INC.

HMH Supplemental Publishers Inc. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.    The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.    The Corporation was initially formed on December 17, 1985 under the name STECK-VAUGHN COMPANY.

C.    This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.    Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1.    The name of the corporation is:  HMH Supplemental Publishers Inc.

2.    The address of its registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.

3.    The  purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.    The total number of shares of stock which the corporation shall have authority to issue is One thousand (1,000) and the par value of each of such shares is Ten Dollars ($10.00) amounting in the aggregate to Ten Thousand Dollars ($10,000.00).  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

5.      The board of directors is authorized to make, alter or repeal the by-laws of the corporation.  Election of directors need not be by written ballot.

6.      In furtherance of and not in limitation of powers conferred by statute, it is further provided that:

(a) Subject to the limitations and exceptions, if any, contained in the By-laws of the corporation and this Certificate of Incorporation, the By-laws may be adopted, amended or repealed by the Board of Directors of the corporation with, and only with, the affirmative vote of a majority of all directors then in office; and

(b) Elections of directors need not be by written ballot unless, and only to the extent, otherwise provided in the By-laws; and

7.      No director of the corporation shall be personally liable to the corporation or to any of its stockholders for monetary damages arising out of such director's breach of his fiduciary duty as a director of the corporation, except to the extent that the elimination or limitation of such liability is not permitted by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended. No amendment to or repeal of the provisions of this Article 7 shall deprive any director of the corporation of the benefit hereof with respect to any act or failure to act of such director occurring prior to such amendment or repeal.

[Signature Page Follows]

       **IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**HMH SUPPLEMENTAL PUBLISHERS INC.**

By: _____
Name: William Bayers
Title: EVP, Secretary and General Counsel

Article 6A. LIMITATION OF LIABILITY OF DIRECTORS

1.      No director of this Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director notwithstanding any provision of law imposing such liability; provided, however, that this Article shall not eliminate or limit any liability of a director (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Sections 61 or 62 of Chapter 156B of the Massachusetts General Laws, or (iv) with respect to any transaction from which the director derived an improper personal benefit.

2.      No amendment or repeal of this Article shall adversely affect the rights and protection afforded to a director of this Corporation under this Article for acts or omissions occurring prior to such amendment or repeal.

Article 6B. TRANSACTIONS WTTH INTERESTED PERSONS

l.      Unless entered into in bad faith, no contract or transaction by this Corporation shall be void, voidable or in any way affected by reason of the fact that it is with an Interested Person.

2.      For the purposes of this Article, "Interested Person" means any person or organization in any way interested in this Corporation whether as an officer, director, stockholder, employee or otherwise, and any other entity in which any such person or organization or this Corporation is in any way interested.

3.      Unless such contract or transaction was entered into in bad faith, no Interested Person, because of such interest, shall be liable to this Corporation or to any other person or organization for any loss or expense incurred by reason of such contract or transaction or shall be accountable for any gain or profit realized from such contract or transaction.

4.      The provisions of this Article shall be operative notwithstanding the fact that the presence of an Interested Person was necessary to constitute a quorum at a meeting of directors or stockholders of this Corporation at which such contract or transaction was authorized or that the vote of an Interested Person was necessary for the authorization of such contract or transaction.

Article 6C. STOCKHOLDERS MEETINGS

        Meetings of stockholders of this Corporation may be held anywhere in the United States.

Article 6D. AMENDMENT OF BY-LAWS

        The By-Laws may provide that the Board of Directors as well as the stockholders may make, amend or repeal the By-Laws of this Corporation, except with respect to any provision thereof which by law, by these Articles or by the By-Laws requires action by the stockholders.

Article 6E. ACTING AS A PARTNER

        This Corporation may be a partner in any business enterprise which it would have power to conduct by itself.

Article 6F. POWERS OF THE CORPORATION

The Corporation shall have all powers granted to corporations by the laws of The Commonwealth of Massachusetts, provided that no such power shall include any activity inconsistent with the Massachusetts Business Corporation Act or the general Laws of said Commonwealth.

Article 6G. QUALIFICATION AS A DIRECTOR

A person shall not be qualified to serve as a director if such person, as of the date of determination, is (i) an officer, employee, director or general partner of (A) any lender to the Corporation or any affiliate of the Corporation; or (B) a person that has primary responsibility for providing management or consulting services to any person referred to in clause (A) which relies primarily on such services, rather than those of its own employees or the employees of its own affiliates, to conduct day-to-day operations; (C) a financial or legal advisor which has provided material services to any person or entity referred to in clause (A) in relation any arrangement for borrowed money or any other material transaction involving the Corporation or any of its affiliates; or (D) any affiliate of a person or entity referred to in clauses (A) through (C), above; or (ii) not free of any investment, employment or other business relationships in effect as of the date of determination (other than any direct or indirect interests in the equity of Education Media And Publishing Group Limited, a Cayman Islands company, or EMPG International Limited, a Cayman Islands company) that would reasonably be expected to interfere with the independent exercise of judgment in the management of the affairs of the Corporation. Notwithstanding the foregoing, a person who does not otherwise meet the above requirements shall be qualified to serve as a director of the Corporation, if the majority of any lenders holding a first priority security interest in the assets of the Corporation or any of its affiliates, together with any administrative agent appointed by lenders holding a second priority security interest in the assets of the corporation or any of its affiliates, have provided their consent with respect to such person serving as a director.

Article 6H.  NON-VOTING STOCK

To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**of**

**HOUGHTON MIFFLIN FINANCE, INC.**

Houghton Mifflin Finance, Inc. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.       The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.       The Corporation was initially formed on May 1, 2006.

C.       This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.       Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1.       Name. The name of this corporation is Houghton Mifflin Finance, Inc.

2.       Registered Office. The registered office of this corporation in the State of Delaware is located at 1209 Orange Street, in the City of Wilmington 19801, County of New Castle.  The name of its registered agent at such address is The Corporation Trust Company.

3.       Purpose. The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.       Stock. The total number of shares of stock that this corporation shall have authority to issue is 1,000 shares of Common Stock, $0.001 par value per share. Each share of Common Stock shall be entitled to one vote.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

5.      Change in Number of Shares Authorized. Except as otherwise provided in the provisions establishing a class of stock, the number of authorized shares of any class or series of stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the voting power of the corporation entitled to vote irrespective of the provisions of Section 242(b)(2) of the General Corporation Law of the State of Delaware.

6.      Election of Directors. The election of directors need not be by written ballot unless the by-laws shall so require.

7.      Authority of Directors. In furtherance and not in limitation of the power conferred upon the board of directors by law, the board of directors shall have power to make, adopt, alter, amend and repeal from time to time by-laws of this corporation, subject to the right of the stockholders entitled to vote with respect thereto to alter and repeal by-laws made by the board of directors.

8.      Liability of Directors. A director of this corporation shall not be liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent that exculpation from liability is not permitted under the General Corporation Law of the State of Delaware as in effect at the time such liability is determined.  No amendment or repeal of this paragraph 8 shall apply to or have any effect on the liability or alleged liability of any director of the corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

9.      Indemnification. This corporation shall, to the maximum extent permitted from time to time under the law of the State of Delaware, indemnify and upon request advance expenses to any person who is or was a party or is threatened to be made a party to any threatened, pending or completed action, suit, proceeding or claim, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was or has agreed to be a director or officer of this corporation or while a director or officer is or was serving at the request of this corporation as a director, officer, partner, trustee, employee or agent of any corporation, partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, against expenses (including attorney's fees and expenses), judgments, fines, penalties and amounts paid in settlement incurred (and not otherwise recovered) in connection with the investigation, preparation to defend or defense of such action, suit, proceeding or claim; provided, however, that the foregoing shall not require this corporation to indemnify or advance expenses to any person in connection with any action, suit, proceeding, claim or counterclaim initiated by or on behalf of such person. Such indemnification shall not be exclusive of other indemnification rights arising under any by-law, agreement, vote of directors or stockholders or otherwise and shall inure to the benefit of the heirs and legal representatives of such person. Any person seeking indemnification under this paragraph 9 shall be deemed to have met the standard of conduct required for such indemnification unless the contrary shall be established. Any repeal or modification of the foregoing provisions of this paragraph 9 shall not adversely affect any right or protection of a director or officer of this corporation with respect to any acts or omissions of such director or officer occurring prior to such repeal or modification.

10.      Records. The books of this corporation may (subject to any statutory requirements) be kept outside the State of Delaware as maybe designated by the board of directors or in the by-laws of this corporation.

11.      Meeting of Stockholders of Certain Classes. If at any time this corporation shall have a class of stock registered pursuant to the provisions of the Securities Exchange Act of 1934, for so long as such class is so registered, any action by the stockholders of such class must be taken at an annual or special meeting of stockholders and may not be taken by written consent.

12.      Waiver of Corporate Opportunities. To the maximum extent permitted from time to time under the law of the State of Delaware, this Corporation renounces any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, business opportunities that are from time to time presented to its officers, directors or stockholders, other than those officers, directors or stockholders who are employees of this Corporation. No amendment or repeal of this paragraph 12 shall apply to or have any effect on the liability or alleged liability of any officer, director or stockholder of the Corporation for or with respect to any opportunities of which such officer, director or stockholder becomes aware prior to such amendment or repeal.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**HOUGHTON MIFFLIN FINANCE, INC.**

By: _____
Name: William Bayers
Title: EVP, Secretary and General Counsel

[Signature Page to Amended and Restated Certificate of Incorporation of Houghton Mifflin Finance, Inc.]

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**of**

**HOUGHTON MIFFLIN HARCOURT PUBLISHERS INC.**

Houghton Mifflin Harcourt Publishers Inc. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.    The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.    The Corporation, HMRH HOLDINGS CO., was initially formed on June 21, 2007.

C.    This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.    Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

FIRST.    The name of the Corporation is Houghton Mifflin Harcourt Publishers Inc. (the "Corporation").

SECOND.    Registered Office. The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street, City of Wilmington, County of New Castle, State of Delaware, 19801. The name of the registered agent of the Corporation in the State of Delaware at such address is The Corporation Trust Company.

THIRD.    The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

FOURTH.    The total number of shares of all classes of stock which the Corporation shall have authority to issue is 1,000 shares, consisting of Common Stock, par value $0.01 per share.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

FIFTH.    Except as otherwise provided by law, the shares of stock of the Corporation may be issued by the Corporation from time to time in such amounts, for such consideration and for such corporate purposes as the Board of Directors may from time to time determine.

SIXTH.    In furtherance and not in limitation of the powers conferred by law, subject to any limitations contained elsewhere in this Certificate of Incorporation, By-laws of the Corporation may be adopted, amended or repealed by a majority of the Board of Directors of the Corporation, but any By-laws adopted by the Board of Directors may be amended or repealed by the stockholders entitled to vote thereon. Election of directors need not be by written ballot.

SEVENTH.    (a) A director of the Corporation shall not be personally liable either to the Corporation or to any stockholder for monetary damages for breach of fiduciary duty as a director, except (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, or (ii) for acts or omissions which are not in good faith or which involve intentional misconduct or knowing violation of the law, or (iii) for any matter in respect of which such director shall be liable under Section 174 of Title 8 of the General Corporation Law of the State of Delaware or any amendment thereto or successor provision thereto, or (iv) for any transaction from which the director shall have derived an improper personal benefit. Neither amendment nor repeal of this paragraph (a) nor the adoption of any provision of the Certificate of Incorporation of the Corporation inconsistent with this paragraph (a) shall eliminate or reduce the effect of this paragraph (a) in respect of any matter occurring, or any cause of action, suit or claim that, but for this paragraph (a) of this Article, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

(b) The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to, or testifies in, any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative in nature, by reason of the fact that such person is or was a director or officer of the Corporation, or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, employee benefit plan, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by such person in connection with such action, suit or proceeding to the full extent permitted by law, and the Corporation may adopt By-laws or enter into agreements with any such person for the purpose of providing for such indemnification.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

HOUGHTON MIFFLIN HARCOURT
PUBLISHERS INC.

By: _____
     Name: William Bayers
     Title: EVP, Secretary and General
     Counsel

<u>ARTICLE VI</u>
<u>Other Lawful Provisions</u>

6.1.    The corporation may carry on its business and affairs to the same extent as might an individual, whether as principal, agent, contractor or otherwise.

6.2.    The corporation may carry on any business, operation or activity necessary or convenient to carry out its business and affairs through a wholly or partly owned subsidiary.

6.3.    The by-laws of the corporation may provide that the directors (as well as the shareholders) may make, amend or repeal the by-laws in whole or in part to the extent permitted by law, subject to the limitation contained in such by-laws.

6.4.    Approval of a-plan of merger, a share exchange or an asset sale outside the ordinary course of business requires the approval by a majority of all the shares entitled to vote on the matter by these articles of organization, the by-laws, or under applicable law.

6.5.    The directors may specify the manner in which the accounts of the corporation shall be kept and may determine what constitutes net earnings, profits and surplus, what amounts, if any, shall be reserved for any corporate purpose, and what amounts, if any; shall be declared as dividends. Unless the board of directors otherwise specifies, the excess of the consideration for any share of its capital stock with par value issued by it over such par value shall be surplus. The board of directors may allocate to capital stock less than all of the consideration for any share of its capital stock without par value issued by it, in which case the balance of such consideration shall be surplus. All surplus shall be available for any corporate purpose, including the payment of dividends.

6.6.    A director of the corporation shall not be liable to the corporation or its shareholders for monetary damages for breach of fiduciary duty as a director, except to the extent that exculpation from liability is not permitted under the Massachusetts Business Corporation Act as in effect at the time such liability is determined. No amendment or repeal of this Article 6.6 shall apply to or have any effect on the liability or alleged liability of any director of the corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or appeal.

6.7.    Action required or permitted by the Massachusetts Business Corporation Act to be taken at a shareholders' meeting may be taken without a meeting if the action is taken by shareholders having not less than the minimum number of votes necessary to take the action at a meeting at which all shareholders entitled to vote are present and voting; <u>provided</u>, <u>however</u>, that if at any time this corporation shall have a class of stock registered pursuant to the provisions of the Securities Exchange Act of 1934, as amended, for so long as such class is so registered, any action by the shareholders of such class must be taken at a meeting of shareholders and may not be taken by written consent.

6.8.    The corporation may enter into contracts or transact business with one or more of its directors, officers or shareholders or with any corporation, organization or other concern in which one or more of its directors, officers or stockholders are directors, officers or stockholders or are otherwise interested and may enter into other contracts or transactions in which one or more of its directors, officers or stockholders are in any way interested to the fullest extent permitted by law.

6.9.    The corporation shall have all powers granted to corporations by the laws of The Commonwealth of Massachusetts, provided that no such power shall include any activity inconsistent with the Massachusetts Business Corporation Act or the general laws of said Commonwealth.

6.10.    A person shall not be qualified to serve as a director if such person, as of the date of determination, is (i) an officer, employee, director or general partner of (A) any lender to the corporation or any affiliate of the corporation; or (B)"a person that bas primary responsibility for providing management or consulting services to any person referred to in clause (A) which relies primarily on such services, rather than those of its own employees or the employees of its own affiliates, to conduct day-to-day operations; (C) a financial or legal advisor which has provided material services to any person or entity referred to in clause (A) in relation any arrangement for borrowed money or any other material transaction involving the corporation or any of its affiliates; or (D) any affiliate of a person or entity referred to in clauses (A) through (C), above; or (ii) not free of any investment, employment or other business relationships in effect as of the date of determination (other than any direct or indirect interests in the equity of Education Media And Publishing Group Limited, a Cayman Islands company, or EMPG International Limited, a Cayman Islands company) that would reasonably be expected to interfe.re with the independent exercise of judgment in the management of the affairs of the corporation. Notwithstanding the foregoing, a person who does not otherwise meet the above requirements shall be qualified to serve as a director of the corporation, if the majority of any lenders holding a first priority security interest in the assets of the corporation or any of its affiliates, together with any administrative agent appointed by lenders holding a second priority security interest in the assets of the corporation or any of its affiliates, have provided their consent with respect to such person serving as a director.

6.11.    To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

of

# HOUGHTON MIFFLIN HOLDING COMPANY, INC.

Houghton Mifflin Holding Company, Inc. (the "**Corporation**"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "**DGCL**"), hereby certifies as follows:

A.     The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "**Plan**").

B.     The Corporation was initially formed on May 1, 2006.

C.     This Amended and Restated Certificate of Incorporation ("**Certificate of Incorporation**"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.     Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1. Name.  The name of the Corporation is Houghton Mifflin Holding Company, Inc.

2. Registered Office and Agent.  The address of the registered office of the Corporation in the State of Delaware is Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, State of Delaware, 19801.  The name of the registered agent of the Corporation in the State of Delaware at such address is the Corporation Trust Company.

3. Purpose.  The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4. Capital Stock.

4.1.   Authorized Shares.  The total number of shares of capital stock which the Corporation shall have authority to issue is 1,000 shares, consisting of Class A Common

Stock, par value $0.001 per share (the "Common Stock").

4.2.    Issuance of Shares.  Except as otherwise provided by law, the shares of Common Stock of the Corporation may be issued by the Corporation from time to time in such amounts, for such consideration and for such corporate purposes as the Board of Directors may from time to time determine.

4.3.    Relative Rights.  Each share of Common Stock shall have the same relative rights as, and be identical in all respects to, all the other shares of Common Stock.

4.4.    Voting Rights.  Each holder of shares of Common Stock shall be entitled to attend all special and annual meetings of the stockholders of the Corporation and to cast one vote for each outstanding share of Common Stock so held upon any matter (including, without limitation, the election of one or more directors) properly considered and acted upon by the stockholders of the Corporation. The number of authorized shares of Common Stock may be increased or decreased (but not below the number of shares of Common Stock then outstanding) by the affirmative vote of the holders of a majority of the stock of the Corporation entitled to vote, irrespective of the provisions of Section 242(b)(2) of the DGCL.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

5. Bylaws.  In furtherance and not in limitation of the powers conferred by law, subject to any limitations contained elsewhere in this Certificate, the Corporation may adopt, an1end or repeal bylaws by the vote of a majority of the Board, but any bylaws of the Corporation adopted by the Board may be amended or repealed by the holders of a majority of the issued and outstanding shares of capital stock of the Corporation entitled to vote thereon.

6. Elections of Directors.  Elections of directors need not be by written ballot unless the bylaws of the Corporation shall so provide.

7. Right to Amend.  The Corporation reserves the right to amend any provision contained in this Certificate as the same may from time to time be in effect in the manner now or hereafter prescribed by law, and all rights conferred on stockholders or others hereunder are subject to such reservation.

8. Limitation on Liability.  A director of the Corporation shall not be personally

liable to the Corporation or its stockholders for monetary damages for breach of
fiduciary duty as a director, except for liability (i) for any breach of the director's duty
of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good
faith or which involve intentional misconduct or knowing violation of law, (iii) under
Section 174 of the DGCL or (iv) for any transaction from which the director derived an
improper personal benefit. Any repeal or amendment of this Article 8 by the
stockholders of the Corporation shall be prospective only, and shall not adversely affect
any limitation on the personal liability of a director of the Corporation arising from an
act or omission occurring prior to the time of such repeal or amendment. In addition to
the circumstances in which a director of the Corporation is not personally liable as set
forth in the foregoing provisions of this Article 8, a director shall not be liable to the
Corporation or its stockholders to such further extent as permitted by any law hereafter
enacted, including without limitation any subsequent amendment to the DGCL.

8.1.    Right to Indemnification. The Corporation shall indemnify any person
who was or is party or is threatened to be made a party to any threatened, pending
or completed action, suit or proceeding, whether civil, criminal, administrative or
investigative (a "proceeding"), by reason of the fact that such person is or was a
director or officer of the Corporation or a constituent corporation absorbed in a
consolidation or merger, or is or was serving at the request of the Corporation or a
constituent corporation absorbed in a consolidation or merger, as a director or officer of
another corporation, partnership, joint venture, trust or other enterprise, or is or was a
director or officer of the Corporation serving at its request as an administrator, trustee
or other fiduciary of one or more of the employee benefit plans of the Corporation or
other enterprise, against expenses (including attorneys' fees), liability and loss actually
and reasonably incurred or suffered by such person in connection with such
proceeding, whether or not the indemnified liability arises or arose from any threatened,
pending or completed proceeding by or in the right of the Corporation, except to the
extent that such indemnification is prohibited by applicable law.

8.2.    Advance of Expenses. Expenses incurred by a director or officer of the
Corporation in defending a proceeding shall be paid by the Corporation in advance of
the final disposition of such proceeding subject to the provisions of any applicable
statute.

8.3.    Indemnification Not Exclusive; Inuring of Benefit. The indemnification
and advance of expenses provided by this Article 8 shall not be deemed exclusive of
any other right to which one indemnified may be entitled under any statute, provision
of this Certificate, the bylaws of the Corporation, agreement, vote of stockholders or
disinterested directors or otherwise, both as to action in such person's official capacity
and as to action in another capacity while holding such office, and shall inure to the
benefit of the heirs, executors and administrators of any such person.

8.4.    Other Indemnification. The Corporation may additionally indemnify any
other employee or agent of the Corporation or other person to the fullest extent

US1:7984676v2

permitted by law.

9.    <u>Miscellaneous</u>

9.1.    <u>Books and Records</u>.  The books of the Corporation may (subject to any statutory requirements) be kept outside the State of Delaware as may be designated by the Board or in the Bylaws of the Corporation.

9.2.    <u>Business Combinations with Interested Stockholders</u>.  The Corporation elects not to be governed by Section 203 of the DGCL immediately upon filing of this Certificate pursuant to Section 203(b)(l) of the DGCL.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned has duly executed this Amended and Restated Certificate of Incorporation on this 21st day of June, 2012.

**HOUGHTON MIFFLIN HOLDING COMPANY, INC.**

_____

Name: William Bayers
Title: EVP, Secretary and General Counsel

[Signature Page to Amended and Restated Certificate of Incorporation of Houghton Mifflin Holding Company, Inc.]

**AMENDED AND RESTATED**

**CERTIFICATE OF INCORPORATION**

**of**

**HOUGHTON MIFFLIN HOLDINGS, INC.**

Houghton Mifflin Holdings, Inc. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.    The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.    The Corporation was initially formed on October 18, 2002 under the name Versailles U.S. Holding Inc.

C.    This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.    Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1.    The name of this Corporation is Houghton Mifflin Holdings, Inc.

2.    Registered Office. The registered office of this Corporation in the State of Delaware is located at 1209 Orange Street County of New Castle, Wilmington, Delaware 19801. The name of its registered agent at such address is the Corporation Trust Company.

3.    The purpose of the corporation is to enlarge in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.    Capital Stock.

4.1.    The total number of shares of stock that the Corporation shall have authority to issue is 1,000 shares of Common Stock, par value $0.001 per share. Each share of Common Stock shall be entitled to one vote.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all

events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

4.2.    Except as otherwise provided in the provisions establishing a class of stock, the number of authorized shares of any class or series of stock may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote of the holders of a majority of the voting power of the Corporation entitled to vote irrespective of the provisions of Section 242(b)(2) of the General Corporation Law of the State of Delaware.

5.    The election of directors need not be by ballot unless the By-laws shall so require.

6.    In furtherance and not in limitation of the power conferred upon the Board of Directors by law, the Board of Directors shall have power to make, adopt, alter, amend and repeal from time to time By-laws of this Corporation, subject to the light of the stockholders entitled to vote with respect thereto to alter and repeal By-laws made by the Board of Directors.

7.    A director of this Corporation shall not be liable to this Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent that exculpation from liability is not permitted under the DGCL as in effect at the time such liability is determined. No amendment or repeal of this paragraph 7 shall apply to or have any effect on the liability or alleged liability of any director of this Corporation for or with respect to any acts or omissions of such director occurring prior to such amendment or repeal.

8.    To the maximum extent permitted from time to time under the law of the State of Delaware, this Corporation renounces any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, business opportunities that are from time to time presented to its officers, directors or stockholders, other than those officers, directors or stockholders who are employees of this Corporation. No amendment or repeal of this paragraph 8 shall apply to or have any effect on the liability or alleged liability of any officer, director or stockholder of the Corporation for or with respect to any opportunities of which such officer, director or stockholder becomes aware prior to such amendment or repeal.

9.    This Corporation shall, to the maximum extent permitted from time to time under the law of the State of Delaware, indemnify and upon request shall advance expenses to any person who is or was a party or is threatened to be made a patty to any threatened, pending or completed action, suit, proceeding or claim, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was or has agreed to be a director or officer of this Corporation or while a director or officer is or was serving at the request of this Corporation as a director, officer, partner, trustee, employee or agent of any corporation, partnership, joint venture, trust or other enterprise, including, without limitation, service with respect to employee benefit plans, against expenses (including, without limitation , attorney's fees and charges), judgments, fines, penalties and amounts paid in settlement incurred in connection with the investigation, preparation to defend or defense of such action, suit, proceeding or claim; provided, however, that the foregoing shall not require this Corporation to indemnify or advance expenses to any person in connection with any action, suit, proceeding, claim or counterclaim initiated by or on behalf of such person. Such indemnification shall not be exclusive of other indemnification rights arising under any By-law, agreement, vote of directors

US1:7986760v2

or stockholders or otherwise and shall inure to the benefit of the heirs and legal representatives of such person. Any person seeking indemnification under this paragraph 9 shall be deemed to have met the standard of conduct required for such indemnification unless the contrary shall be established. Any repeal or modification of the foregoing provisions of this paragraph 9 shall not adversely affect any right or protection of a director or officer of this Corporation with respect to any acts or omissions of such director or officer occurring prior to such repeal or modification.

10.    The books of this Corporation may (subject to any statutory requirements) be kept outside the State of Delaware as may be designated by the Board of Directors or in the By-laws of this Corporation.

11.    If at any time this Corporation shall have a class of stock registered pursuant to the provisions of the Securities Exchange Act of 1934, for so long as such class is so registered, any action by the stockholders of such class must be taken at an annual or special meeting of stockholders and may not be taken by written consent.

12.    This Corporation shall not be governed by Section 203 of the DGCL.

[Signature Page Follows]

US1:7986760v2

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**HOUGHTON MIFFLIN HOLDINGS, INC.**

By: _____

Name: William Bayers

Title: EVP, Secretary and General Counsel

[Signature Page to Amended and Restated Certificate of Incorporation of Houghton Mifflin Holdings, Inc.]

**Execution Copy**

# AMENDED AND RESTATED

# LIMITED LIABILITY COMPANY AGREEMENT

# OF

# HOUGHTON MIFFLIN, LLC

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of Houghton Mifflin, LLC (the "Company") is entered into this 21st day of June, 2012 by Houghton Mifflin Holding Company, Inc. (the "Member") pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del.C. § 18-101, et seq.), as amended from time to time (the "Act") and amends and restates in its entirety the Company's limited liability company agreement.

NOW, THEREFORE, the Company's limited liability company agreement is hereby amended and restated in its entirety as set forth below:

1.     Name.  The name of the limited liability company shall be Houghton Mifflin, LLC (the "Company").

2.     Member.  The name and the business, residence or mailing addresses of the Member is as follows: Houghton Mifflin Holding Company, Inc., c/o Houghton Mifflin Company, 222 Berkeley Street, Boston, MA 02116.

3.     Registered Office/Registered Agent.  The address of the registered office of the Company in the State of Delaware, and the name and address of the registered agent of the Company for service of process on the Company in the State of Delaware, is c/o Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

4.     Certificate.  Each of the Member and Franklin P. Collazo was as an authorized person with the meaning of the Act to execute, deliver and file the certificate of formation of the Company (the "Certificate").  Each Board Member (as defined hereinafter in Exhibit A), when authorized by the Board of Managers, is hereby designated as an authorized person with the meaning of the Act to execute, deliver and file any amendments or restatements of the Certificate or any certificate of cancellation of the Certificate.

5.     Purpose/Powers.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in any lawful act or activity for which limited liability companies may be formed under the Act and engaging in any and all activities necessary or incidental to the foregoing.  The Company shall have the power and authority to do any and all acts necessary or convenient to or in furtherance of said purposes, including all power and authority, statutory or otherwise, possessed by or which may be conferred upon, limited liability companies under the laws of the State of Delaware.

6.      Management.

6.1     Management.  The business of the Company shall be managed by a Board of Managers, and the persons constituting the Board of Managers shall be the "managers" of the Company for all purposes under the Act.  The Board of Managers as of the date hereof shall be the persons set forth in Exhibit A.  Thereafter, the persons constituting the Board of Managers shall be designated by the Board of Managers in accordance with Exhibit A hereto.  Decisions of the Board of Managers shall be embodied in a vote or resolution adopted in accordance with the procedures set forth in Exhibit A.  Such decisions shall be decisions of the "managers" for all purposes of the Act and shall be carried out by any member of the Board of Managers or by officers or agents of the Company designated by the Board of Managers in the vote or resolution in question or in one or more standing votes or resolutions or with the power and authority to do so under Section 6.3.  A decision of the Board of Managers may be amended, modified or repealed in the same manner in which it was adopted or in accordance with the procedures set forth in Exhibit A as then in effect, but no such amendment, modification or repeal shall affect any person who has been furnished a copy of the original vote or resolution, certified by a duly authorized agent of the Company, until such person has been notified in writing of such amendment, modification or repeal.

6.1.1   Notwithstanding the foregoing, the terms and provisions of the First Amended and Restated Stockholders Agreement by and among the Member, the Company, Houghton Mifflin Finance, Inc., Houghton Mifflin Holdings, Inc., HM Publishing Corp., Houghton Mifflin Company, and certain stockholders of Houghton Mifflin Holdings, Inc., as may be amended from time to time (the "Stockholders Agreement"), shall be applicable to the management of the Company and, if any terms of the Stockholders Agreement are inconsistent with this Agreement, the Stockholders Agreement shall govern.

6.2     Authority of Board of Managers.  The Board of Managers shall have the exclusive power and authority to manage the business and affairs of the Company and to make all decisions with respect thereto.  Except as otherwise expressly provided in this Agreement, the Board of Managers or persons designated by the Board of Managers, including officers and agents appointed by the Board of Managers, shall be the only persons authorized to execute documents which shall be binding on the Company.  To the fullest extent permitted by Delaware law, the Board of Managers shall have the power to do any and all acts, statutory or otherwise, with respect to the Company, which would otherwise be possessed by the Member under the laws of the State of Delaware, and the Member shall have no power whatsoever with respect to the management of the business and affairs of the Company.  The power and authority granted to the Board of Managers hereunder shall include all those necessary or convenient for the furtherance of the purposes of the Company and shall include the power to make all decisions with regard to the management, operations, assets, financing and capitalization of the Company.

6.3     Officers; Agents.  The Board of Managers by vote or resolution shall have the power to appoint officers or agents to act for the Company with such titles, if any, as the Board of Managers deems appropriate and to delegate to such officers or agents such of the powers as are granted to the Board of Managers hereunder, including the power

to execute documents on behalf of the Company, as the Board of Managers may in its sole discretion determine; provided, however, that no such delegation by the Board of Managers shall cause the persons constituting the Board of Managers to cease to be the "managers" of the Company within the meaning of the Act.  An officer may be removed at any time with or without cause.  The officers of the Company as of the date hereof are set forth on Exhibit B.  Unless the authority of the agent designated as the officer in question is limited in the document appointing such officer or is otherwise specified by the Board of Managers, any officer so appointed shall have the same authority to act for the Company as a corresponding officer of a Delaware corporation would have to act for a corporation in the absence of a specific delegation of authority and all deeds, leases, transfers, contracts, bonds, notes, checks, drafts or other obligations made, accepted or endorsed by the corporation may be signed by any officer at the time in office appointed by the board.  The Board of Managers, in its sole discretion, may by vote or resolution of the Board of Managers ratify any act previously taken by an officer or agent acting on behalf of the Company.

6.4    Reliance by Third Parties.  Any person or entity dealing with the Company or the Member may rely upon a certificate signed by the Member or a member of the Board of Managers as to: (a) the identity of the Member or the members of the Board of Managers, (b) the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Member or the Board of Managers or are in any other manner germane to the affairs of the Company, (c) the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company, (d) the authorization of any action taken by or on behalf of the Company by the Member, the Board of Managers or any officer or agent acting on behalf of the Company or (e) any act or failure to act by the Company, the Board of Managers or as to any other matter whatsoever involving the Company or the Member.

7.    Agents.  The Member by signed written instrument shall have the power to appoint agents to act for the Company with such titles as the Member deems appropriate and to delegate to such agents such of the powers as are held by the Member hereunder as the Member may determine.  The Member by signed written instrument may, in the sole discretion of the Member, ratify any act previously taken by an agent acting on behalf of the Company.  Except as provided in this Section 5, the Member shall be the sole person with the power to bind the Company.

8.    Reliance by Third Parties.  Any person or entity dealing with the Company or the Member may rely upon a certificate signed by the Member as to: (a) the identity of the Member, (b) the existence or non-existence of any fact or facts which constitute a condition precedent to acts by the Member or are in any other manner germane to the affairs of the Company, (c) the persons who or entities which are authorized to execute and deliver any instrument or document of or on behalf of the Company or (d) any act or failure to act by the Company or as to any other matter whatsoever involving the Company or the Member.

9.    Capital Contributions.  The Member has contributed $10.00 in cash, as its initial capital contribution to the Company.  The Member may make, but shall not be required to make, additional capital contributions to the Company.

10.    <u>Allocation of Profits and Losses</u>.  The Company's profits and losses shall be allocated to the Member.

11.    <u>Distributions</u>.  Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

12.    <u>Taxation</u>.  It is the intent of the Member that since the Company has a single owner, the Company shall be disregarded as an entity separate from the Member for federal tax purposes.

13.    <u>Assignments</u>.  The Member may assign its limited liability company interest to any person, which person shall become a Member upon the filing of the instrument of assignment with the records of the Company.

14.    <u>Amendments</u>.  This Agreement may be amended or restated from time to time by the Member.

15.    <u>Existence/Dissolution</u>.  The Company shall have perpetual existence unless it shall be dissolved and its affairs shall have been wound up upon (a) the written consent of the Member or (b) the entry of a decree of judicial dissolution under Section 18-802 of the Act.  The existence of the Company as a separate legal entity shall continue until the cancellation of the Certificate as provided in the Act.  None of the events described in Section 18-304 of the Act shall cause the Member to cease to be a Member of the Company.

16.    <u>Liability of Member</u>.  The Member shall not have any liability for any obligations or liabilities of the Company except to the extent provided in the Act.

17.    <u>Liability of Board of Managers</u>.

17.1    <u>Liability of Board of Managers</u>.  A member of the Board of Managers of this Company shall not be liable to this Company or the Member for monetary damages for breach of fiduciary duty as a member of the Board of Managers, except to the extent that exculpation from liability is not permitted under the Act as in effect at the time such liability is determined.  No amendment or repeal of this paragraph 17.1 shall apply to or have any effect on the liability or alleged liability of any member of the Board of Managers of this Company for or with respect to any acts or omissions of such member of the Board of Managers occurring prior to such amendment or repeal.

17.2    <u>Corporate Opportunities</u>.  To the maximum extent permitted from time to time under the laws of the State of Delaware, this Company renounces any interest or expectancy of the Company in, or in being offered an opportunity to participate in, business opportunities that are from time to time presented to its officers, members of the Board of Managers or the Member or the affiliates of the foregoing, other than those officers, members of the Board of Mangers or Member or affiliates who are employees of this Company.  No amendment or repeal of this paragraph 17.2 shall apply to or have any effect on the liability or alleged liability of any such officer, member of the Board of Managers or Member or affiliate of the Company for or with respect to any opportunities of which such

officer, member of the Board of Managers or Member or affiliate becomes aware prior to such amendment or repeal.

17.3    <u>Indemnifications</u>.  This Company shall, to the maximum extent permitted from time to time under the law of the State of Delaware, indemnify and upon request shall advance expenses to any person who is or was a party or is threatened to be made a party to any threatened, pending or completed action, suit, proceeding or claim, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was or has agreed to be a member of the Board of Managers or officer of this Company or while a member of the Board of Managers or officer is or was serving at the request of this Company as a director, officer, partner, trustee, employee or agent of any corporation, partnership, joint venture, trust or other enterprise, including, without limitation, service with respect to employee benefit plans, against expenses (including, without limitation, attorney's fees and expenses), judgments, fines, penalties and amounts paid in settlement incurred in connection with the investigation, preparation to defend or defense of such action, suit, proceeding or claim; <u>provided</u>, <u>however</u>, that the foregoing shall not require this Company to indemnify or advance expenses to any person in connection with any action, suit, proceeding, claim or counterclaim initiated by or on behalf of such person.  Such indemnification and advancement of expenses shall not be exclusive of other indemnification rights arising as a matter of law, under any by-law, agreement, vote of the Board of Managers or Member or otherwise, both as to action in such person's official capacity and as to action in another capacity while holding such office, and shall inure to the benefit of the heirs and legal representatives of such person.  Any person seeking indemnification under this paragraph 17.3 shall be deemed to have met the standard of conduct required for such indemnification unless the contrary shall be established.  Any repeal or modification of the foregoing provisions of this paragraph 17.3 shall not adversely affect any right or protection of a member of the Board of Managers or officer of this Company with respect to any acts or omissions of such member of the Board of Managers or officer occurring prior to such repeal or modification.

17.4    <u>Insurance</u>.  The Company shall have the power to purchase and maintain, at its expense, insurance on behalf of any person who is or was a member of the Board of Managers, officer, employee or agent of the Company, or is or was serving at the request of the Company as a manager, director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against any expense, liability or loss asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Company would have the power to indemnify such person against such expense, liability or loss under the Act.

18.    <u>Governing Law</u>.  This Agreement shall be governed by, and construed under, the Laws of the State of Delaware, all rights and remedies being governed by said laws.

19.    To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as

Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Amended and Restated Limited Liability Company Agreement as of the date and year first above written.

**HOUGHTON MIFFLIN HOLDING COMPANY, INC.**

By _____

Name:    William Bayers

Title:    EVP, Secretary and General Counsel

[Signature Page of Amended and Restated LLC Agreement of Houghton Mifflin, LLC]

<u>Exhibit A</u>

## BOARD OF MANAGERS

1.      <u>Number; Appointment</u>.  The Board of Managers initially shall consist of three members (such members, along with any other members appointed from time to time, the "<u>Board Members</u>").  The Board of Managers may increase or decrease the number of Board Members.  Any appointment of a Board Member shall be made and shall be carried out by a writing signed by the Board of Managers.  Any removal of a Board Member shall be made and shall be carried out by a writing signed by all the Board Members other than the Board Member being removed.  Any such appointment or removal shall be effective upon execution of such writing or as otherwise stated therein.

2.      [Reserved]

3.      <u>Tenure</u>.  Each Board Member shall, unless otherwise provided by law, hold office until such individual is removed, or resigns or dies.  Any Board Member may be removed by the Board of Managers as provided in Section 1 above, at any time without giving any reason for such removal.  A Board Member may resign by written notice to the Company which resignation shall not require acceptance and, unless otherwise specified in the resignation notice, shall be effective upon receipt by the Company.  Vacancies in the Board of Managers shall be filled by the Board of Managers as provided in Section 1 above.

4.      <u>Meetings</u>.  Meetings of the Board of Managers may be held at any time at such places within or without the State of Delaware designated in the notice of the meeting, when called by the Chair of the Board of Managers, if any, the President or any two Board Members acting together, reasonable notice thereof being given to each Board Member.

5.      <u>Notice</u>.  It shall be reasonable and sufficient notice to a Board Member to send notice by overnight delivery at least forty-eight hours or by facsimile at least twenty-four hours before the meeting addressed to such Board Member at such Board Member's usual or last known business or residence address or to give notice to such Board Member in person or by telephone at least twenty-four hours before the meeting.  Notice of a meeting need not be given to any Board Member if a written waiver of notice, executed by such Board Member before or after the meeting, is filed with the records of the meeting, or to any Board Member who attends the meeting without protesting prior thereto or at its commencement the lack of notice to such Board Member.  Neither notice of a meeting nor a waiver of a notice need specify the purposes of the meeting.

6.      <u>Quorum</u>.  Except as may be otherwise provided by law, at any meeting of the Board of Managers a majority of the Board Members then in office shall constitute a quorum.  Any meeting may be adjourned from time to time by a majority of the votes cast upon the question, whether or not a quorum is present, and the meeting may be held as adjourned without further notice.

7.      <u>Action by Vote</u>.  Except as may be otherwise provided by law, when a quorum is present at any meeting the vote of a majority of the Board Members present shall be the act of the Board of Managers.

8.    Action Without a Meeting.  Any action required or permitted to be taken at any meeting of the Board of Managers may be taken without a meeting if all the Board Members consent thereto in writing, and such writing or writings are filed with the records of the meetings of the Board of Managers.  Such consent shall be treated for all purposes as the act of the Board of Managers.

9.    Participation in Meetings by Conference Telephone.  Board Members may participate in a meeting of the Board of Managers by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other or by any other means permitted by law.  Such participation shall constitute presence in person at such meeting.

10.    Interested Transactions.

(a)    No contract or transaction between the Company and one or more of the Board Members or officers, or between the Company and any other company, partnership, association, or other organization in which one or more of the Board Members or officers are directors or officers, or have a financial interest, shall be void or voidable solely for this reason, or solely because the Board Member or officer is present at or participates in the meeting of the Board of Managers which authorizes the contract or transaction, or solely because his or their votes are counted for such purpose, if:

(i)    The material facts as to such Board Member's relationship or interest and as to the contract or transaction are disclosed or are known to the Board of Managers, and the Board of Managers in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested Board Members, even though the disinterested Board Members be less than a quorum; or

(ii)    The contract or transaction is fair as to the Company as of the time it is authorized, approved or ratified, by the Board of Managers.

(b)    Common or interested Board Members may be counted in determining the presence of a quorum at a meeting of the Board of Managers which authorizes the contract or transaction.

11.    Stockholders Agreement.  Notwithstanding the foregoing, the terms and provisions of the First Amended and Restated Stockholders Agreement by and among the Member, the Company, Houghton Mifflin Finance, Inc., Houghton Mifflin Holdings, Inc., HM Publishing Corp., Houghton Mifflin Company, and certain stockholders of Houghton Mifflin Holdings, Inc., as may be amended from time to time (the "Stockholders Agreement"), shall be applicable to the management of the Company and, if any terms of the Stockholders Agreement are inconsistent with this Agreement, the Stockholders Agreement shall govern.

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

## HRW DISTRIBUTORS, INC.

HRW Distributors, Inc., (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.    The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.    The Corporation was initially formed on September 15, 1975 under the name Editorial Interamericana Inc.

C.    This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.    Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

FIRST:        The Name of the Corporation is HRW Distributors, Inc.

SECOND:      The Address of the Corporation's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, and the name of its registered agent at such address is The Corporation Trust Company.

THIRD:        The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

FOURTH:      The total number of shares which the Corporation shall have the authority to issue shall be 4,000, all of which are to be of a single class, and all of which are to be of the par value of $10.00 per share. To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

FIFTH:        In furtherance of and not in limitation of powers conferred by statute, it is further provided that:

(a) Subject to the limitations and exceptions, if any, contained in the By-laws of the corporation and this Certificate of Incorporation, the By-laws may be adopted, amended or repealed by the Board of Directors of the corporation with, and only with, the affirmative vote of a majority of all directors then in office; and

(b) Elections of directors need not be by written ballot unless, and only to the extent, otherwise provided in the By-laws.

SIXTH:        No director of the corporation shall be personally liable to the corporation or to any of its stockholders for monetary damages arising out of such director's breach of his fiduciary duty as a director of the corporation, except to the extent that the elimination or limitation of such liability is not permitted by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended. No amendment to or repeal of the provisions of this Article SIXTH shall deprive any director of the corporation of the benefit hereof with respect to any act or failure to act of such director occurring prior to such amendment or repeal.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

HRW DISTRIBUTORS, INC.

By: _____

    Name: William Bayers
    Title: EVP, Secretary and General Counsel

[Signature Page to HRW Distributors, Inc. Amended and Restated Certificate of Incorporation]

**Execution Copy**

## AMENDED AND RESTATED

## LIMITED LIABILITY COMPANY AGREEMENT
### OF
### RIVERDEEP INC., A LIMITED LIABILITY COMPANY

This **AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT** OF RIVERDEEP INC., A LIMITED LIABILITY COMPANY (this "Amendment"), dated as of June 21, 2012 amends and restates in its entirety that certain Amended and Restated Limited Liability Company Agreement of Riverdeep Inc., a Delaware limited liability company (the "Company"), as amended (the "Operating Agreement"), as entered into by Houghton Mifflin Harcourt Publishers Inc. (formerly known as Riverdeep Interactive Learning USA, Inc.)

The undersigned Member, by its signature below, hereby certifies that it is the sole member of the Company.

The Member, by execution of this Agreement, hereby amends and restates the Company's limited liability operating agreement pursuant to and in accordance with the Delaware Limited Liability Company DLLCA, as amended from time to time, or any successor statute (the "DLLCA"), and hereby agrees as follows:

1.    Name.  The name of the limited liability company governed hereby is Riverdeep Inc., a Limited Liability Company (the "Company").

2.    Certificates.  The Member shall execute, deliver and file other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

3.    Purpose.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in all lawful activities for which limited liability companies may be fom1ed under the DLLCA.

4.    Powers.  The Company shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Board of Managers pursuant to this Agreement, including Section 12.

5.    Principal Business Office.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.      Name and Mailing Address of the Member.  The name and the mailing address of the Member are as follows:

| Name | Address |
|------|---------|
| Houghton Mifflin Harcourt Publishers Inc. | 222 Berkeley Street<br>Boston, MA 02116<br>c/o Houghton Mifflin Company<br>Attn: William Bayers, SVP and General Counsel |

7.      Term.  The term of the Company commenced on the date of filing of the Certificate of Formation of the Company in accordance with the DLLCA and shall continue until dissolution of the Company in accordance with Section 19 of this Agreement.

8.      Limited Liability.  Except as otherwise provided by the DLLCA, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9.      Additional Contributions.  The total capital of the Member in the Company from time to time shall be referred to as the Member's "Capital."  The Member is not required to make additional Capital contributions to the Company.

10.     Capital Account.  A Capital account shall be maintained for the Member on the books of the Company, which account shall set forth the Capital of the Member in the Company.

11.     Distributions.  Distributions shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to the Member on account of its interest in the Company if such distribution would violate Section 18-607 of the DLLCA or other applicable law.

12.     Management.

a.      In accordance with Section 18-402 of the DLLCA, management of the Company shall be vested in the board of managers of the Company (the "Board of Managers" and each separately a "Manager").  Managers do not have to hold Units in the Company as Members of the Company in order to serve as a Manager.  The Board of Managers shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by managers of a limited liability company under the laws of the State of Delaware and including all things necessary to carry out the terms and provisions of this Agreement.  The Board of Managers has the authority to bind the Company.  Unless otherwise consented to by at least a majority of the Board of Managers (which majority shall include the consent of at least one of the Managers designated under clause b(i) below), the Board of Managers shall hold

2

regular meetings not less frequently than once every fiscal quarter at a time and place fixed by the Board of Managers.  Direct travel expenses in connection with Board functions will be paid by the Company.

b.      The Board of Managers initially shall consist of two (2) Managers. The Member may increase or decrease the number of Managers.  Any appointment of a Manager shall be made and shall be carried out by a writing signed by the Member.  Any removal of a Manager shall be made and shall be carried out by a writing signed by the Member.  Any such appointment or removal shall be effective upon execution of such writing or as otherwise stated therein.

c.      No Member, in its capacity as a Member, shall participate in the management or control of the business of, or shall have any rights or powers with respect to the management of, the Company except those expressly granted to it by the terms of this Agreement, or those conferred on it by law.

d.      Each Manager shall, unless otherwise provided by law, hold office until such individual is removed, or resigns or dies.  Managers may resign at any time.  Managers may be removed at any time for any reason or no reason and shall promptly be replaced by as provided in paragraph (b) above.

e.      Except as may be otherwise provided by law, at any meeting of the Board of Managers a majority of the Managers then in office shall constitute a quorum.  Any meeting may be adjourned from time to time by a majority of the votes cast upon the question, whether or not a quorum is present, and the meeting may be held as adjourned without further notice.

f.      Except as may be otherwise provided by law, when a quorum is present at any meeting the vote of a majority of the Managers present shall be the act of the Board of Managers

g.      Any action required or permitted to be taken at any meeting of the Board of Managers may be taken without a meeting if all the Managers consent thereto in writing, and such writing or writings are filed with the records of the meetings of the Board of Managers.  Such consent shall be treated for all purposes as the act of the Board of Managers.

13.     Officers.  The Board of Managers may, from time to time as it deems advisable, appoint officers of the Company (the "Officers") and assign in writing titles (including, without limitation, President, Vice President, Secretary and Treasurer) to any such person.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 13 may be revoked at any time by the Board of Managers.

14.     Other Business.  The Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description,

US1:7986389v2

independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

15.    Exculpation and Indemnification.  None of the Member or any Manager or Officer (each an "Indemnified Party") shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Indemnified Party in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnified Party by this Agreement, except that an Indemnified Party shall be liable for any such loss, damage or claim incurred by reason of such Indemnified Party's gross negligence or willful misconduct.  To the full extent permitted by applicable law, an Indemnified Party shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Indemnified Party by reason of any act or omission performed or omitted by such Indemnified Party in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnified Party by this Agreement, except that no Indemnified Party shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Indemnified Party by reason of gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 15 shall be provided out of and to the extent of Company assets only, and the Member shall have no personal liability on account thereof.

16.    Admission of Additional Members.  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

17.    Termination of Membership.  The rights of the Member to share in the Profits and Losses of the Company, to receive distributions and to assign its interest in the Company pursuant to Section 18 shall, on its dissolution, devolve on its legal successor.

18.    Assignments.  The Member may transfer, assign, pledge or hypothecate, in whole or in part, its limited liability company interest, as determined in its sole discretion.

19.    Dissolution.

a.    The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following:  (i) the written consent of the Member, (ii) the dissolution of the Member or the occurrence of any other event which terminates the continued membership of the Member in the Company unless the business of the Company is continued in a manner permitted by the DLLCA, or, (iii) the entry of a decree of judicial dissolution under Section 18-802 of the DLLCA.

b.    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner).

20.    Elections.  The Member shall determine the accounting methods and conventions under the tax laws of any and all applicable jurisdictions as to the treatment of income, gain, loss, deduction and credit of the Company or any other method or procedure related to the preparation of such tax returns.  The Member may cause the Company to make or

4

US1:7986389v2

refrain from making any and all elections permitted by such tax laws, and the Member shall not be liable for any consequences to any previously admitted or subsequently admitted Members resulting from their making or failing to make any such elections.

21.    Separability of Provisions.  Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

22.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement.

23.    Entire Agreement.  This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

24.    Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles thereof), and all rights and remedies shall be governed by such laws.

25.    Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

26.    To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

[Signature Page Follows]

5

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

**HOUGHTON MIFFLIN HARCOURT PUBLISHERS INC.**

By: _____
      Name:  William Bayers
      Title:    EVP, Secretary and General Counsel

# AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## of

## RVDP, INC.

RVDP, Inc. (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.     The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.     The Corporation was initially formed on April 23, 2003.

C.     This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.     Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

FIRST.          The name of the corporation is RVDP, Inc.

SECOND.     The address of its registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware.  The name of its registered agent at such address is The Corporation Trust Company.

THIRD.          The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the Delaware General Corporation Law of the State of Delaware.

FOURTH.     The corporation is authorized to issue only one class of stock, to be designated "Common Stock". The total number of shares of Common Stock which the corporation is authorized to issue is Three Thousand (3,000), par value $.01 per share. Dividends may be declared and paid on the Common Stock from funds legally available therefor as and when determined by the Board of Directors. Upon any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the corporation, the holders of Common Stock shall be entitled to receive all assets of the corporation available for distribution to its stockholders. Except as otherwise required by this Certificate of Incorporation or by law, each holder of Common Stock shall have one vote in respect of each share of stock held by such holder of record on the books of the corporation for the election of directors and on all matters submitted

to a vote of stockholders of the corporation, and shall be entitled to notice of any stockholders' meetings in accordance with the By-laws of the corporation.  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

FIFTH.        In furtherance of and not in limitation of powers conferred by statute, it is further provided that:

(a) Subject to the limitations and exceptions, if any, contained in the By-laws of the corporation and this Certificate of Incorporation, the By-laws may be adopted, amended or repealed by the Board of Directors of the corporation with, and only with, the affirmative vote of a majority of all directors then in office; and

(b) Elections of directors need not be by written ballot unless, and only to the extent, otherwise provided in the By-laws; and

(c) Subject to any applicable requirements of law, the books of the corporation may be kept outside the State of Delaware at such locations as maybe designated by the Board of Directors or in the By-laws of the corporation; and

(d) Except as provided to the contrary in the provisions establishing a class or series of stock, the number of authorized shares of such class or series may be increased or decreased (but not below the number of shares thereof then outstanding) by the affirmative vote or written consent of a majority in voting power of the stock of the corporation entitled to vote thereon.

SIXTH.        The corporation shall indemnify each person who at any time is, or shall have been, a director or officer of the corporation and was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he is or was a director or officer of the corporation, or is or was serving at the request of the corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement incurred in connection with any such action, suit or proceeding, to the maximum extent permitted by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended. In furtherance of and not in limitation of the foregoing, the corporation shall advance expenses, including attorneys' fees, incurred by an officer or director of the corporation in defending any civil, criminal, administrative or investigative action, suit or proceeding in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such advances if it shall be ultimately determined that he is not entitled to be indemnified by the corporation. The foregoing right of indemnification shall in no way be exclusive of any other rights of indemnification to which any such director or officer may be entitled, under any By-law, agreement, vote of directors or stockholders or otherwise. No amendment to or repeal of the provisions of this

US1:7988142v2

Article SIXTH shall deprive a director or officer of the benefit hereof with respect to any act or failure to act occurring prior to such amendment or repeal.

SEVENTH.    Whenever a compromise or arrangement is proposed between this corporation and its creditors or any class of them and/or between this corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for this corporation under the provisions of Section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for this corporation under the provisions of Section 279 of Title 8 of the Delaware Code, order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this corporation as a consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/or on all the stockholders or class of stockholders, of this corporation, as the case may be, and also on this corporation.

EIGHTH.    No director of the corporation shall be personally liable to the corporation or to any of its stockholders for monetary damages arising out of such director's breach of his fiduciary duty as a director of the corporation, except to the extent that the elimination or limitation of such liability is not permitted by the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended. No amendment to or repeal of the provisions of this Article EIGHTH shall deprive any director of the corporation of the benefit hereof with respect to any act or failure to act of such director occurring prior to such amendment or repeal.

NINTH.    The corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation in the manner now or hereafter prescribed by statute and this Certificate of Incorporation, and all rights conferred upon stockholders herein, are granted subject to this reservation.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**RVDP, INC.**

By: _____
     Name: William Bayers
     Title: EVP, Secretary and General
     Counsel

[Signature Page to Amended and Restated Certificate of Incorporation of RVDP, Inc.]

FORM **BCA 10.30R** (rev. Dec. 2003)
**ARTICLES OF AMENDMENT**
**RESTATED ARTICLES**
**OF INCORPORATION**
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
Springfield, IL 62756
Telephone (217) 782-1832
http://www.cyberdriveillinois.com

Remit payment in the form of a
check or money order payable
to the Secretary of State.

_____ File #_____ Filing Fee: $150.00    Approved:
——————————Submit in duplicate————————Type or Print clearly in black ink——————————Do not write above this line——————————

1. CORPORATE NAME: _____
(Note 1)

2. MANNER OF ADOPTION OF AMENDMENT:

The following amendment of the Articles of Incorporation was adopted on _____ ,
(Month & Day)
_____ in the manner indicated below. ( "X" one box only)
(Year)

☐ By a majority of the incorporators, provided no directors were named in the articles of incorporation and no directors have been elected;
(Note 2)

☐ By a majority of the board of directors, in accordance with Section 10.10, the corporation having issued no shares as of the time of adoption of this amendment;
(Note 2)

☐ By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder action not being required for the adoption of the amendment;
(Note 3)

☐ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopted and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of votes required by statute and by the articles of incorporation were voted in favor of the amendment;
(Note 4)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not less than the minimum number of votes required by statute and by the articles of incorporation. Shareholders who have not consented in writing have been given notice in accordance with Section 7.10;
(Notes 4 & 5)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders entitled to vote on this amendment.
(Note 5)

C-326

3(a)  List all provisions of the restated articles of incorporation that amend the existing articles of incorporation:

3(b)  Text of the Restated Articles of Incorporation:        (Note 6)
        (Attach additional pages if extra space is needed.)

4.       The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows: *(If not applicable, insert "No change")*

5.       (a) The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital (Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) is as follows: *(If not applicable, insert "No change")*

       (b) The amount of paid-in capital (Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) as changed by this amendment is as follows: *(If not applicable, insert "No change")* (Note 7)

|  | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital | $ _____ | $ _____ |

**(Complete either Item 6 or 7 below. All signatures must be in <u>BLACK INK</u>.)**

6.       The undersigned corporation has caused these articles to be signed by a duly authorized officer who affirms, under penalties of perjury, that the facts stated herein are true.

Dated _____ , _____   _____
           *(Month & Day)*     *(Year)*      *(Exact Name of Corporation at date of execution)*
       _____
          *(Any Authorized Officer's Signature)*
       _____
            *(Type or Print Name and Title)*

7.       If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

OR

If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, then a majority of the directors or such directors as may be designated by the board, must sign below, and type or print name and title.

The undersigned affirms, under the penalties of perjury, that the facts stated herein are true.

Dated _____ , _____
           *(Month & Day)*     *(Year)*

_____   _____

_____   _____

_____   _____

_____   _____

## NOTES and INSTRUCTIONS

NOTE 1:    State the true exact corporate name as it appears on the records of the office of the Secretary of State, BEFORE any amendments herein reported.

NOTE 2:    Incorporators are permitted to adopt amendments ONLY before any shares have been issued and before any directors have been named or elected.                                              (§ 10.10)

NOTE 3:    Directors may, without shareholder approval, vote only to restate the articles of incorporation as amended.
                                                                                                     (§ 10.15(g))

NOTE 4:    All amendments not adopted under § 10.10 or § 10.15 require (1) that the board of directors adopt a resolution setting forth the proposed amendment and (2) that the shareholders approve the amendment.

Shareholder approval may be (1) by vote at a shareholders' meeting *(either annual or special)* or (2) by consent, in writing, without a meeting.

To be adopted, the amendment must receive the affirmative vote or consent of the holders of at least 2/3 of the outstanding shares entitled to vote on the amendment *(but if class voting applies, then also at least a 2/3 vote within each class is required)*.

The articles of incorporation may supersede the 2/3 vote requirement by specifying any smaller or larger vote requirement not less than a majority of the outstanding shares entitled to vote and not less than a majority within each class when class voting applies.                                                    (§ 10.20)

NOTE 5:    When shareholder approval is by consent, all shareholders must be given notice of the proposed amendment at least 5 days before the consent is signed. If the amendment is adopted, shareholders who have not signed the consent must be promptly notified of the passage of the amendment.                         (§§ 7.10 & 10.20)

NOTE 6:    The text of the restated articles of incorporation must set forth the following:
   (i)    the date of incorporation, the name under which the corporation was incorporated, subsequent names, if any, that the corporation adopted pursuant to amendment of its articles of incorporation, and the effective date of any such amendments;
   (ii)   the address of the registered office and the name of the registered agent on the date of filing the restated articles; and
   (iii)  the number of shares of each class issued on the date of filing the restated articles and the amount of paid-in capital as of such date.

If the registered agent and/or registered office have changed, it will be necessary to accompany this document with form BCA 5.10.

If the number of issued shares and/or paid-in capital have changed, it will be necessary to accompany this document with form BCA 14.30.

NOTE 7:    If the paid-in capital is increased due to the provisions of the restatement, the corporation must pay all applicable franchise taxes, penalties and interest before this document can be accepted for filing.

# AMENDED AND RESTATED

## ARTICLES OF INCORPORATION

### of

## SENTRY REALTY CORPORATION

Sentry Realty Corporation (the "*Corporation*") hereby certifies pursuant to Section 10.40 of the Illinois Business Corporation Act as follows:

A.    The name of the Corporation is Sentry Realty Corporation.

B.    The text of each amendment approved by the court is as follows.  Article VI of the Articles of Incorporation of the Corporation is amended to append the following at the end of such Article:

> To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

C.    The date of the court's order approving the articles of amendment is June 21, 2012.

D.    The title of the reorganization proceeding in which the order was entered is *In re Houghton Mifflin Harcourt Publishing Company,* et al., Case No. 12-12171 (REG) (U.S. Bankr. Ct. S.D.N.Y.).

E.    The United States Bankruptcy Court for the Southern District of New York has jurisdiction of the proceeding under Title 11 of the United States Code.

The Corporation does hereby certify that the Articles of Incorporation, as amended and restated, are hereby amended and restated to read in their entirety as follows:

## ARTICLE I

The name of the corporation is Sentry Realty Corporation.

## ARTICLE II

The address of its registered office in the State of Illinois is c/o CT Corporation System, 208 S. LaSalle Street in the City of Chicago, 60604, County of Cook, and the name of its Registered Agent at said address is Robert Janas.

## ARTICLE III

The duration of the corporation is Perpetual.

## ARTICLE IV

The purposes for which the corporation is organized are:

1. To manufacture, purchase, or otherwise acquire, own, mortgage, sell, transfer, or otherwise dispose of and deal in and with goods, wares, and merchandise and personal property of every class and description.
2. To acquire through purchase or otherwise own, hold, maintain, use, lease, encumber, and to dispose of, transfer and sell such real estate as may be necessary for the corporate purposes.

## ARTICLE V

Paragraph 1:  The aggregate number of shares which the corporation is authorized to issue  is 12,500 divided into One classes. The designation of each class, the number of shares of each class, and the par value, if any, of the shares of each class, or a statement that the shares of any class are without par value, are as follows:

| Class | Series (If any) | Number of Shares | Par value per share or statement that shares are without par value |
|---|---|---|---|
| Common | | 12,500 | No par value |

## ARTICLE VI

The class and number of shares which the corporation proposes to issue without further report to the Secretary of State, and the consideration (expressed in dollars) to be received by the corporation therefor, are:

| Class | Number of Shares | Total consideration to be received therefor: |
|---|---|---|
| Common | 1,600 | $160,000.00 |

To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

## ARTICLE VII

The corporation will not commence business until at least one thousand dollars has been received as consideration for the issuance of shares.

US1:7987621v4

**ARTICLE VIII**

The number of directors to be elected at the first meeting of the shareholders is three

**ARTICLE IX**

Paragraph 1: It is estimated that the value of all property to be owned by the corporation for the following year wherever located will be $175,000.

Paragraph 2: It is estimated that the value of the property to be located within the State of Illinois during the following year will be $175,000.

Paragraph 3: It is estimated that the gross amount of business which will be transacted by the corporation during the following year will be $125,000.

Paragraph 4: It is estimated that the gross amount of business which will be transacted at or from places of business in the State of Illinois during the following year will be $125,000.

[Signature Page Follows]

US1:7987621v4

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Articles of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**SENTRY REALTY CORPORATION**

By: _____
    Name: William Bayers
    Title: EVP, Secretary and General
    Counsel

[Signature Page to Amended and Restated Articles of Incorporation of Sentry Realty Corporation]

## AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## STECK-VAUGHN PUBLISHING LLC

This Amended and Restated Limited Liability Company Agreement (this "Agreement") of Steck-Vaughn Publishing LLC (the "Company") is entered into this 21st day of June, 2012 by HMH Publishers LLC (formerly known as HMRH Acquisition Co.) (the "Member") pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del.C. § 18-101, et seq.), as amended from time to time (the "Act") and amends and restates in its entirety the Company's limited liability company agreement.

Recitals

WHEREAS, the Member acquired all of the interests of the Company from Harcourt, Inc. pursuant to the Agreement for the Sale and Purchase of Shares and Assets relating to the Harcourt Education Business of Reed Elsevier dated as of July 16, 2007 among the Member, Reed Elsevier Group plc, Houghton Mifflin Riverdeep Group plc and Education Media and Publishing Group Limited;

WHEREAS, the Member desires to amend and restate the Limited Liability Company Agreement of the Company dated as of December 12, 2007 (as amended, the "Existing Agreement"); and

NOW, THEREFORE, the Existing Agreement is hereby amended and restated in its entirety as set forth below:

1.      Name.  The name of the limited liability company governed hereby is Steck-Vaughn Publishing LLC.

2.      Certificates.  Henry Z. Horbaczewski, as an authorized person within the meaning of the Act, has executed, delivered and filed on behalf of the Member the Certificate of Formation of the Company with the Secretary of State of the State of Delaware and the Certificate of Conversion of Steck-Vaughn Corporation with the Secretary of the State of Delaware.

3.      Member.  Member shall be the sole "member" of the Company.  The Member shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

4.      Purpose.  The Company is formed for the object and purpose of, and the nature of the business to be conducted and promoted by the Company is, engaging in all lawful activities for which limited liabilities companies may be formed under the Act.

5.      Powers.  Subject to Section 15, the Company shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to

or for the furtherance of the purpose and business described herein and for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member pursuant to this Agreement, including Section 15.

6.    Principal Business Office.  The principal place of business and office of the Company shall be located, and the Company's business shall be conducted from, such place or places as may hereafter be determined by the Member.

7.    Registered Office.  The address of the registered office of the Company in the State of Delaware is Corporation Service Company, 2711 Centerville Road, Wilmington, County of New Castle, State of Delaware, 19808.

8.    Registered Agent.  The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware are Corporation Service Company, 2711 Centerville Road, Wilmington, County of New Castle, State of Delaware, 19808.

9.    Name and Mailing Address of the Member.  The name and the mailing address of the Member are as follows:

| Name | Address |
|------|---------|
| HMH Publishers LLC | 222 Berkeley Street<br>Boston, MA 02116<br>c/o Houghton Mifflin Company<br>attention:  William Bayers, SVP, Secretary and General Counsel |

10.    Term.  The term of the Company commenced on the date of filing of the Certificate of Formation of the Company in accordance with the Act and shall continue until dissolution of the Company in accordance with Section 20 of this Agreement.

11.    Limited Liability.  Except as otherwise provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and none of the Member, any Officer (as hereinafter defined), employee or agent of the Company (including a person having more than one such capacity) shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of acting in such capacity.

12.    Capital Contributions.  The Member is deemed admitted as a Member of the Company upon its execution and delivery of this Agreement.  The total capital of the Member in the Company from time to time shall be referred to as the Member's "Capital."  The Member is not required to make additional capital contributions to the Company.

13.    Capital Account.  So long as the Member is the sole member of the Company, all items of income, profit and loss of the Company shall be allocated to the Member. A Capital account ("Capital Account") shall be maintained for the Member on the books of the

US1:7986930v3

Company.  Such Capital Account shall be adjusted to reflect the Member's shares of allocations and distributions as provided in Section 14 of this Agreement, and any additional capital contributions to the Company or distributions from the Company.  Such Capital Account shall further be adjusted to conform to the Treasury Regulations under Section 704(b) of the Internal Revenue Code of 1986, as amended (the "Code"), as interpreted in good faith by the Member.

14.    Allocations and Distributions.

a.    Allocations.  Whenever a proportionate part of the Company's taxable income or loss is allocated to the Member, every item of income, gain, loss, deduction and credit entering into the computation of such taxable income or loss applicable to the period during which such taxable income or loss was realized shall be allocated to the Member.

b.    Distributions.  Distributions shall be made to the Member at such times and in such amounts as may be determined in the sole discretion of the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution to the Member on account of its interest in the Company if such distribution would violate Section 18-607 of the Act or other applicable law.

15.    Management.

a.    The business and affairs of the Company shall be managed by the Member.  The Company has no other members on the date hereof and shall not issue additional membership interests to other persons without the written consent of the Member.  Subject to the express limitations contained in any provision of this Agreement, the Member shall have complete and absolute control of the affairs and business of the Company, and shall possess all powers necessary, convenient or appropriate to carrying out the purposes and business of the Company, including, without limitation, doing all things and taking all actions necessary to carrying out the terms and provisions of this Agreement.

b.    Subject to the rights and powers of the Member and the limitations thereon contained herein, the Member may delegate to any person any or all of its powers, rights and obligations under this Agreement and may appoint, contract or otherwise deal with any person to perform any acts or services for the Company as the Member may reasonably determine.

c.    The Member may be compensated for its services to the Company, as determined in its sole discretion.

16.    Officers.  The Member may, from time to time, as it deems advisable, appoint officers of the Company (the "Officers") and assign in writing titles (including, without limitation, President, Vice President, Secretary and Treasurer) to any such person.  Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office.  Any delegation pursuant to this Section 16 may be revoked at any time by the Member.

3

17.    Other Business.  The Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

18.    Expulpation and Indemnification.  None of the Member or any Officer (each an "Indemnified Party") shall be liable to the Company or any other person or entity who has an interest in the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Indemnified Party in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnified Party by this Agreement, except that an Indemnified Party shall be liable for any such loss, damage or claim incurred by reason of such Indemnified Party's gross negligence or willful misconduct.  To the full extent permitted by applicable law, an Indemnified Party shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Indemnified Party by reason of any act or omission performed or omitted by such Indemnified Party in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Indemnified Party by this Agreement, except that no Indemnified Party shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Indemnified Party by reason of gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 18 shall be provided out of and to the extent of Company assets only, and the Member shall have no personal liability on account thereof.

19.    Assignments.  The Member may transfer, assign, pledge or hypothecate, in whole or in part, its limited liability company interest, as determined in its sole discretion.

20.    Dissolution.

a.    The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following:  (i) the written consent of the Member, (ii) the bankruptcy or withdrawal of the Member and (iii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

b.    In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner).

21.    Elections.  The Member shall determine the accounting methods and conventions under the tax laws of any and all applicable jurisdictions as to the treatment of income, gain, loss, deduction and credit of the Company or any other method or procedure related to the preparation of such tax returns.  The Member may cause the Company to make or refrain from making any and all elections permitted by such tax laws, and the Member shall not be liable for any consequences to any previously admitted or subsequently admitted Members resulting from their making or failing to make any such elections.

22.    Separability of Provisions.  Each provision of this Agreement shall be considered separable and if for any reason any provision or provisions herein are determined to

4

be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

23.    Entire Agreement.  This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

24.    Governing Law.  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of laws principles thereof), and all rights and remedies shall be governed by such laws.

25.    Amendments.  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

26.    To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Company will not issue non-voting equity securities; *provided, however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Company and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

[*Signature Page Follows*]

5

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the date first written above.

MEMBER:

**HMH PUBLISHERS LLC**

By: _____
      Name:  William Bayers
      Title:   EVP, Secretary and General Counsel

[Signature Page to Amended and Restated LLC Agreement of Steck-Vaughn Publishing LLC]

## AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

### of

## THE RIVERSIDE PUBLISHING COMPANY

The Riverside Publishing Company (the "***Corporation***"), a corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, as from time to time amended (the "***DGCL***"), hereby certifies as follows:

A.    The Corporation filed a joint pre-packaged plan of reorganization under chapter 11 of title 11 of the United States Code on May 21, 2012 (the "***Plan***").

B.    The Corporation was initially formed on April 18, 1979.

C.    This Amended and Restated Certificate of Incorporation ("***Certificate of Incorporation***"), which restates, integrates and further amends the provisions of the Corporation's Certificate of Incorporation has been deemed approved without the need for Board of Directors or stockholder approval pursuant to Section 303 of the DGCL because it is adopted pursuant to the Plan, as confirmed on June 21, 2012 by the United States Bankruptcy Court for the Southern District of New York.

D.    Pursuant to the provisions of Sections 242(a), Section 245 and 303 of the DGCL, the undersigned Corporation does hereby certify that the Certificate of Incorporation, as amended and restated, is hereby amended and restated to read in its entirety as follows:

1.    The name of the corporation is The Riverside Publishing Company.

2.    The address of its registered office in the State of Delaware is 1209 Orange Street, in the City of Wilmington, County of New Castle, Delaware 19801. The name of its registered agent at such address is The Corporation Trust Company.

3.    The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware.

4.    The total number of shares of stock which the corporation shall have authority to issue is one thousand (1,000) . The par value of each of such shares is One Dollar ($1.00 ).  To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; *provided*, *however*, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

5.    The corporation is to have perpetual existence.

US1:7987428v3

6.      In furtherance and not in limitation of the powers conferred by statute, the board of directors is expressly authorized to make, alter or repeal the by-laws of the corporation.

7.      Elections of directors need not be by written ballot unless the by-laws of the corporation shall so provide.

Meetings of stockholders may be held within or without the State of Delaware, as the by-laws may provide. The books of the corporation may be kept (subject to any provision contained in the statutes) outside the State of Delaware at such place or places as may be designated from time to time by the board of directors or in the by-laws of the corporation.

Whenever a compromise or arrangement is proposed between this corporation and its creditors or any class of them and/or between this corporation and its stockholders or any class of them, any court of equitable jurisdiction within the State of Delaware may, on the application in a summary way of this corporation or of any creditor or stockholder thereof or on the application of any receiver or receivers appointed for this corporation under the provisions of section 291 of Title 8 of the Delaware Code or on the application of trustees in dissolution or of any receiver or receivers appointed for this corporation under the provisions of section 279 of Title 8 of the Delaware Code order a meeting of the creditors or class of creditors, and/or of the stockholders or class of stockholders of this corporation, as the case may be, to be summoned in such manner as the said court directs. If a majority in number representing three-fourths in value of the creditors or class of creditors. and/ or of the stockholders or class of stockholders of this corporation, as the case may be, agree to any compromise or arrangement and to any reorganization of this corporation as consequence of such compromise or arrangement, the said compromise or arrangement and the said reorganization shall, if sanctioned by the court to which the said application has been made, be binding on all the creditors or class of creditors, and/ or on all the stockholders or class of stockholders, of this corporation, as the case may be, and also on this corporation.

8.      The corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

9.      A Director of this Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a Director, except that this Article 9 shall not eliminate or limit of Director's liability (i) for any breach of the Director's duty of loyalty to the Corporation or its stockholders; (ii) or acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law; (iii) under Section 174 of the Delaware General Corporation Law; (iv) for any transaction from which the Director derived an improper personal benefit.   If the Delaware General Corporation Law is amended after approval by the stockholders of this Article 9 to authorize corporate action further eliminating or limiting the personal liability of Directors, then the liability of a Director of the Corporation shall be eliminated or limited to the fullest extent permitted by the Delaware General Corporation Law, as so amended from time to time.

Any repeal or modification of this Article 9 shall not increase the personal liability of any Director of this Corporation for any act or occurrence taking place prior to such repeal of modification, or otherwise adversely affect any right or protection of a Director of the Corporation existing at the time of such repeal or modification.

[Signature Page Follows]

**IN WITNESS WHEREOF**, the Corporation has caused this Amended and Restated Certificate of Incorporation to be executed by its duly authorized officer this 21st day of June 2012.

**THE RIVERSIDE PUBLISHING COMPANY**

By: _____

Name: William Bayers

Title: EVP, Secretary and General Counsel

[Signature Page to Amended and Restated Certificate of Incorporation of The Riverside Publishing Company]

<u>Exhibit B – Initial List of Reorganized HMH Holdings Board of Directors and Senior
Management of Reorganized Debtor</u>

The Reorganized HMH Holdings Board of Directors and
Senior Management of Reorganized Debtors

Reorganized HMH Holdings Board of Directors

The following individuals will serve as the initial directors of Reorganized HMH Holdings Board
of Directors following the Effective Date – Linda K. Zecher, John F. Killian and Sheru
Chowdhry.  Additional directors will be selected in accordance with provisions of the Plan.
Initial director compensation shall be set by the Informal Creditor Group and shall thereafter be
approved by the compensation committee of the Reorganized HMH Holdings Board of Directors.

**Linda K. Zecher** joined Houghton Mifflin Harcourt in September 2011 as President, Chief
Executive Officer and Director.  Previously, she served as Corporate Vice President of
Microsoft's $8 billion Worldwide Public Sector organization, where she led a team of nearly
2,000 sales and marketing professionals serving government, education and healthcare customers
in more than 100 countries.  Prior to joining Microsoft in 2003, Linda held leadership positions
with Texas Instruments, Bank of America, PeopleSoft, Oracle and Evolve Corp.  She currently
serves on the U.S. State Department's Board for Overseas Schools, the Focused Ultrasound
Surgery Foundation Advisory Council, and the Emily Couric Leadership Forum.  Linda is also a
former member of the Intelligence National Security Association, the Virginia Piedmont
Technology Council, and James Madison University's Board of Visitors.

**John F. Killian** has served as a member of the board of directors since January 2011. Mr. Killian
was Executive Vice President for Verizon and served as Verizon's Chief Financial Officer from
March 2009 through October 2010. Prior to becoming CFO, Mr. Killian was President of Verizon
Business from October 2005 until March 2009, the Senior Vice President and Chief Financial
Officer of Verizon Telecom from June 2003 until October 2005, and the Senior Vice President
and Controller of Verizon Telecom from April 2002 until June 2003. Mr. Killian serves on the
Board of Directors at ConEdison Inc. and is a Vice-Chairman of the board of Providence College.

**Sheru Chowdhry** has served as a member of the board of directors since March 2010. Mr.
Chowdhry joined Paulson & Co. Inc., a hedge fund, in 2004 as a Senior Vice President and has
been a Managing Director and Head of Distressed & Bankruptcy Research since 2008.
Previously, he was a research analyst at DebtTraders Inc., covering distressed and bankrupt
securities, and an investment banker in the Mergers & Acquisitions Group at JP Morgan
Securities.

<u>Senior Management</u>

Upon the Effective Date, the officers of the Reorganized Debtors shall be substantially the same as the officers of the Debtors on the Petition Date.  The following chart lists the identities of the Debtors' senior officers as of the Petition Date.

| Name | Position |
| --- | --- |
| Linda K. Zecher | President, CEO, and Director |
| Eric Shuman | Executive Vice President and CFO |
| William Bayers | Executive Vice President, General Counsel |
| Gary Gentel | President of HMH Trade and Reference Publishers |
| Tim Cannon | Executive Vice President, Strategy and Alliances |
| Bethlam Forsa | Executive Vice President, Global Product and Content  Development |
| John Dragoon | Executive Vice President and Chief Marketing Officer |
| Mary Cullinane | Executive Vice President, Corporate Affairs and Social Responsibility |
| Joanne Karimi | Executive Vice President, Human Resources |

The Reorganized Debtors' officers shall serve in accordance with existing employment arrangements with the Debtors and applicable nonbankruptcy law and will receive the same compensation as such officers received prior to the Petition Date.